**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 1 8 2019

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

USABLE MUTUAL INSURANCE COMPANY,                                    PLAINTIFF
d/b/a Arkansas Blue Cross and Blue Shield

v.                          No. *4:19cv807-KGB*

ACE AMERICAN INSURANCE COMPANY                                      DEFENDANT

## COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

Plaintiff, USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield

("ABCBS"), complains of defendant, ACE American Insurance Company ("ACE"), and alleges

as follows:

This case assigned to District Judge *Baker*

**JURISDICTION** and to Magistrate Judge_____

1.     This Court has subject-matter jurisdiction over this lawsuit pursuant to 28 U.S.C.

§ 1332(a)(1) because the amount in controversy, without interest and costs, exceeds $75,000 and

there is complete diversity between the parties to this action in that, for jurisdictional purposes,

plaintiff ABCBS is a citizen of the State of Arkansas, whereas defendant ACE American Insurance

Company is, upon information and belief, a citizen of the States of Pennsylvania and Delaware.

## NATURE OF THIS ACTION

2.     ABCBS asserts claims for declaratory judgment, breach of contract, and breach of

the duty of good faith and fair dealing against ACE.  ABCBS is a not-for-profit mutual insurance

company providing health and dental insurance coverage to individuals and families in Arkansas.

ABCBS asserts these claims because, in connection with underlying lawsuits filed against ABCBS

alleging antitrust claims, ACE has either wrongfully denied insurance coverage, reserved its right

to deny coverage on grounds that are not valid or in accordance with applicable law, or has

1

otherwise failed to honor its contractual obligations to ABCBS under the policy it sold to ABCBS. These lawsuits, consolidated in the United States District Court for the Northern District of Alabama, seek treble damages, injunctive relief and attorney's fees and costs. ABCBS seeks declaratory relief and compensatory damages against ACE and is entitled to this relief because the ACE policy provides for reimbursement for the costs ABCBS has incurred (and continues to incur) in the defense of claims made against it in the underlying lawsuits.

3.     The underlying primary and first-layer excess insurance issued by Travelers Indemnity Company and BCS Insurance Company will be exhausted by the amounts claimed against ABCBS in the underlying lawsuits, thus triggering ACE's immediate duties to reimburse costs ABCBS has incurred and continues to incur in defense and in any settlement or other resolution of the claims against ABCBS in the underlying lawsuits.

## PARTIES

4.     ABCBS is a not-for-profit mutual insurance company organized under the laws of Arkansas with its principal place of business in Little Rock, Arkansas, and with offices in seven designated geographic areas of the State of Arkansas. ABCBS provides health insurance coverage to clients in the State of Arkansas and health plan benefits administration services to clients in the State of Arkansas and other states.

5.     ACE is an insurance company that, upon information and belief, is incorporated under the laws of Delaware, with a principal place of business in Philadelphia, PA. Upon information and belief, at all relevant times, ACE was authorized to do business, and is conducting and transacting business, in the State of Arkansas.

## VENUE

6.     Venue is proper in the District Court for the Eastern District of Arkansas pursuant

2

to 28 U.S.C. § 1391(b)(1) because ACE resides in the Eastern District under § 1391(c)(2) and pursuant to 28 U.S.C. § 1391(b)(2) because ACE's liability and obligations arise in the Eastern District and because ABCBS was injured in the Eastern District.

## THE UNDERLYING LAWSUIT

7.    ABCBS has been named as a defendant in, and has tendered to ACE, various individual actions that have been consolidated for pre-trial purposes into the following pending consolidated class action lawsuit (the "Underlying Lawsuit") for defense and indemnity under one or more of the Policies (as defined below): *In Re: Blue Cross Blue Shield Antitrust Litigation,* MDL No. 2406, United States District Court for the Northern District of Alabama, Southern Division.

## THE INSURANCE POLICIES

### The ACE Second-Layer Excess Directors' & Officers' Liability Policy

8.    ACE issued Excess Directors' and Officers' Liability policy no. DOX G24568416 003 to ABCBS for the policy period from January 1, 2012, to January 1, 2013 (the "ACE Policy"). A true and correct copy of the ACE Policy is attached as Exhibit A.

9.    The ACE Policy is excess of a policy issued by BCS Insurance Company (the "BCSI Policy"), which, in turn, is excess of Private Company Directors' and Officers' Liability policy no. 105549106 issued to ABCBS by Travelers Indemnity Company of America for the policy period from January 1, 2012, to January 1, 2013 (the "Travelers Underlying Policy"). A true and correct copy of the Travelers Underlying Policy is attached as Exhibit B.

10.    The limit of liability of the BCSI Policy is $15,000,000. The limit of liability of the Underlying Travelers Policy is $15,000,000. The limit of liability of the ACE Policy is also $15,000,000.

3

11.     The ACE Policy provides as follows: "In consideration of the payment of the premium and in reliance upon all statements made in the application including the information furnished in connection therewith, and subject to all terms, definitions, conditions, exclusions and limitations of this policy, the Insurer agrees to provide insurance coverage to the Insureds in accordance with the terms, definitions, conditions, exclusions and limitations of the Followed Policy, except as otherwise provided herein."

12.     The "Followed Policy" referenced in the preceding paragraph is the Underlying Travelers Policy.

13.     The Underlying Travelers Policy (and, therefore, the ACE Policy) provides, in relevant part, as follows:

### *I.    INSURING AGREEMENTS*

The Company will pay on behalf of:

- A.     the **Insured Persons, Loss** for **Wrongful Acts,** except for **Loss** which the **Insured Organization** pays to or on behalf of the **Insured Persons** as indemnification;

- B.     the **Insured Organization, Loss** for **Wrongful Acts** which the **Insured Organization** pays to or on behalf of the **Insured Persons** as indemnification; and

- C.     the **Insured Organization, Loss** for **Wrongful Acts,**

resulting from any **Claim** first made during the **Policy Period,** or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period.

14.     "Loss" is defined as:

**G.     *Loss*** means **Defense Expenses** and money which an **Insured** is legally obligated to pay as a result of a **Claim** . . . .

15.     "Wrongful Act" is defined as:

**M.     *Wrongful Act*** means:

4

1. any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, an **Insured Person** in his or her capacity as such;
2. any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, an **Insured Person** in his or her **Outside Position**;
3. any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, the **Insured Organization;** or
4. any matter asserted against an **Insured Person** solely by reason of his or her status as such.

All **Related Wrongful Acts** are a single **Wrongful Act** for purposes of **Liability Coverage**, and all **Related Wrongful Acts** will be deemed to have occurred at the time the first of such **Related Wrongful Acts** occurred whether prior to or during the **Policy Period.**

16.     The Underlying Travelers Policy (and, therefore, the ACE Policy) specifically provides coverage for Antitrust Claims, which it defines as:

17.     ***Antitrust Claim*** means any **Claim** for any actual or alleged violation of any law, rule or regulation relating to antitrust, the prohibition of monopolies, activities in restraint of trade, unfair methods of competition or deceptive acts and practices in trade and commerce, including any actual or alleged violation of the Sherman Act, the Clayton Act, the Robinson-Patman Act, The Federal Trade Commission Act, the Hart-Scott-Rodino Antitrust Improvements Act, or any regulation or rule promulgated under any such Act.

## FACTUAL BACKGROUND

### 'A.     ACE's Coverage Positions

18.     In a letter dated May 7, 2015, ACE reserved its right to deny coverage of the claims made against ABCBS in the Underlying Lawsuit on the ground that the Underlying Travelers Policy had not been exhausted and on the basis of various exclusions in the ACE Policy.  A true and correct copy of the May 7, 2015 letter is attached as Exhibit C.

5

**B.      ACE's Breach of Its Contractual Obligations to ABCBS for the Underlying Lawsuit**

19.      The original complaint in the Underlying Lawsuit was filed in 2012. A consolidated set of complaints for both a "Subscriber" and "Provider" track in the Underlying Lawsuit, asserting covered claims against ABCBS was filed in 2013.  ABCBS provided timely notice to ACE of all of these actions and of the Underlying Lawsuit.

20.      The Underlying Lawsuit alleges claims of antitrust violations and collusion in the licensing and marketing of the Blue Cross and Blue Shield brand.

21.      As acknowledged by Travelers, such claims fall within the coverage provided by the Underlying Travelers Policy, as they assert claims against ABCBS that fall within the policies' broadly-defined "Wrongful Act," which includes "any actual or alleged act . . . asserted against, the Insured Organization." Accordingly, the claims fall squarely within the coverage provided for "Wrongful Acts" and for "Antitrust Claims" in the ACE Policy.

22.      ABCBS has incurred and continues to incur damages, including defense costs and other losses, in responding to and defending itself against the claims made in the Underlying Lawsuit. ABCBS purchased insurance coverage from ACE to provide coverage for actual or potential liability in connection with allegations of the kind asserted in the Underlying Lawsuit.

23.      The allegations asserted against ABCBS in the Underlying Lawsuit are within the coverage of the Travelers, BCSI, and ACE Policies and are neither excepted nor excluded. The losses incurred and to be incurred by ABCBS in connection with the claims asserted in the Underlying Lawsuit are all within the coverage of the ACE Policy, and ACE is obligated to pay such amounts as set forth in the Policy.

24.      ABCBS has complied with all conditions precedent to coverage in the subject ACE Policy, including, without limitation, the payment of all premiums to ACE and the provision of

6

US2008 5243445 1

sufficient and proper notice of the Underlying Lawsuit and the individual underlying cases consolidated into the Underlying Lawsuit.

25.     ACE is obligated to provide the full benefits and protections provided under the ACE Policy, subject to a $15 million Limit of Liability and subject to a $250,000 retention, which has been satisfied. The failure and refusal of ACE to acknowledge and affirm its clear coverage obligations to ABCBS under the Policy risks impairing the ability of ABCBS to resolve the Underlying Lawsuit, as the full extent of the ACE Policy is likely necessary to satisfy any settlement or other resolution of the claims against ABCBS.

## FIRST CAUSE OF ACTION
## DECLARATORY RELIEF – DUTY TO REIMBURSE

26.     ABCBS repeats and re-alleges the preceding allegations as if fully set forth here.

27.     By denying coverage under the Policy, ACE has wrongfully denied coverage under its Policy, which covers the Underlying Lawsuit.

28.     A justiciable controversy exists between ACE, on the one hand, and ABCBS, on the other, concerning interpretation of the Policy and ACE's obligations under the Policy to reimburse ABCBS for costs incurred both in defense and indemnity of the Underlying Lawsuit. ACE has a duty to reimburse ABCBS in full, and ACE has failed and refused to acknowledge and comply with that duty, jeopardizing the ability of ABCBS to fund any settlement or other resolution of the claims against ABCBS in the Underlying Lawsuit.

29.     The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.  If ABCBS is unable to determine and settle the availability and extent of liability insurance funds in the short term, such uncertainty could jeopardize its ability to fund any settlement or other resolution of the claims against ABCBS in the Underlying Lawsuit.

7

30.     The issuance of declaratory relief will terminate the existing controversy between the parties.

31.     ABCBS is entitled to a declaration of the rights and obligations of the parties, including, but not limited to, a finding that ACE has a duty to reimburse ABCBS for all of the costs incurred in defending and resolving the Underlying Lawsuit.

## SECOND CAUSE OF ACTION
## DECLARATORY RELIEF – DUTY TO INDEMNIFY

32.     ABCBS repeats and re-alleges the preceding allegations as if fully set forth here.

33.     ACE has wrongfully denied coverage or has reserved its right to deny coverage under the ACE Policy for the costs incurred or to be incurred to settle or otherwise resolve the Underlying Lawsuit.

34.     A justiciable controversy exists between ACE, on the one hand, and ABCBS, on the other, concerning interpretation of the ACE Policy and ACE's obligations under the ACE Policy to indemnify ABCBS in the Underlying Lawsuit. ABCBS contends that ACE has a duty to indemnify ABCBS in the Underlying Lawsuit, and ACE contends that there that there are policy provisions that preclude such a duty for the underlying lawsuit.

35.     The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

36.     The issuance of declaratory relief will terminate the existing controversy between the parties.

37.     ABCBS is entitled to a declaration of the rights and obligations of the parties, including, but not limited to, a finding that ACE has a duty to indemnify ABCBS in the Underlying Lawsuit.

8

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT – DUTY TO INDEMNIFY

38.     ABCBS repeats and re-alleges the preceding allegations as if fully set forth here.

39.     ABCBS has fully and substantially complied with all the terms and conditions of the ACE Policy, and has fulfilled each obligation on its part to be performed.

40.     ACE has wrongfully denied coverage under the ACE Policy or has threatened to do so, thus impairing ABCBS's ability to fund any settlement or other resolution of the claims against ABCBS in the Underlying Lawsuit.

41.     By denying or threatening to deny its indemnity obligations, ACE has materially breached and repudiated its obligations to ABCBS with respect to any liability that might result from the Underlying Lawsuit.

42.     As a direct and proximate cause of the breach of contract and failure to recognize and abide by its duties to indemnify, ACE may injure ABCBS in the future and damage ABCBS in an amount exceeding the jurisdictional minimum of this Court, to be proven at trial.

## FOURTH CAUSE OF ACTION
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

43.     ABCBS repeats and re-alleges the preceding allegations as if fully set forth here.

44.     Implied in the ACE Policy is a duty of good faith and fair dealing, requiring ACE to take no action that deprives ABCBS of the benefit of the bargain it made for coverage and peace of mind when it purchased the ACE Policy.

45.     The ACE Policy follows the form of the terms and conditions of the Underlying Travelers Policy.

46.     Accordingly, the scope of the coverage in the ACE Policy is co-extensive with the coverage provided by the Underlying Travelers Policy.

9

47.     Nevertheless, ACE has, without a good faith basis for doing so, taken positions on coverage that are contrary to the position that Travelers has taken.

48.     Irrespective of the position on coverage taken by Travelers, ACE does not have a good faith basis for reserving its right to deny coverage for the liabilities ABCBS faces in the Underlying Lawsuit.

49.     For the foregoing reasons, and because ACE has forced ABCBS into filing this coverage litigation to obtain the benefit of the bargain it made when it purchased the ACE Policy, ACE has breached its duties of good faith and fair dealing to ABCBS.

## REQUEST FOR RELIEF

WHEREFORE, ABCBS respectfully requests this Court enter a judgment as follows:

1.     With respect to the First Cause of Action:

a. A declaration that ACE has a duty to reimburse ABCBS for defense costs incurred in defending and resolving the Underlying Lawsuit; and

b. Attorneys' fees, interest, and statutory damages in accordance with Ark. Code Ann. §§ 23-79-208 and -209.

2.     With respect to the Second Cause of Action:

a. A declaration that ACE has a duty to indemnify ABCBS in full in the Underlying Lawsuit, up to the $15 million limit of liability in the ACE Policy.

b. Attorneys' fees, interest, and statutory damages in accordance with Ark. Code Ann. §§ 23-79-208 and -209.

3.     With respect to the Third Cause of Action:

a. For damages against ACE according to proof at the time of trial; and

10

b. Attorneys' fees, interest, and statutory damages in accordance with Ark. Code Ann. §§ 23-79-208 and -209.

4.      With respect to the Fourth Cause of Action:

a.  For damages against ACE according to proof at the time of trial;

b.  For punitive damages on account of ACE's breach of the duty of good faith and fair dealing, in an amount sufficient to punish and deter ACE in the future; and

c.  For an award of attorneys' fees.

5.      With respect to all claims, ABCBS's costs of suit at the legally acceptable rate, and such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

ABCBS demands a jury trial on all issues triable by jury.

DATED:  November 18, 2019.

> SHULTS & ADAMS LLP
> 200 West Capitol Avenue, Suite 1600
> Little Rock, AR  72201-3621
> (501) 375-2301
>
> By  _Steven Shults_
>       Steven Shults
>       Arkansas Bar No. 78139
>       sshults@shultslaw.com
>
>       John T. Adams
>       Arkansas Bar No. 2005014
>       jadams@shultslaw.com
>
>
> *Attorneys for Plaintiff,*
> *USAble Mutual Insurance Company,*
> *d/b/a Arkansas Blue Cross and Blue Shield*

11

# EXHIBIT A



**ace usa**

ACE USA
436 Walnut Street
Philadelphia, PA
19106

215-640-4603 *tel*
215-640-5476 *fax*

www.ace-ina.com

Timothy O'Shaughnessy
*Senior Underwriter - Professional Risk*

January 27, 2012

Justin Stevens
Marsh USA, Inc.
1255 23rd Street, NW
Suite 400
Washington, DC  20037

RE: **Insured:**       **USAble Mutual Insurance Company**
    **Coverage:**      **Excess Directors' and Officers' Liability**
    **Policy No:**      DOX G24568416 003
    **Company Paper:**  **ACE American Insurance Company**
    **Policy Period:**  01/01/2012 to 01/01/2013

Dear Justin,

We are pleased to enclose an original copy of the captioned policy.

As producer of record, you are responsible for collecting and filing all necessary surplus lines taxes, fees and documentation in accordance with state surplus lines laws and/or regulations, if applicable.

Also, as a reminder, all claim notices under this policy should be provided in writing to the following address:

ACE USA
P.O. Box 5105
Scranton, PA 18505-0518
Fax: 877-746-4641
Email address for submitting Management Liability Claims, ManagementLiabilityFirstNotice@acegroup.com
Email address for all other correspondence, ApolloProRskACEIncoming@acegroup.com

We have reviewed the policy and trust you will find it to be in order.  Should you have any questions or concerns, please advise us promptly.

Thank you for working with us on the placement of this risk.  We appreciate your support and look forward to working with you in the future.

Regards,

*Shelley P. Weisberg*

Shelley P. Weisberg, AIS
*Underwriting Assistant*

*One of the ACE Group of Insurance & Reinsurance Companies*

# EXHIBIT A



**ACE American Insurance Company**

# Excess Liability Insurance
# Policy Declarations

**This Policy is issued by the stock insurance company listed above (herein "Insurer").**

**UNLESS OTHERWISE PROVIDED IN THE FOLLOWED POLICY, THIS POLICY IS A CLAIMS MADE POLICY WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. PLEASE READ THIS POLICY CAREFULLY.**

| | | |
|---|---|---|
| **Policy No.** | DOX G24568416 003 | |
| **Item 1.** | Insured Company: | USAble Mutual Insurance Company |
| | Principal Address: | 601 South Gaines Street, 8S FRAT<br>Little Rock, AR  72201 |
| **Item 2.** | Coverages Provided: | Directors' and Officers' Liability |
| **Item 3.** | Followed Policy: | Wrap+ Directors and Officers and Employment Practices Liability |
| | Insurer: | Travelers Casualty and Surety Company of America |
| | Policy Number: | 105549106 |
| **Item 4.** | Policy Period | |
| | From 12:01 A.M. <u>01/01/2012</u>            To 12:01 A.M. <u>01/01/2013</u><br>(Local time at the address shown in Item 1.) | |
| **Item 5.** | Aggregate Limit of Liability: | |
| | <u>$15,000,000</u>  for all Loss under all Coverages combined. | |
| **Item 6.** | Premium: | $37,947 |
| | Discovery Period Premium:   <u>100</u> % of the Policy Period Premium | |
| **Item 7.** | **NOTICE TO INSURER** | |
| | **A. Notice of Claim, Wrongful Act or Loss:** | |
| | ACE USA<br>P.O. Box 5105<br>Scranton, PA 18505-0518<br>Fax: 877-746-4641<br>Email address for submitting Management Liability Claims,<br>ManagementLiabilityFirstNotice@acegroup.com<br>Email address for all other correspondence, ApolloProRskACEIncoming@acegroup.com | |
| | **B. All other notices:** | |
| | ACE USA, Professional Risk<br>Attention:  Chief Underwriting Officer<br>140 Broadway, 41st Floor<br>New York, NY 10005 | |

 © ACE USA, 2005 **EXHIBIT A** 

| Item 8. | Schedule of Underlying Policies: | | | | |
|---|---|---|---|---|---|
| **Insurer** | | Policy Number | Limits | Primary or Excess | Policy Period |
| Travelers Casualty and Surety Company of America | | 105549106 | $15,000,000 | Primary | 01/01/2012 – 01/01/2013 |
| BCS Insurance Company | | XS D/O 121-020 | $15,000,000 | Excess | 01/01/2012 – 01/01/2013 |

**THESE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION AND THE POLICY FORM ATTACHED HERETO, CONSTITUTE THE INSURANCE POLICY.**

Date: January 27, 2012

JOHN J. LUPICA, President

_____
Authorized Representative

EXHIBIT A

 **ACE American Insurance Company**

**Excess Liability
Insurance Policy**

## I.   INSURING CLAUSE

In consideration of the payment of the premium and in reliance upon all statements made in the application including the information furnished in connection therewith, and subject to all terms, definitions, conditions, exclusions and limitations of this policy, the Insurer agrees to provide insurance coverage to the Insureds in accordance with the terms, definitions, conditions, exclusions and limitations of the Followed Policy, except as otherwise provided herein.

## II.   LIMIT OF LIABILITY

A.   It is expressly agreed that liability for any covered Loss shall attach to the Insurer only after the insurers of the Underlying Policies shall have paid, in the applicable legal currency, the full amount of the Underlying Limit and the Insureds shall have paid the full amount of the uninsured retention, if any, applicable to the primary Underlying Policy.  The Insurer shall then be liable to pay only covered Loss in excess of such Underlying Limit up to its Aggregate Limit of Liability as set forth in Item 5 of the Declarations, which shall be the maximum aggregate liability of the Insurer under this policy with respect to all Loss on account of all Claims in the Policy Period irrespective of the time of payment by the Insurer.

B.   In the event and only in the event of the reduction or exhaustion of the Underlying Limit by reason of the insurers of the Underlying Policies paying, in the applicable legal currency, Loss otherwise covered hereunder, then this policy shall, subject to the Aggregate Limit of Liability set forth in Item 5 of the Declarations:  (i) in the event of reduction, pay excess of the reduced Underlying Limit, and (ii) in the event of exhaustion, continue in force as primary insurance; provided always that in the latter event this policy shall only pay excess of the retention applicable to the exhausted primary Underlying Policy, which retention shall be applied to any subsequent Loss in the same manner as specified in such primary Underlying Policy.

C.   Notwithstanding any of the terms of this policy which might be construed otherwise, this policy shall drop down only in the event of reduction or exhaustion of the Underlying Limit and shall not drop down for any other reason including, but not limited to, uncollectibility (in whole or in part) of any Underlying Limits.  The risk of uncollectibility of such Underlying Limits (in whole or in part) whether because of financial impairment or insolvency of an underlying insurer or for any other reason, is expressly retained by the Insureds and is not in any way or under any circumstances insured or assumed by the Insurer.

## III.   DEFINITIONS

A.   The terms "Claim" and "Loss" have the same meanings in this policy as are attributed to them in the Followed Policy.  The terms "Insurer", "Followed Policy", "Underlying Policies", "Policy Period" and "Aggregate Limit of Liability" have the meanings attributed to them in the Declarations.

B.   The term "Insureds " means those individuals and entities insured by the Followed Policy.

C.   The term "Policy Period" means the period set forth in Item 4 of the Declarations, subject to prior termination.

D.   The term "Underlying Limit" means an amount equal to the aggregate of all limits of liability as set forth in Item 8 of the Declarations for all Underlying Policies, plus the uninsured retention, if any, applicable to the Underlying Policy.

**EXHIBIT A**



## IV.  UNDERLYING INSURANCE

A.  This policy is subject to the same representations as are contained in the Application for any Underlying Policy and the same terms, definitions, conditions, exclusions and limitations (except as regards the premium, the limits of liability, the policy period and except as otherwise provided herein) as are contained in or as may be added to the Followed Policy and, to the extent coverage is further limited or restricted thereby, to any other Underlying Policies.  In no event shall this policy grant broader coverage than would be provided by any of the Underlying Policies.

B.  It is a condition of this policy that the Underlying Policies shall be maintained in full effect with solvent insurers during the Policy Period except for any reduction or exhaustion of the aggregate limits contained therein by reason of Loss paid thereunder (as provided for in Section II (B) above).  If the Underlying Policies are not so maintained, the Insurer shall not be liable under this policy to a greater extent than it would have been had such Underlying Policies been so maintained.

C.  If during the Policy Period or any Discovery Period the terms, conditions, exclusions or limitations of the Followed Policy are changed in any manner, the Insureds shall as a condition precedent to their rights to coverage under this policy give to the Insurer written notice of the full particulars thereof as soon as practicable but in no event later than 30 days following the effective date of such change.  This policy shall become subject to any such changes upon the effective date of the changes in the Followed Policy, provided that the Insureds shall pay any additional premium reasonably required by the Insurer for such changes.

D.  As a condition precedent to their rights under this policy, the Insureds shall give to the Insurer as soon as practicable written notice and the full particulars of (i) the exhaustion of the aggregate limit of liability of any Underlying Policy, (ii) any Underlying Policy not being maintained in full effect during the Policy Period, or (iii) an insurer of any Underlying Policy becoming subject to a receivership, liquidation, dissolution, rehabilitation or similar proceeding or being taken over by any regulatory authority.

## V.  GENERAL CONDITIONS

A.  Discovery Period Premium:  If the Insureds elect a discovery period or extended reporting period ("Discovery Period") as set forth in the Followed Policy following the cancellation or non-renewal of this policy, the Insureds shall pay to the Insurer the additional premium set forth in Item 6 of the Declarations.

B.  Application of Recoveries:  All recoveries or payments recovered or received subsequent to a Loss settlement under this policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insureds and the Insurer, provided always that the foregoing shall not affect the time when Loss under this policy shall be payable.

C.  Notice:  All notices under this policy shall be given as provided in the Followed Policy and shall be properly addressed to the appropriate party at the respective address as shown in the Declarations.

D.  Cooperation:  The Insureds shall give the Insurer such information and cooperation as it may reasonably require.

E.  Claim Participation:  The Insurer shall have the right, but not the duty, and shall be given the opportunity to effectively associate with the Insureds in the investigation, settlement or defense of any Claim even if the Underlying Limit has not been exhausted.

F.  Changes and Assignment:  Notice to or knowledge possessed by any person shall not effect waiver or change in any part of this policy or stop the Insurer from asserting any right under the terms of this policy. The terms, definitions, conditions, exclusions, and limitations of this policy shall not be waived or changed, and no assignment of any interest under this policy shall bind the Insurer, except as provided by endorsement issued to form a part hereof, signed by the Insurer or its authorized representative.

G.  Headings:  The descriptions in the headings and sub-headings of this policy are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

EXHIBIT A

# SIGNATURES

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **USAble Mutual Insurance Company** | | | **1** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **DOX** | **G24568416 003** | **01/01/2012 to 01/01/2013** | **01/01/2012** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

CARMINE A. GIGANTI, Secretary

JOHN J. LUPICA, President

JOHN J. LUPICA, President
Authorized Representative

CC-1K11g  (01/11)

# EXHIBIT A

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured<br>**USAble Mutual Insurance Company** | | | Endorsement Number<br>**2** |
|---|---|---|---|
| Policy Symbol<br>**DOX** | Policy Number<br>**G24568416 003** | Policy Period<br>**01/01/2012  to 01/01/2013** | Effective Date of Endorsement<br>**01/01/2012** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

We are providing you with the terrorism coverage required by the Act. We have not established a separate price for this coverage; however the portion of your annual premium that is reasonably attributable to such coverage is: $<u>0</u>.



JOHN J. LUPICA, President

_____
Authorized Agent

Includes copyrighted material of Insurance Services office, Inc., with its permission

TRIA12b (1/08)

# EXHIBIT A

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **USAble Mutual Insurance Company** | | | **3** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **DOX** | **G24568416 003** | **01/01/2012  to 01/01/2013** | **01/01/2012** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

It is agreed that Section II, Limit of Liability, is amended by adding the following:

• Notwithstanding anything in this Policy to the contrary, if aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and the Insurer has met its deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act.   The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative


# EXHIBIT A

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **USAble Mutual Insurance Company** | | | **4** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **DOX** | **G24568416 003** | **01/01/2012 to 01/01/2013** | **01/01/2012** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE American Insurance Company** |

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of the policy remain unchanged.



JOHN J. LUPICA, President

Authorized Agent

ALL-21101 (11/06) Ptd. in U.S.A.

# EXHIBIT A

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**USAble Mutual Insurance Company** | | | Endorsement Number<br>**5** |
|---|---|---|---|
| Policy Symbol<br>**DOX** | Policy Number<br>**G24568416 003** | Policy Period<br>**01/01/2012  to 01/01/2013** | Effective Date of Endorsement<br>**01/01/2012** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

## EXCESS ENDORSEMENT

It is agreed that Section IV, Underlying Insurance, subsection C, is amended to add the following:

If the terms, definitions, conditions, exclusions or limitations of the Followed Policy are changed in any manner or differ in any respect from the binder for such Followed Policy, the Insurer shall have 30 days after receipt of the Followed Policy containing such changes to provide written objection to such changes.  If such written objection is provided, such changes shall not apply to this policy and no coverage related to such changes shall apply.   If such written objection is not provided within the time frame captioned above, such changes shall apply

All other terms and conditions of this policy remain unchanged.

JOHN  J.  LUPICA,  President

Authorized Representative

EXHIBIT A

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**USAble Mutual Insurance Company** | | | Endorsement Number<br>**6** |
|---|---|---|---|
| Policy Symbol<br>**DOX** | Policy Number<br>**G24568416 003** | Policy Period<br>**01/01/2012  to 01/01/2013** | Effective Date of Endorsement<br>**01/01/2012** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

### PRIOR OR PENDING LITIGATION, SPECIFIED COVERAGE LAYER ENDORSEMENT

It is agreed that the policy is amended as follows:

1.  Section III, **Definitions**, is amended by adding the following to subsection A:

    The term "Wrongful Act" shall have the same meaning in this policy as is attributed to it in the Followed Policy.

2.  Section III, **Definitions**, is amended by adding the following:

    The term "Interrelated Wrongful Act" means all Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

3.  The following new Section is added:

    **EXCLUSIONS**

    The Insurer shall not be liable for Loss on account of any Claim:

    •   Prior or Pending Proceeding

        alleging, based upon, arising out of, or attributable to:

    A.  With respect to the Limit of Liability of $10,000,000 excess of $30,000,000, (i) any prior or pending litigation, administrative, or regulatory proceeding filed on or before 01/01/2010, or the same or substantially the same Wrongful Act, fact, circumstance or situation underlying or alleged therein; or (ii) any other Wrongful Act whenever occurring which, together with a Wrongful Act underlying or alleged in such prior or pending proceeding, would constitute Interrelated Wrongful Acts.

    B.  With respect to the Limit of Liability of $5,000,000 excess of $40,000,000, (i) any prior or pending litigation, administrative, or regulatory proceeding filed on or before 01/01/2011, or the same or substantially the same Wrongful Act, fact, circumstance or situation underlying or alleged therein; or (ii) any other Wrongful Act whenever occurring which, together with a Wrongful Act underlying or alleged in such prior or pending proceeding, would constitute Interrelated Wrongful Acts.

All other terms and conditions of this policy remain unchanged.



JOHN J. LUPICA, President

_____
Authorized Representative

EXHIBIT A

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**USAble Mutual Insurance Company** | | | Endorsement Number<br>**7** |
|---|---|---|---|
| Policy Symbol<br>**DOX** | Policy Number<br>**G24568416 003** | Policy Period<br>**01/01/2012  to 01/01/2013** | Effective Date of Endorsement<br>**01/01/2012** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

## NON-CONCURRENT EXCESS ENDORSEMENT
## (REDUCTION OF UNDERLYING LIMITS)

It is agreed that

1.  Section I, Insuring Clause, is amended by adding the following:

    However, the Insurer shall not provide insurance coverage to the Insureds in accordance with the following terms and conditions as set forth in the Followed Policy listed in Item 3 of the Declarations:

    a. Employment Practices Liability
    b. Security Holder Derivative Demand Investigation Expense Sub-Limit
    c. Supplemental Personal Indemnification
    d. Regulatory Claims Sub-limit

2.  Section II, Limit of Liability, is amended by adding the following:

    Notwithstanding any provision to the contrary in subsections A, B, or C of this Section, this policy shall recognize reduction or exhaustion of the Underlying Limit by reason of the insurer of the Followed Policy providing insurance coverage in accordance with the following terms and conditions as set forth in the Followed Policy listed in Item 3 of the Declarations.

    a. Employment Practices Liability
    b. Security Holder Derivative Demand Investigation Expense Sub-Limit
    c. Supplemental Personal Indemnification
    d. Regulatory Claims Sub-limit

All other terms and conditions of this policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

PF-21887 (03/07) XS                        © 2007                         Page 1 of 1

# EXHIBIT A

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured<br>**USAble Mutual Insurance Company** | | | Endorsement Number<br>**8** |
|---|---|---|---|
| Policy Symbol<br>**DOX** | Policy Number<br>**G24568416 003** | Policy Period<br>**01/01/2012 to 01/01/2013** | Effective Date of Endorsement<br>**01/01/2012** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

## UNDERLYING INSURER OR INSUREDS LIABLE TO PAY ENDORSEMENT

It is agreed that this Policy is amended as follows:

A. The first sentence of Section II, Limit of Liability, subsection A, is deleted in its entirety and the following is inserted:

It is expressly agreed that liability for any covered Loss shall attach to the Insurer only after:

1. the insurer(s) of the Underlying Policies; or
2. the Insureds: (a) pursuant to an agreement with the insurer(s) of the Underlying Policies; or (b) because of the financial insolvency of the insurer(s) of the Underlying Policies;

shall have paid, in the applicable legal currency, the full amount of the Underlying Limit and the Insureds shall have paid the full amount of the uninsured retention, if any, applicable to the primary Underlying Policy. Nothing in this subsection shall preclude the Insurer of this Policy from considering any of the other terms, conditions, limitations and exclusions of this Policy, the Followed Policy, or any Underlying Policy, in determining whether any Loss is covered under this Policy. Any payments by the Insureds shall be subject to the same terms and conditions for any such payments by the insurer(s) of the Underlying Policies. Any such payments by the Insureds in any Claim shall not be recognized as reducing or exhausting the Underlying Limits for any other Claim.

B. Section II, Limit of Liability, subsection B, is deleted in its entirety and the following is inserted:

In the event and only in the event of the reduction or exhaustion of the Underlying Limit by reason of the insurer(s) of the Underlying Policy paying, or the Insureds, pursuant to subsection A above, paying, in the applicable legal currency, Loss otherwise covered hereunder, then this Policy shall, subject to the Aggregate Limit of Liability set forth in Item 5 of the Declarations: (i) in the event of reduction, pay excess of the reduced Underlying Limit, and (ii) in the event of exhaustion, continue in force as primary insurance; provided always that in the latter event this Policy shall only pay excess of the retention applicable to the exhausted primary Underlying Policy, which retention shall be applied to any subsequent Loss in the same manner as specified in such primary Underlying Policy. Nothing in this subsection shall preclude the Insurer of this Policy from considering any of the other terms, conditions, limitations and exclusions of this Policy, the Followed Policy, or any Underlying Policy, in determining whether any Loss is covered under this Policy. Any payments by the Insureds shall be subject to the same terms and conditions for any such payments by the insurer(s) of the Underlying Policies. Any such payments by the Insureds in any Claim shall not be recognized as reducing or exhausting the Underlying Limits for any other Claim.

EXHIBIT A

C.  Section IV, Underlying Insurance, is amended by adding the following subsection:

- Notwithstanding anything in this Policy to the contrary, in the event any insurer of an Underlying Policy reaches an agreement with the Insureds for such insurer to pay covered Loss in an amount less than such insurer's limit of liability, the Insurer of this Policy shall not be liable for any greater percentage of Loss under this Policy than such insurer of such Underlying Policy is liable for, subject to the Aggregate Limit of Liability set forth in the Declarations and the remaining terms and conditions of this Policy.  The Insureds agree to provide to the Insurer of this Policy a copy of such agreement.  The Insurer of this Policy shall recognize payment by the Insureds pursuant to an agreement between the Insured and the insurer(s) of the Underlying Policies only if such agreement is limited to issues of coverage under such Underlying Policies, and no other coverage issues, premium amounts, terms or conditions of any other policy.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

_____
Authorized Representative

EXHIBIT A

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured **USAble Mutual Insurance Company** | | | Endorsement Number **9** |
|---|---|---|---|
| Policy Symbol **DOX** | Policy Number **G24568416 003** | Policy Period **01/01/2012 to 01/01/2013** | Effective Date of Endorsement **01/01/2012** |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

## WAIVER OF APPLICATION ENDORSEMENT

In consideration of the premium paid, it is agreed that the policy is amended by adding the following to Section V, **General Conditions**, as follows:

- Any and all references to an application in this policy shall include the application or proposal described below. The Insurer has relied upon all statements, warranties and other information and documents contained in or submitted with such other application or proposal as if they were submitted directly to the Insurer using its own application form.

| | |
|---|---|
| Type of Application/Proposal: | Wrap + Renewal Coverage Application |
| Carrier: | Travelers Casualty and Surety Company of America |
| Date Signed: | |

All other terms and conditions remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

EXHIBIT A



## ACE Producer Compensation
## Practices & Policies

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the  following toll-free  telephone number: 1-866-512-2862.

ALL-20887 (10/06)

# EXHIBIT A



**ace usa**

# U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders

This Policyholder Notice shall not be construed as part of your policy and no coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

Reprinted, in part, with permission of
ISO Properties, Inc.



EXHIBIT A

# EXHIBIT B

## IMPORTANT NOTICE REGARDING INDEPENDENT AGENT AND BROKER COMPENSATION

For information on how Travelers compensates independent agents, brokers, or other insurance producers, please visit this website: www.travelers.com/w3c/legal/Producer_Compensation_Disclosure.html

If you prefer, you can call the following toll-free number: 1-866-904-8348. Or you can write to us at Travelers, Enterprise Development, One Tower Square, Hartford, CT 06183.

# EXHIBIT B

## ARKANSAS DEFENSE EXPENSES NOTICE

The **Named Insured** acknowledges that the applicable Limit of Liability shall be reduced, and may be completely exhausted, by **Defense Expenses**. In no event shall the Company be obligated to make any payment with regard to a **Claim** or to defend or continue to defend, or to pay **Defense Expenses**, after the applicable Limit of Liability has been exhausted by payment or tender of payment with regard to **Defense Expenses** or **Losses**.

This notice does not change or alter any provision of your policy. If you have any questions concerning this notice or any part of your policy, please contact your agent.

Policy Number:  **105549106**
Effective Date:  **01/01/2012**
Named Insured:  USAble Mutual Insurance Company

By signing below, you acknowledge that you have read the above notice and retained a copy for your records.

_____
Named Insured

_____
Signature of Authorized Officer*

_____
Name and Title of Authorized Officer

_____
Date Signed

*If you are electronically signing this notice, apply your electronic signature to this form by checking the Electronic Signature and Acceptance box below. By doing so, you hereby consent and agree that your use of a key pad, mouse, or other device to check the Electronic Signature and Acceptance box constitutes your signature, acceptance, and agreement as if actually signed by you in writing and has the same force and effect as a signature affixed by hand.

☐ Electronic Signature and Acceptance

This notice is for information only and does not become a part or condition of the policy.



EXHIBIT B

## TERRORISM POLICY DISCLOSURE NOTICE -
## TERRORISM RISK INSURANCE ACT OF 2002

On December 26, 2007, the President of the United States signed into law amendments to the Terrorism Risk Insurance Act of 2002 (the "Act"), which, among other things, extend the Act and expand its scope.  The Act establishes a program under which the Federal Government may partially reimburse "Insured Losses" (as defined in the Act) caused by "acts of terrorism".  An "act of terrorism" is defined in Section 102(l) of the Act to mean any act that is certified by the Secretary of the Treasury - in concurrence with the Secretary of State and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The Federal Government's share of compensation for Insured Losses is 85% of the amount of Insured Losses in excess of each Insurer's statutorily established deductible, subject to the "Program Trigger", (as defined in the Act).  In no event, however, will the Federal Government or any Insurer be required to pay any portion of the amount of aggregate Insured Losses occurring in any one year that exceeds $100,000,000,000, provided that such Insurer has met its deductible.  If aggregate Insured Losses exceed $100,000,000,000 in any one year, your coverage may therefore be reduced.

Please note that no separate additional premium charge has been made for the terrorism coverage required by the Act.  The premium charge that is allocable to such coverage is inseparable from and imbedded in your overall premium, and does not include any charge for the portion of losses covered by the Federal Government under the Act.  The charge is no more than one percent of your premium.

©2009 The Travelers Companies, Inc. All Rights Reserved

# EXHIBIT B



**TRAVELERS**
**One Tower Square**
**Hartford, CT 06183**

**01/25/2012**

**USAble Mutual Insurance Company**
**601 South Gaines Street**
**PO Box 2181**
**LITTLE ROCK, AR 72203**

RE: Risk Management PLUS+ Online® from Travelers Bond & Financial Products
(www.rmplusonline.com)

Thank you for choosing Travelers Bond & Financial Products for your insurance needs. Travelers is a market leader in providing management liability coverage that is in-synch with your private company. As your risks evolve, so do we through our ability to provide you with responsive risk management services.

Travelers Bond & Financial Products is pleased to provide you with Risk Management PLUS+ Online, the industry's most comprehensive program for mitigating your management liability exposures. The site includes risk management tools for the following coverage related exposures:

- Employment Practices Liability
- Fiduciary Liability
- Non-Profit Directors & Officers Liability
- Crime
- Kidnap and Ransom
- CyberRisk
- Identity Fraud Expense Reimbursement

Risk Management PLUS+ Online is a flexible, comprehensive loss prevention program specifically designed for Travelers Bond & Financial Products customers and is available to you at no additional cost. Included in the site is a library of articles, checklists and training on relevant risk mitigation topics for the management liability areas mentioned above.

Highlights of Risk Management PLUS+ Online services include:
- Web-based risk management training
- Weekly articles on current issues
- Model policies and forms for downloading or printing that cover major risks associated with the workplace

The attached Risk Management PLUS+ Online Registration Instructions contain easy, step-by-step instructions to register for this valuable tool. For more information, call 1-888-712-7667 and ask for your Risk Management PLUS+ Online representative. It's that simple.

We strongly encourage you to take full advantage of this program. Once again, thank you for choosing Travelers Bond & Financial Products.

---

LTR-4026 Rev. 08-10
©2010 The Travelers Indemnity Company All Rights Reserved



Instructions for Registration & Orientation to Risk Management PLUS+ Online®

*Registration for Site Administrators:*
The Site Administrator is the person in your organization who will oversee Risk Management PLUS+ Online for the organization. The Site Administrator is typically a person who leads human resources and/or financial functions or is responsible for legal matters pertaining to personnel. The Site Administrator may add other Site Administrators later to assist with their responsibilities. To register:

1. Go to www.rmplusonline.com.
2. In the Sign-In box, click **Register**.
3. Enter the password/passcode: TRVP110000 (Please note there are 4 letters followed by 6 numbers in the code)
4. Fill in the Registration Information and click **Submit**.
5. Your organization is registered, and you are registered as Site Administrator.

*Learning to Navigate the Site:*
1. Go to www.rmplusonline.com. On each page, you will see a box outlined in blue that contains the instructions for use of that page.
2. If you have any questions, just click on **Contact Us** on the front page. Enter your question in the form provided, and the System Administrator will get back to you quickly with the answer.
3. You can also schedule a live walk-through of the site by sending a request for a walk-through via the contact link on the front page.


©2010 The Travelers Indemnity Company All Rights Reserved

# EXHIBIT B



**TRAVELERS**
**One Tower Square**
**Hartford, CT 06183**

### Employment Practices Liability Hotline

As part of the services provided through Risk Management PLUS+ Online ®, Travelers Bond & Financial Products is pleased to provide its Employment Practices Liability policyholders with unlimited access to a toll-free hotline designed to provide quick, practical guidance on day-to-day workplace issues.

To utilize the hotline, call **1-866-EPL-TRAV (1-866-375-8728)**.

Through this hotline, policyholders are eligible to receive free general guidance from the national employment law firm of Jackson Lewis, LLP. The hotline is available toll-free from anywhere in the United States.

We have developed this program in conjunction with Jackson Lewis LLP, one of the largest law firms in the country, exclusively dedicated to representing management on workplace issues. With more than 650 attorneys, in 46 offices countrywide, the firm has both a recognized expertise in workplace-related issues and a sensitivity to regional business environments.

From reviewing the proper steps for a sexual harassment investigation to discussing general factors to consider before you make day-to-day employment decisions, the firm's attorneys are available to assist policyholders in managing their workplace risk and minimizing employment related claims. As part of this program, policyholders are also eligible to receive a 10 percent discount on Jackson Lewis' regular fees for matters beyond the scope of the hotline, such as those dealing with specific employees or areas not within the scope of their policy. Similarly, the hotline cannot be used to report a claim regardless of any disclosure made to Jackson Lewis.

We encourage policyholders to take advantage of this no-cost hotline.  For more information about the hotline, go to www.rmplusonline.com/EPLhotline.

This material does not amend, or otherwise affect, the provisions or coverages of any insurance policy or bond issued by Travelers. It is not a representation that coverage does or does not exist for any particular claim or loss under any such policy or bond. Coverage depends on the facts and circumstances involved in the claim or loss, all applicable policy or bond provisions, and any applicable law. Availability of coverage referenced in this document can depend on underwriting qualifications and state regulations.

Travelers Casualty and Surety Company of America, One Tower Square, Hartford, CT 06183

---

© 2011 The Travelers Indemnity Company. All rights reserved.

**EXHIBIT B**





**Wrap+®**

***DECLARATIONS***

POLICY NO. **105549106**

## Travelers Casualty and Surety Company of America
### Hartford, Connecticut
(A Stock Insurance Company, herein called the Company)

THE LIABILITY COVERAGES AND THE THIRD PARTY LIABILITY INSURING AGREEMENTS ARE WRITTEN ON A CLAIMS-MADE BASIS. THE LIABILITY COVERAGES AND THE THIRD PARTY LIABILITY INSURING AGREEMENTS COVER ONLY CLAIMS FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY SETTLEMENTS OR JUDGMENTS WILL BE REDUCED BY DEFENSE EXPENSES, AND DEFENSE EXPENSES WILL BE APPLIED AGAINST THE RETENTION. THE COMPANY HAS NO DUTY TO DEFEND ANY CLAIM UNLESS DUTY-TO-DEFEND COVERAGE HAS BEEN SPECIFICALLY PROVIDED HEREIN.

| ITEM 1 | NAMED INSURED/INSURANCE REPRESENTATIVE:<br><br>**USAble Mutual Insurance Company**<br><br>D/B/A:<br>**Arkansas Blue Cross Blue Shield**<br><br>Principal Address:<br>**601 South Gaines Street**<br>**PO Box 2181**<br>**LITTLE ROCK, AR 72203** |
|---|---|
| ITEM 2 | POLICY PERIOD:<br><br>Inception Date:     **January 01, 2012**          Expiration Date:     **January 01, 2013**<br>12:01 A.M. standard time both dates at the Principal Address stated in ITEM 1. |
| ITEM 3 | ALL NOTICES OF CLAIM OR LOSS MUST BE SENT TO THE COMPANY BY EMAIL, FACSIMILE, OR MAIL AS SET FORTH BELOW:<br><br>**Email:bfpclaims@travelers.com**<br>**FAX:(888) 460-6622**<br><br>**Mail:Travelers Bond & Financial Products Claim**<br>      **385 Washington St. – Mail Code 9275-NB03F**<br>      **St Paul, MN  55102** |
| ITEM 4 | COVERAGE INCLUDED AS OF THE INCEPTION DATE IN ITEM 2:<br><br>Liability Coverages<br><br>☒ Private Company Directors and Officers Liability<br><br>☒ Employment Practices Liability |

© 2010 The Travelers Indemnity Company All Rights Reserved

# EXHIBIT B

☐ Fiduciary Liability

Crime Coverages

☐ Kidnap and Ransom

Cyber Coverage

☐ CyberRisk

Other Coverages

☐ Identity Fraud Expense Reimbursement

| ITEM 5 | Only those coverage features marked "☒ Applicable" are included in this policy. |
|---|---|

### PRIVATE COMPANY DIRECTORS AND OFFICERS LIABILITY

| | | |
|---|---|---|
| **Limit of Liability:** | **$15,000,000** | for all **Claims** |
| **Supplemental Personal Indemnification Coverage:** | ☒ Applicable | ☐ Not Applicable |
| **Supplemental Personal Indemnification Limit of Liability:** | **$500,000** | for all **Claims** |
| **Additional Defense Coverage:** | ☐ Applicable | ☒ Not Applicable |
| **Additional Defense Limit of Liability:** | **Not Covered** | for all **Claims** |
| **Investigation Expense Limit of Liability:** | **$100,000** | for all **Claims** |
| **Retention:** | | |
| | **$0** | for each **Claim** under Insuring Agreement A. |
| | **$250,000** | for each **Claim** under Insuring Agreement B. |
| | **$250,000** | for each **Claim** under Insuring Agreement C. |
| **Prior and Pending Proceeding Date:** | **January 01, 2008** | |
| **Continuity Date:** | **January 01, 1989** | |

### EMPLOYMENT PRACTICES LIABILITY

| | | |
|---|---|---|
| **Limit of Liability:** | **$10,000,000** | for all **Claims** |
| **Third Party Claim Coverage:** | ☒ Applicable | ☐ Not Applicable |
| **Additional Defense Coverage:** | ☐ Applicable | ☒ Not Applicable |
| **Additional Defense Limit of Liability:** | **Not Covered** | for all **Claims** |

© 2010 The Travelers Indemnity Company All Rights Reserved

# EXHIBIT B

| Retention: | $250,000 | for each **Claim** under Insuring Agreement A. |
| | $250,000 | for each **Claim** under Insuring Agreement B., if applicable |
| **Prior and Pending Proceeding Date:** | **Claims** for **Wrongful Employment Practices**: **January 01, 2008** | |
| | **Claims** for **Third Party Wrongful Acts**: | **January 01, 2008** |
| **Continuity Date:** | **Claims** for **Wrongful Employment Practices**: **January 01, 1989** | |
| | **Claims** for **Third Party Wrongful Acts**: | **January 01, 2008** |

---

### FIDUCIARY LIABILITY

| Limit of Liability: | Not Covered | for all **Claims** |
| **Settlement Program Limit of Liability:** | Not Covered | for each **Settlement Program Notice**, which amount is included within, and not in addition to, any applicable limit of liability |
| **HIPAA Limit of Liability** | Not Covered | which amount is included within, and not in addition to, any applicable limit of liability |
| **Additional Defense Coverage:** | ☐  Applicable | ☐  Not Applicable |
| **Additional Defense Limit of Liability:** | Not Covered | for all **Claims** |
| Retention: | | for each **Claim** under Insuring Agreement A. for each **Settlement Program Notice** under Insuring Agreement B |
| **Prior and Pending Proceeding Date:** | | |
| **Continuity Date:** | | |

---

### KIDNAP AND RANSOM

| | Limit of Insurance | Retention |
|---|---|---|
| **Insuring Agreement A. Kidnap for Ransom** | Not Covered for each **Insured Event** | for each **Insured Event** |
| **Insuring Agreement B. Extortion for Ransom** | Not Covered for each **Insured Event** | for each **Insured Event** |
| **Insuring Agreement C. Detention and Hijack** | Not Covered for each **Insured Event** | for each **Insured Event** |

---

ACF-2001 Rev. 07-10
© 2010 The Travelers Indemnity Company All Rights Reserved

EXHIBIT B

| | | |
|---|---|---|
| **Insuring Agreement D. In Transit/Delivery** | **Not Covered** for each **Insured Event** | for each **Insured Event** |
| **Insuring Agreement E. Rest and Rehabilitation Expenses** | **Not Covered** per **Insured Person** | for each **Insured Event** |
| **Insuring Agreement F. Personal Accident** | **Not Covered** per **Insured Person**, subject to the BENEFIT SCHEDULE found in Section III. DEFINITIONS Y., not to exceed **Not Covered** in the aggregate for the **Policy Period** | for each **Insured Event** |
| **Insuring Agreement G. Additional Expenses** | **Not Covered** for each **Insured Event** | for each **Insured Event** |
| **Insuring Agreement H. Legal Liability** | **Not Covered** for each **Insured Event** | for each **Insured Event** |
| **Crisis Response Firm Fees and Expenses** | Unlimited for each **Insured Event** | |

If "*Not Covered*" is inserted above opposite any specified Insuring Agreement, or if no amount is included in the Limit of Insurance, such Insuring Agreement and any other reference thereto is deemed to be deleted from this **Kidnap and Ransom Policy**.

**Policy Aggregate Limit of Insurance:**     ☐ Applicable     ☐ Not Applicable

If a Policy Aggregate Limit of Insurance is applicable, then the Policy Aggregate Limit

of Insurance for each **Policy Period** is:     **Not Applicable**
If a Policy Aggregate Limit of Insurance is not included, then this **Kidnap and Ransom Policy** is not subject to a Policy Aggregate Limit of Insurance as set forth in Section V. CONDITIONS C. LIMIT OF INSURANCE 1. Policy Aggregate Limit of Insurance.

| | |
|---|---|
| **Crisis Response Firm:**<br>ASI Global<br>2925 Briarpark Drive<br>Suite 1100<br>Houston, TX 77042<br>UK Telephone: +44 (0)207 240 3237<br>USA Telephone: +1 713-918-6401<br>ASI Email: responders@asiglobalresponse.com<br>ASI Website:<br>www.asiglobalresponse.com | **Travelers Bond and Financial Products Claim Contact Numbers:**<br>US Tel:   +1 800 842-8496 (available 24/7/365)<br><br>See ITEM 3 of the Declarations for the Travelers Claim mailing address |

**Cancellation of Prior Insurance:**
By acceptance of this **Kidnap and Ransom Policy**, the **Named Insured** gives the Company notice canceling prior policies or bonds issued by the Company that are designated by policy or bond numbers      , such cancellation to be effective at the time this **Kidnap and Ransom Policy** becomes effective.

---

**CYBERRISK**

**Third Party Liability Insuring Agreements**

**A.   Network and Information**
    **Security Limit of Liability**          **Not Covered**          for each **Claim**

---

EXHIBIT B

| | | |
|---|---|---|
| **B. Communications and Media Limit of Liability** | **Not Covered** | for each **Claim** |
| **C. Regulatory Defense Expenses Limit of Liability** | **Not Covered** | for each **Regulatory Claim** |
| **Retention:** | | for each **Claim** under Insuring Agreement A. |
| | | for each **Claim** under Insuring Agreement B. |
| | | for each **Regulatory Claim** under Insuring Agreement C |

**First Party Insuring Agreements**

| | Limit of Insurance | Retention |
|---|---|---|
| **D. Crisis Management Event Expenses** | **Not Covered** for each **Single First Party Insured Event** | for each **Single First Party Insured Event** |
| **E. Security Breach Remediation and Notification Expenses** | **Not Covered** for each **Single First Party Insured Event** | for each **Single First Party Insured Event** |
| **F. Computer Program and Electronic Data Restoration Expenses** | **Not Covered** for each **Single First Party Insured Event** | for each **Single First Party Insured Event** |
| **G. Computer Fraud** | **Not Covered** for each **Single First Party  Insured Event** | for each **Single First Party Insured Event** |
| **H. Funds Transfer Fraud** | **Not Covered** for each **Single First Party Insured Event** | for each **Single First Party Insured Event** |
| **I. E-Commerce Extortion** | **Not Covered** for each **Single First Party Insured Event** | for each **Single First Party Insured Event** |
| **J. Business Interruption and Additional Expenses** | **Not Covered** for each **Single First Party Insured Event** | |

If *"Not Covered"* is inserted opposite any specified Insuring Agreement above, or if no amount is included in the Limit of Insurance, such Insuring Agreement and any other reference thereto is deemed to be deleted from this **CyberRisk Policy**.

**CyberRisk Policy Aggregate Limit:     Not Applicable**

The **CyberRisk Policy Aggregate Limit** for each **Policy Period** is applicable to all Insuring Agreements.

**Prior and Pending Proceeding Date:**

**Retroactive Date:**

**Continuity Date:**

**Waiting Period (hours):** with respect to Insuring Agreement J:

---

**IDENTITY FRAUD EXPENSE REIMBURSEMENT**

**EXHIBIT B**

| | | |
|---|---|---|
| Limit of Insurance: | **Not Covered** | per **Insured Person** for each **Identity Fraud** |
| Retention: | | per **Insured Person** for each **Identity Fraud** |

| | |
|---|---|
| **ITEM 6** | **PREMIUM FOR THE POLICY PERIOD:** <br><br> **$199,401.00**                           Policy Premium |
| **ITEM 7** | **TYPE OF CLAIM DEFENSE:** <br><br> ☒   Reimbursement <br><br> ☐   Duty-to-Defend <br><br> Only the type of CLAIM DEFENSE  marked "☒" is included in this policy. |
| **ITEM 8** | **EXTENDED REPORTING PERIOD:** <br><br> Additional Premium Percentage:          **75 %** <br><br> Additional Months:                               **12** <br><br> (If exercised in accordance with sections **III. CONDITIONS, O. EXTENDED REPORTING PERIOD** of the Liability Coverage Terms and Conditions or **IV. CONDITIONS APPLICABLE TO ALL INSURING AGREEMENTS, T.**, 2. Extended Reporting Period of the **CyberRisk Policy**). |
| **ITEM 9** | **RUN-OFF EXTENDED REPORTING PERIOD:** <br><br> Additional Premium Percentage:          **200 %** <br><br> Additional Months:                               **36** <br><br> (If exercised in accordance with sections **III. CONDITIONS, K. CHANGE OF CONTROL** of the Liability Coverage Terms and Conditions or **IV. CONDITIONS APPLICABLE TO ALL INSURING AGREEMENTS, S. CHANGE OF CONTROL** of the **CyberRisk Policy**). |
| **ITEM 10** | **ANNUAL REINSTATEMENT OF THE LIABILITY COVERAGE LIMIT OF LIABILITY:** <br><br> ☐   Applicable <br> ☒   Not Applicable <br> Only those coverage features marked "☒ Applicable" are included in this policy. |
| **ITEM 11** | **FORMS AND ENDORSEMENTS ATTACHED AT ISSUANCE:** <br><br> LIA-3001-0109; LIA-4003-0109; LIA-5003-1107; LIA-7013-0109; LIA-7059-0109; LIA-7097-0109; LIA-7106-0109; LIA-7335-0109; LIA-7340-0109; LIA-7343-0109; LIA-7305-0110; ACF-7004-0110; LIA-7336-0610; PDO-7030-0810; EPL-3001-0109; PDO-3001-0109; EPL-7055-0109; EPL-7059-0109; PDO-7029-0109; PDO-7034-0109; PDO-7061-0109; PDO-7064-0109; PDO-10004-0610; PDO-10007-0710; PDO-10006-0710; PDO-10009-1010; LIA-10018-1010; LIA-10001-0610; LIA-10002-0610; PDO-10016-0111; PDO-10017-1110; PDO-10002-0111; LIA-10049-0111; EPL-10035-0311; ACF-7006-0511; ACF-7007-0811; EPL-10053-0911; EPL-10053-0911 |
| **ITEM 12** | **LIABILITY COVERAGE SHARED LIMIT OF LIABILITY:** <br><br> **Not Applicable**          for all **Claims** under the following Liability Coverages |

© 2010 The Travelers Indemnity Company All Rights Reserved

# EXHIBIT B

| ITEM 13 | Wrap+® AGGREGATE LIMIT OF LIABILITY: |
|---|---|
| | **Not Applicable**<br><br>☐ Applicable   ☒ Not Applicable<br><br>If marked "☒ Applicable" above, the Company's maximum limit of liability in a single **Policy Period** for all **Claims** under each purchased Liability Coverage and Cyber Coverage, and all loss under each purchased Crime Coverage and all **First Party Loss or Expenses** under each purchased Cyber Coverage, as set forth in ITEM 4 of these Declarations, shall not exceed the **AGGREGATE LIMIT OF LIABILITY** set forth above, provided that any applicable Additional Defense Limit of Liability, Supplemental Personal Indemnification Limit of Liability or Identity Fraud Expense Reimbursement Limit of Insurance are in addition to, and not part of, such **AGGREGATE LIMIT OF LIABILITY**. |
| ITEM 14 | Wrap+® LIABILITY COVERAGES AND CYBER COVERAGE AGGREGATE LIMIT OF LIABILITY: |
| | **Not Applicable**<br><br>☐ Applicable   ☒ Not Applicable<br><br>If marked "☒ Applicable" above, the Company's maximum limit of liability in a single **Policy Period** for all **Claims** under each purchased Liability Coverage and Cyber Coverage, and all **First Party Loss or Expenses** under each purchased Cyber Coverage, as set forth in ITEM 4 of these Declarations, shall not exceed the **LIABILITY COVERAGES AND CYBER COVERAGE AGGREGATE LIMIT OF LIABILITY** set forth above; provided that any applicable Additional Defense Limit of Liability or Supplemental Personal Indemnification Limit of Liability are in addition to, and not part of, such **LIABILITY COVERAGES AND CYBER COVERAGE AGGREGATE LIMIT OF LIABILITY**. |

**THE DECLARATIONS, THE APPLICATION, THE LIABILITY COVERAGE TERMS AND CONDITIONS, EACH PURCHASED LIABILITY COVERAGE, EACH PURCHASED CRIME COVERAGE, EACH PURCHASED CYBER COVERAGE AND EACH PURCHASED OTHER COVERAGE, AS SET FORTH IN ITEM 4 OF THE DECLARATIONS, AND ANY ENDORSEMENTS ATTACHED THERETO, CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE COMPANY, THE ENTITY NAMED IN ITEM 1 OF THE DECLARATIONS, AND ANY INSURED.**

Countersigned By
_____

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its authorized officers.

*Thomas M. Kunkel*          *Wendy C. Skj*

© 2010 The Travelers Indemnity Company All Rights Reserved

# EXHIBIT B

Executive Vice President                                    Corporate Secretary

ACF-2001 Rev. 07-10
© 2010 The Travelers Indemnity Company All Rights Reserved

# EXHIBIT B

 **TRAVELERS**

 **Wrap+ ®**

### *LIABILITY COVERAGE TERMS AND CONDITIONS*

*THIS IS A CLAIMS-MADE COVERAGE WITH DEFENSE EXPENSES INCLUDED IN THE COVERAGE LIMITS.*
*PLEASE READ THE POLICY CAREFULLY.*

#### *CONSIDERATION CLAUSE*

IN CONSIDERATION of the payment of the premium, in reliance on the statements in the **Application,** subject to the Declarations, and pursuant to all the terms, conditions, exclusions and limitations of this **Policy**, the Company and the Insureds agree as follows:

#### *I.    GENERAL*

These **Liability Coverage** Terms and Conditions apply to all **Liability Coverages**. Unless otherwise stated to the contrary, the terms and conditions of each **Liability Coverage** apply only to that particular **Liability Coverage**. If any provision in these Liability Coverage Terms and Conditions is inconsistent or in conflict with the terms and conditions of any particular **Liability Coverage**, such **Liability Coverage's** terms, conditions, and limitations will control for purposes of that **Liability Coverage**.

#### *II.    DEFINITIONS*

Wherever appearing in this **Liability Policy**, the following words and phrases appearing in bold type will have the meanings set forth in this Section II. DEFINITIONS:

    **A.**    *Additional Defense Limit of Liability* means the amount set forth in ITEM 5 of the Declarations for each applicable **Liability Coverage**. If "*Not Applicable*" is shown as the amount of any **Liability Coverage's Additional Defense Limit of Liability**, then any reference to the **Additional Defense Limit of Liability** will be deemed to be deleted from such **Liability Coverage**.

    **B.**    *Annual Reinstatement of the Liability Coverage Limit of Liability* means, if included in ITEM 10 of the Declarations, the reinstatement of each applicable **Liability Coverage Limit of Liability** or, if applicable, the **Liability Coverage Shared Limit of Liability** for each applicable **Liability Coverage** for each **Policy Year** during the **Policy Period**.

    **C.**    *Application* means the application deemed to be attached to and forming a part of this **Liability Policy**, including any materials submitted and statements made in connection with that application. If the **Application** uses terms or phrases that differ from the terms defined in this **Liability Policy**, no inconsistency between any term or phrase used in the **Application** and any term defined in this **Liability Policy** will waive or change any of the terms, conditions and limitations of this **Liability Policy**.

    **D.**    *Change of Control* means:
        1.    the acquisition of the **Named Insured**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of the **Named Insured** into or with another entity such that the **Named Insured** is not the surviving entity; or
        2.    the obtaining by any person, entity or affiliated group of persons or entities the right to elect, appoint or designate more than fifty percent (50%) of the board of directors, board of trustees, board of managers, or functional equivalent thereof or to exercise a majority control of the board of directors, board of trustees, board of managers, or a functional equivalent thereof of the **Named Insured**.

    **E.**    *Claim* has the meaning set forth in the applicable **Liability Coverage**.

 **EXHIBIT B**

Page 1 of 11

F.  **Defense Expenses** means reasonable and necessary legal fees and expenses incurred by the Company or the **Insured**, with the Company's consent, in the investigation, defense, settlement and appeal of a **Claim**, including but not limited to, cost of expert consultants and witnesses, premiums for appeal, injunction, attachment or supersedeas bonds (without the obligation to furnish such bonds) regarding such **Claim**; provided, that **Defense Expenses** will not include the salaries, wages, benefits or overhead of, or paid to, any **Insured** or any employee of such **Insured**.

G.  **Executive Officer** has the meaning set forth in the applicable **Liability Coverage**.

H.  **Financial Insolvency** means, with respect to the **Insured Organization** or any **Outside Entity**, the appointment of a receiver, conservator, liquidator, trustee, or similar official; or the inability of the **Insured Organization** or **Outside Entity** financially to indemnify the **Insured Persons**.

I.  **Foreign Parent Corporation** means any entity incorporated outside the United States, which owns more than fifty percent (50%) of the outstanding securities or voting rights representing the right to vote for the election of, or to appoint the **Named Insured's** board of directors, board of trustees or board of managers, or to exercise a majority control of the board of directors, board of trustees or board of managers of the **Named Insured**.

J.  **Insured** has the meaning set forth in the applicable **Liability Coverage**.

K.  **Insured Organization** has the meaning set forth in the applicable **Liability Coverage**.

L.  **Insured Person** has the meaning set forth in the applicable **Liability Coverage**.

M.  **Liability Coverage** means, individually or collectively, the **Liability Coverages** that have been purchased, as indicated in ITEM 4 of the Declarations.

N.  **Liability Coverage Limit of Liability** means the amount set forth in ITEM 5 of the Declarations for each applicable **Liability Coverage**.

O.  **Liability Coverage Shared Limit of Liability** means the amount set forth in ITEM 12 of the Declarations. If "*Not Applicable*" is shown in ITEM 12 of the Declarations or ITEM 4 of the Declarations indicates that only one **Liability Coverage** is included in this **Liability Policy**, any reference to either the **Liability Coverage Shared Limit of Liability** or ITEM 12 of the Declarations will be deemed to be deleted from this **Liability Policy**.

P.  **Liability Policy** means, collectively, the Declarations, the **Application**, the Liability Coverage Terms and Conditions, each purchased **Liability Coverage**, and any endorsements attached thereto.

Q.  **LLC Manager** means any natural person who was, is or becomes a manager, member of the board of managers, or a functionally equivalent executive of an **Insured Organization** that is a limited liability company.

R.  **Loss** has the meaning set forth in the applicable **Liability Coverage**.

S.  **Named Insured** means any entity named in ITEM 1 of the Declarations.

T.  **Policy Period** means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations.  In no event will the **Policy Period** continue past the effective date of cancellation or termination of this **Liability Policy**.

U.  **Policy Year** means:

1.  the period of one year following the Inception Date set forth in ITEM 2 of the Declarations or any anniversary thereof;

2.  the time between the Inception Date set forth in ITEM 2 of the Declarations or any anniversary thereof and the effective date of cancellation or termination of this **Liability Policy** if such time period is less than one year;


EXHIBIT B

3.   with respect to a **Liability Coverage** added to this **Liability Policy** after the Inception Date set forth in ITEM 2, the time between the inception date of such **Liability Coverage** and any anniversary of this **Liability Policy** if the time between the inception date of such **Liability Coverage** and any anniversary of this **Liability Policy** is less than one year; and

4.   with respect to a **Liability Coverage** added to this **Liability Policy** after the Inception Date set forth in ITEM 2, the time between the inception date of such **Liability Coverage** and the effective date or cancellation or termination of this **Liability Policy,** if such time is less than one year.

**V.**   ***Pollutant*** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

**W.**   ***Potential Claim*** means any **Wrongful Act** that may subsequently give rise to a **Claim**.

**X.**   ***Related Wrongful Act*** means all **Wrongful Acts** that have as a common nexus, or are causally connected by reason of, any fact, circumstance, situation, event or decision.

**Y.**   ***Subsidiary*** has the meaning set forth in the applicable **Liability Coverage**.

**Z.**   ***Wage and Hour Law*** means any federal, state, or local law or regulation governing or related to the payment of wages including the payment of overtime, on-call time, minimum wages, meals, rest breaks or the classification of employees for the purpose of determining employees' eligibility for compensation under such law(s).

**AA.**   ***Wrongful Act*** has the meaning set forth in the applicable **Liability Coverage**.

---

***III.***   ***CONDITIONS***

**A.**   **TERRITORY**

This **Liability Policy** applies to **Claims** made or **Wrongful Acts** occurring anywhere in the world.

**B.**   **RETENTION**

The **Insured** shall bear uninsured at its own risk the amount of any applicable Retention, which amount must be paid in satisfaction of **Loss.**

If any **Claim** gives rise to coverage under a single **Liability Coverage**, the Company has no obligation to pay **Loss**, including **Defense Expenses**, until the applicable Retention amount set forth in ITEM 5 of the Declarations has been paid by the **Insured**.

If any **Claim** is subject to different Retentions under a single **Liability Coverage**, the applicable Retentions will be applied separately to each part of such **Claim**, but the sum of such Retentions will not exceed the largest applicable Retention under such **Liability Coverage**.

If any **Claim** gives rise to coverage under two or more **Liability Coverages**, the Company shall have no obligation to pay **Loss**, including **Defense Expenses**, until the largest Retention that is applicable to such **Claim** under such **Liability Coverages** has been paid by the **Insured**.

No Retention will apply to an **Insured Person** if indemnification by the **Insured Organization** is not permitted by law or if the **Insured Organization** is unable to make such indemnification solely by reason of its **Financial Insolvency**. The **Insured Organization** will be conclusively deemed to have indemnified all **Insured Persons**  to the extent that the **Insured Organization** is permitted or required to indemnify them pursuant to law, common or statutory, or contract, or the charter or by-laws of the **Insured Organization**.

The Company, at its sole discretion, may pay all or part of the Retention amount on behalf of any **Insured**, and in such event, the **Insureds** agree to repay the Company any amounts so paid.

---


EXHIBIT B

C.    **LIMITS OF LIABILITY**

1.    Liability Coverage Limit of Liability

Regardless of the number of persons or entities bringing **Claims** or the number of persons or entities who are **Insureds**, and regardless of when payment is made by the Company or when an **Insured's** legal obligation with regard thereto arises or is established, and further subject to any applicable **Liability Coverage Shared Limit of Liability** or **Annual Reinstatement of the Liability Coverage Limit of Liability**:

a.    the Company's maximum limit of liability for all **Loss**, including **Defense Expenses**, for all **Claims** under each applicable **Liability Coverage** will not exceed the remaining **Liability Coverage Limit of Liability** stated in ITEM 5 of the **Declarations** for each applicable **Liability Coverage**; and

b.    in the event that a **Claim** triggers more than one **Liability Coverage**, the Company's maximum limit of liability for all **Loss**, including **Defense Expenses**, for any such **Claim** will not exceed the sum of the remaining **Liability Coverage Limits of Liability** of the applicable **Liability Coverages**.

2.    Liability Coverage Shared Limit of Liability

Regardless of the number of persons or entities bringing **Claims** or the number of persons or entities who are **Insureds**, and regardless of when payment is made by the Company or when an **Insured's** legal obligation with regard thereto arises or is established; and further subject to any applicable **Annual Reinstatement of the Liability Coverage Limit of Liability**, if ITEM 4 of the Declarations indicates that more than one **Liability Coverage** has been purchased and a **Liability Coverage Shared Limit of Liability** is shown in ITEM 12 of the Declarations:

a.    the Company's maximum limit of liability for all **Loss** , including **Defense Expenses**, for all **Claims** under all **Liability Coverages** subject to the **Liability Coverage Shared Limit of Liability**, as set forth in ITEM 12 of the Declarations, will not exceed the remaining **Liability Coverage Shared Limit of Liability**; and

b.    if the **Liability Coverage Shared Limit of Liability** is exhausted by the payment of amounts covered under any **Liability Coverage** subject to the **Liability Coverage Shared Limit of Liability**, as set forth in ITEM 12 of the Declarations, the premium for all **Liability Coverages** subject to the **Liability Coverage Shared Limit of Liability**, as set forth in ITEM 12 of the Declarations, will be fully earned, all obligations of the Company under all **Liability Coverages** subject to the **Liability Coverage Shared Limit of Liability**, as set forth in ITEM 12 of the Declarations, will be completely fulfilled and exhausted, including any duty to defend, and the Company will have no further obligations of any kind or nature whatsoever under any **Liability Coverage** subject to the **Liability Coverage Shared Limit of Liability**, as set forth in ITEM 12 of the Declarations.

3.    Annual Reinstatement of the Liability Coverage Limit of Liability

Regardless of the number of persons or entities bringing **Claims** or the number of persons or entities who are **Insureds**, and regardless of when payment is made by the Company or when an **Insured's** legal obligation with regard thereto arises or is established, if ITEM 10 of the Declarations includes an **Annual Reinstatement of the Liability Coverage Limit of Liability**:

a.    the Company's maximum limit of liability for all **Loss**, including **Defense Expenses**, for all **Claims** made during each **Policy Year** will not exceed the remaining **Liability Coverage Limit of Liability** stated in ITEM 5 of the Declarations for each applicable **Liability Coverage** or, if applicable, the remaining **Liability Coverage Shared Limit of Liability**; and

b.    with regard to the Extended Reporting Period or the Run-Off Extended Reporting Period, if applicable, the Company's maximum limit of liability for all **Claims** made during the Extended Reporting Period or the Run-Off Extended Reporting Period will not exceed the remaining **Liability Coverage Limit of Liability** or, if applicable, the **Liability Coverage Shared Limit of Liability** for the last **Policy Year** in effect at the time of the termination or cancellation of the **Liability Coverage** or the **Change of Control**.



4.      Other Provisions

Payment of **Defense Expenses** will reduce and may exhaust all applicable limits of liability. In the event the amount of **Loss** exceeds the portion of the applicable limit of liability remaining after prior payments of **Loss**, the Company's liability will not exceed the remaining amount of the applicable limit of liability.  In no event will the Company be obligated to make any payment for **Loss** , including **Defense Expenses** , with regard to a **Claim** after the applicable limit of liability has been exhausted by payment or tender of payment of **Loss**.

If a **Liability Coverage Limit of Liability** is exhausted by the payment of amounts covered under such **Liability Coverage**, the premium for such **Liability Coverage** will be fully earned, all obligations of the Company under such **Liability Coverage** will be completely fulfilled and exhausted, including any duty to defend, and the Company will have no further obligations of any kind or nature whatsoever under such **Liability Coverage**.

**D.      ADDITIONAL DEFENSE COVERAGE**

Regardless of the number of persons or entities bringing **Claims** or the number of persons or entities who are **Insureds**, and regardless of when payment is made by the Company or when an **Insured's** legal obligation with regard thereto arises or is established, if ITEM 5 of the Declarations indicates that any **Liability Coverage** includes Additional Defense Coverage, **Defense Expenses** incurred by the Company or the **Insured**, with the Company's consent, in the defense of any **Claim** made during the **Policy Period** under any such **Liability Coverage** will apply first to and reduce the **Additional Defense Limit of Liability**. The **Additional Defense Limit of Liability** will be in addition to, and not part of, such **Liability Coverage's** applicable **Liability Coverage Limit of Liability** or **Liability Coverage Shared Limit of Liability**, if applicable. The **Additional Defense Limit of Liability** is applicable to **Defense Expenses** only. If the **Annual Reinstatement of the Liability Coverage Limit of Liability** is applicable, the **Additional Defense Limit of Liability** will be reinstated for each **Policy Year**.

Upon exhaustion of the Additional Defense Limit of Liability:

1.      **Defense Expenses** incurred by the Company or the **Insured**, with the Company's consent, in the defense of a **Claim** are part of and not in addition to any applicable limit of liability; and

2.      payment by the Company or the **Insured** , with the Company's consent, of **Defense Expenses** reduces any applicable limit of liability.

**E.      CLAIM DEFENSE**

1.      If Duty-to-Defend coverage is provided with respect to this **Liability Policy** as indicated in ITEM 7 of the Declarations, the Company will have the right and duty to defend any **Claim** covered by a **Liability Coverage**, even if the allegations are groundless, false or fraudulent, including the right to select defense counsel with respect to such **Claim**; provided, that the Company will not be obligated to defend or to continue to defend any **Claim** after the applicable limit of liability has been exhausted by payment of **Loss**.

2.      If Reimbursement coverage is provided with respect to this **Liability Policy** as indicated in ITEM 7 of the Declarations:

a.      the Company will have no duty to defend any **Claim** covered by a **Liability Coverage**. It will be the duty of the **Insured** to defend such **Claims**; and the Company will have the right to participate with the **Insured** in the investigation, defense and settlement, including the negotiation of a settlement of any **Claim** that appears reasonably likely to be covered in whole or in part by such **Liability Coverage** and the selection of appropriate defense counsel; and

b.      upon written request, the Company will advance **Defense Expenses** with respect to such **Claim**.  Such advanced payments by the Company will be repaid to the Company by the **Insureds** severally according to their respective interests in the event and to the extent that the **Insureds** are not entitled to payment of such **Defense Expenses** under such **Liability Coverage**.  As a condition of any payment of **Defense Expenses** under this subsection, the Company may require a written undertaking on terms and conditions satisfactory to the Company guaranteeing the repayment of any **Defense Expenses** paid to or on behalf of any **Insured** if it is finally determined that any such **Claim** or portion of any **Claim** is not covered under such **Liability Coverage**.

EXHIBIT B

3.    The **Insured** agrees to cooperate with the Company and, upon the Company's request, assist in making settlements and in the defense of **Claims** and in enforcing rights of contribution or indemnity against any person or entity which may be liable to the **Insured** because of an act or omission insured under such **Liability Coverage**, will attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

**F.    INSURED'S DUTIES IN THE EVENT OF A CLAIM**

The **Insured's** duty to report a **Claim** commences on the earliest date a written notice thereof is received by an **Executive Officer.** If an **Executive Officer** becomes aware that a **Claim** has been made against any **Insured**, the **Insured**, as a condition precedent to any rights under this **Liability Policy,** must give to the Company written notice of the particulars of such **Claim**, including all facts related to any alleged **Wrongful Act**, the identity of each person allegedly involved in or affected by such **Wrongful Act**, and the dates of the alleged events, as soon as practicable. The **Insured** agrees to give the Company such information, assistance and cooperation as it may reasonably require.

All notices under this subsection must be sent by mail or prepaid express courier to the address set forth in ITEM 3 of the Declarations and will be effective upon receipt. The **Insured** agrees not to voluntarily settle any **Claim**, make any settlement offer, assume or admit any liability or, except at the **Insured's** own cost, voluntarily make any payment, pay or incur any **Defense Expenses**, or assume any obligation or incur any other expense, without the Company's prior written consent, such consent not to be unreasonably withheld. The Company is not liable for any settlement, **Defense Expenses**, assumed obligation or admission to which it has not consented.

**G.    NOTICE OF POTENTIAL CLAIMS**

If an **Insured** becomes aware of a **Potential Claim** and gives the Company written notice of the particulars of such **Potential Claim,** including all facts related to the **Wrongful Act**, the identity of each person allegedly involved in or affected by such **Wrongful Act** , the dates of the alleged events, and the reasons for anticipating a **Claim** , as soon as practicable during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, any **Claim** subsequently made against any **Insured** arising out of such **Wrongful Act** will be deemed to have been made during the **Policy Period**.

All notices under this subsection must be sent by mail or prepaid express courier to the address set forth in ITEM 3 of the Declarations and will be effective upon receipt.

**H.    RELATED CLAIMS**

All **Claims** or **Potential Claims** for **Related Wrongful Acts** will be considered as a single **Claim** or **Potential Claim**, whichever is applicable, for purposes of this **Liability Policy**. All **Claims** or **Potential Claims** for **Related Wrongful Acts** will be deemed to have been made at the time the first of such **Claims** or **Potential Claims** for **Related Wrongful Acts** was made whether prior to or during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period.

**I.    SUBROGATION**

In the event of payment under this **Liability Policy**, the Company is subrogated to all of the **Insured's** rights of recovery against any person or organization to the extent of such payment and the **Insured** agrees to execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** will do nothing to prejudice such rights.

**J.    RECOVERIES**

All recoveries from third parties for payments made under this **Liability Policy** will be applied, after first deducting the costs and expenses incurred in obtaining such recovery, in the following order of priority:

1.    first, to the Company to reimburse the Company for any Retention amount it has paid on behalf of any **Insured**;

2.    second, to the **Insured** to reimburse the **Insured** for the amount it has paid which would have been paid hereunder but for the fact that it is in excess of the applicable limits of liability hereunder;


EXHIBIT B

3.    third, to the Company to reimburse the Company for the amount paid hereunder; and

4.    fourth, to the **Insured** in satisfaction of any applicable Retention;

provided, recoveries do not include any recovery from insurance, suretyship, reinsurance, security or indemnity taken for the Company's benefit.

**K.    CHANGE OF CONTROL**

If, during the **Policy Period**, a **Change of Control** occurs, coverage will continue in full force and effect with respect to **Claims** for **Wrongful Acts** committed before such event, but coverage will cease with respect to **Claims** for **Wrongful Acts** committed after such event. No coverage will be available hereunder for **Loss**, including **Defense Expenses**, for any **Claim** based upon, alleging, arising out of, or in any way relating to, directly or indirectly any **Wrongful Act** committed or allegedly committed after such event. After any such event, the **Liability Policy** may not be canceled by the **Named Insured** and the entire premium for the **Liability Policy** will be deemed fully earned.

Upon the occurrence of any **Change of Control**, the **Named Insured** will have the right to give the Company notice that it desires to purchase a Run-Off Extended Reporting Period for any **Liability Coverage** for the period set forth in ITEM 9 of the Declarations following the effective date of such **Change of Control**, regarding **Claims** made during such Run-Off Extended Reporting Period against persons or entities who at the effective date of the **Change of Control** are **Insureds**, but only for **Wrongful Acts** occurring wholly prior to such **Change of Control** and which otherwise would be covered by such **Liability Coverage**, subject to the following provisions:

1.    such Run-Off Extended Reporting Period will not provide new, additional or renewed limits of liability; and

2.    the Company's total liability for all **Claims** made during such Run-Off Extended Reporting Period will be only the remaining portion of the applicable limit of liability set forth in the Declarations as of the effective date of the **Change of Control**.

The premium due for the Run-Off Extended Reporting Period will equal the percentage set forth in ITEM 9 of the Declarations of the annualized premium of the applicable **Liability Coverage**, including the fully annualized amount of any additional premiums charged by the Company during the **Policy Period** prior to the **Change of Control**. The entire premium for the Run-Off Extended Reporting Period will be deemed fully earned at the commencement of such Run-Off Extended Reporting Period.

The right to elect the Run-Off Extended Reporting Period will terminate unless written notice of such election, together with payment of the additional premium due, is received by the Company within thirty (30) days of the **Change of Control**. In the event the Run-Off Extended Reporting Period is purchased, the option to purchase the Extended Reporting Period in Section III. CONDITIONS O. EXTENDED REPORTING PERIOD of these Liability Coverage Terms and Conditions will terminate. In the event the Run-Off Extended Reporting Period is not purchased, the **Named Insured** will have the right to purchase the Extended Reporting Period under the terms of Section III. CONDITIONS O. EXTENDED REPORTING PERIOD of these Liability Coverage Terms and Conditions.

If, at any time during the **Policy Period**, the **Insured Organization** eliminates or reduces its ownership interest in, or control over a **Subsidiary**, such that it no longer meets the definition of a **Subsidiary**, coverage will continue for such entity but only with regard to **Claims** for **Wrongful Acts** which occurred wholly during the time that the entity was a **Subsidiary**.

**L.    ACQUISITIONS**

If, during the **Policy Period**, the **Insured Organization** acquires or forms a **Subsidiary**, this **Liability Policy** will provide coverage for such **Subsidiary** and its respective **Insured Persons**, subject to all other terms and conditions of this **Liability Policy**, provided written notice of such acquisition or formation has been given to the Company, and specific application has been submitted on the Company's form in use at the time, together with such documentation and information as the Company may require, all within ninety (90) days after the effective date of such formation or acquisition. Coverage for such **Subsidiary** will not be afforded following such 90-day period unless the Company has agreed to provide such coverage, subject to any additional terms and conditions as the Company may require, and the **Named Insured** has paid the Company any additional premium as may be required by the Company.

The 90-day notice requirement and the 90-day limitation of coverage will not apply provided that: (1) the assets of the acquired or formed **Subsidiary** do not exceed 30% of the total assets of the **Insured Organization** as reflected in the **Insured Organization's** most recent fiscal year-end financial statement; or (2) the acquisition or formation occurs less than 90 days prior to the end of the **Policy Period**.

**M.     SPOUSAL AND DOMESTIC PARTNER LIABILITY COVERAGE**

This **Liability Policy** will, subject to all of its terms, conditions, and limitations, be extended to apply to **Loss** resulting from a **Claim** made against a person who, at the time the **Claim** is made, is a lawful spouse or a person qualifying as a domestic partner under the provisions of any applicable federal, state or local law (a "Domestic Partner") of an **Insured Person**, but only if and so long as:

1.     the **Claim** against such spouse or Domestic Partner results from a **Wrongful Act** actually or allegedly committed by the **Insured Person**, to whom the spouse is married, or who is joined with the Domestic Partner; and

2.     such **Insured Person** and his or her spouse or Domestic Partner are represented by the same counsel in connection with such **Claim**.

No spouse or Domestic Partner of an **Insured Person** will, by reason of this subsection have any greater right to coverage under this **Liability Policy** than the **Insured Person** to whom such spouse is married, or to whom such Domestic Partner is joined.

The Company has no obligation to make any payment for **Loss** in connection with any **Claim** against a spouse or Domestic Partner of an **Insured Person** for any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by such spouse or Domestic Partner.

**N.     FOREIGN PARENT CORPORATION COVERAGE**

This **Liability Policy** will, subject to all of its terms, conditions, and limitations, be extended to apply coverage for **Defense Expenses** resulting from any **Claim** made against a **Foreign Parent Corporation**, but only if and so long as:

1.     such **Claim** results from a **Wrongful Act** actually or allegedly committed solely by any **Insured**;

2.     such **Insured** and the **Foreign Parent Corporation** are represented by the same counsel in connection with such **Claim**; and

3.     such **Insured** is included as a co-defendant.

No **Foreign Parent Corporation** will, by reason of this subsection, have any greater right to coverage under this **Liability Policy** than any **Insured**.

The Company has no obligation to make any payment for **Loss** in connection with any **Claim** against a **Foreign Parent Corporation** for any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by such **Foreign Parent Corporation** or any member of the board of directors, officer, employee, or functional equivalent thereof.

**O.     EXTENDED REPORTING PERIOD**

At any time prior to or within 60 days after the effective date of termination or cancellation of any Liability Coverage for any reason other than nonpayment of premium, the **Named Insured** may give the Company written notice that it desires to purchase an Extended Reporting Period for the period set forth in ITEM 8 of the Declarations following the effective date of such termination or cancellation, regarding **Claims** made during such Extended Reporting Period against persons or entities who at or prior to the effective date of termination or cancellation are **Insureds**, but only for **Wrongful Acts** occurring wholly prior to the effective date of the termination or cancellation and which otherwise would be covered by such **Liability Coverage**, subject to the following provisions:

1.     such Extended Reporting Period will not provide a new, additional or renewed limit(s) of liability; and

2.     the Company's maximum limit of liability for all **Claims** made during such Extended Reporting Period will be only the remaining portion of the applicable limit of liability set forth in the Declarations as of the effective date of the termination or cancellation;


EXHIBIT B

The premium due for the Extended Reporting Period will equal the percentage set forth in ITEM 8 of the Declarations of the annualized premium of the applicable **Liability Coverage**, including the fully annualized amount of any additional premiums charged by the Company during the **Policy Year** prior to such termination or cancellation.  The entire premium for the Extended Reporting Period will be deemed to have been fully earned at the commencement of such Extended Reporting Period.

The right to elect the Extended Reporting Period will terminate unless written notice of such election, together with payment of the additional premium due, is received by the Company within 60 days of the effective date of the termination or cancellation.

**P.**   **ALLOCATION**

1.   If Duty-to-Defend coverage is indicated in ITEM 7 of the Declarations and there is a **Claim** under any **Liability Coverage** in which the **Insureds** who are afforded coverage for such **Claim** incur an amount consisting of both **Loss** that is covered by such **Liability Coverage** and also loss that is not covered by such **Liability Coverage** because such **Claim** includes both covered and uncovered matters or covered and uncovered parties, then such covered **Loss** and uncovered loss will be allocated as follows:

   a.   one hundred percent (100%) of **Defense Expenses** incurred by the **Insureds** who are afforded coverage for such **Claim** will be allocated to covered **Loss**; and

   b.   all loss other than **Defense Expense** will be allocated between covered **Loss** and uncovered loss based upon the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and settlement of the **Claim** by the **Insured Persons**, the **Insured Organization**, and others not insured under such **Liability Coverage**.  In making such a determination, the **Insured Organization**, the **Insured Persons** and the Company agree to use their best efforts to determine a fair and proper allocation of all such amounts.  In the event that an allocation cannot be agreed to, then the Company will be obligated to make an interim payment of the amount of **Loss** which the parties agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of the applicable **Liability Coverage** and applicable law.

2.   If Reimbursement coverage is indicated in ITEM 7 of the Declarations and there is a **Claim** under any **Liability Coverage** in which the **Insureds** who are afforded coverage for such **Claim** incur an amount consisting of both **Loss** that is covered by such **Liability Coverage** and also loss that is not covered by such **Liability Coverage** because such **Claim** includes both covered and uncovered matters or covered and uncovered parties, the **Insureds** and the Company agree to use their best efforts to determine a fair and proper allocation of all such amounts.  In making such a determination, the parties will take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and settlement of the **Claim** by the **Insured Persons**, the **Insured Organization**, and others not insured under the applicable **Liability Coverage**.  In the event that an allocation cannot be agreed to, then the Company will be obligated to make an interim payment of the amount of **Loss** which the parties agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of the applicable **Liability Coverage** and applicable law.

**Q.**   **CANCELLATION**

The Company may cancel this **Liability Policy** for failure to pay a premium when due, in which case twenty (20) days written notice will be given to the **Named Insured**, unless, payment in full is received within twenty (20) days of the **Named Insured's** receipt of such notice of cancellation. The Company has the right to the premium amount for the portion of the **Policy Period** during which this **Liability Policy** was in effect.

Subject to the provisions set forth in Section III. CONDITIONS K. CHANGE OF CONTROL, the **Named Insured** may cancel any **Liability Coverage** by mailing the Company written notice stating when, thereafter, not later than the Expiration Date set forth in ITEM 2 of the Declarations, such cancellation will be effective.   In the event the **Named Insured** cancels, the earned premium will be computed in accordance with the customary short rate table and procedure.  Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.



The Company will not be required to renew this **Liability Policy** upon its expiration. If the Company elects not to renew, it will provide to the **Named Insured** written notice to that effect at least thirty (30) days before the Expiration Date set forth in ITEM 2 of the Declarations.

**R.   ACTION AGAINST THE COMPANY**

No action will lie against the Company unless there has been full compliance with all of the terms of this **Liability Policy**.

No person or organization has any right under this **Liability Policy** to join the Company as a party to any action against the **Insured's** liability, nor may the Company be impleaded by an **Insured**   or said **Insured's** legal representative.   Bankruptcy or insolvency of any **Insured** or an **Insured's**  estate does not relieve the Company of any of its obligations hereunder.

**S.   CHANGES**

Only the **Named Insured** is authorized to make changes in the terms of this **Liability Policy** and solely with the Company's prior written consent.   This **Liability Policy's** terms can be changed, amended or waived only by endorsement issued by the Company and made a part of this **Liability Policy**.   Notice to any representative of the  **Insured**  or knowledge possessed by any agent or by any other person will not effect a waiver or change to any part of this **Liability Policy**, or estop the Company from asserting any right under the terms, conditions and limitations of this **Liability Policy**, nor may the terms, conditions and limitations hereunder be waived or changed, except by a written endorsement to this **Liability Policy** issued by the Company.

**T.   ASSIGNMENT**

This **Liability Policy** may not be assigned or transferred, and any such attempted assignment or transfer is void and without effect unless the Company has provided its prior written consent to such assignment or transfer.

**U.   REPRESENTATIONS**

By acceptance of the terms set forth in this **Liability Policy**, each **Insured** represents and agrees that the statements contained in the **Application**, which is deemed to be attached hereto, incorporated herein, and forming a part hereof, are said **Insured's** agreements and representations, that such representations are material to the Company's acceptance of this risk, that this  **Liability Policy**  is issued in reliance upon the truth of such representations, and embodies all agreements existing between said  **Insured**  and the Company or any of its agents.

If any statement or representation in the **Application** is untrue with respect to any **Liability Coverage**, such **Liability Coverage** is void and of no effect whatsoever, but only with respect to:

1.   any **Insured Person** who knew, as of the Inception Date set forth in ITEM 2 of the Declarations, that the statement or representation was untrue;

2.   any **Insured Organization**, with respect to its indemnification coverage, to the extent it indemnifies any **Insured Person** referenced in 1. above; and

3.   any **Insured Organization**, if the person who signed the **Application** knew that the statement or representation was untrue.

Whether an **Insured Person** had such knowledge will be determined without regard to whether the **Insured Person** actually knew the **Application**, or any other application completed for this **Liability Policy**, contained any such untrue statement or representation.

**V.   LIBERALIZATION**

If, during the **Policy Period**, the Company is required, by law or by insurance supervisory authorities of the state in which this **Liability Policy** was issued, to make any changes in the form of this **Liability Policy**, by which the insurance afforded by this **Liability Policy** could be extended or broadened without increased premium charge by endorsement or substitution of form, then such extended or broadened insurance will inure to the benefit of the **Insured** as of the date the revision or change is approved for general use by the applicable department of insurance.



**W.   AUTHORIZATION**

By acceptance of the terms herein, the **Named Insured** agrees to act on behalf of all **Insureds** with respect to the payment of premiums, the receiving of any return premiums that may become due hereunder, and the receiving of notices of cancellation, nonrenewal, or change of coverage, and the **Insureds** each agree that they have, individually and collectively, delegated such authority exclusively to the **Named Insured**; provided, that nothing herein will relieve the **Insureds** from giving any notice to the Company that is required under this **Liability Policy**.

**X.   ENTIRE AGREEMENT**

The Declarations, the **Application**, the Liability Coverage Terms and Conditions, each **Liability Coverage**, and any endorsements attached thereto, constitute the entire agreement between the Company and the **Insured**.

**Y.   HEADINGS**

The titles of the various paragraphs of this **Liability Policy** and its endorsements are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provision to which they relate.

EXHIBIT B

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

---

## ARKANSAS CHANGES ENDORSEMENT

This endorsement modifies the following:

**Liability Coverage Terms and Conditions**

---

**It is agreed that:**

1.  Section **III. CONDITIONS, O. EXTENDED REPORTING PERIOD** is amended by deleting provision 2. and replacing it with the following:

    2.  the Company's maximum limit of liability applicable to all **Claims** made during such Extended Reporting Period will be no less than the greater of the remaining portion of the applicable limit of liability or 50% of the applicable limit of liability as of the effective date of termination or cancellation;

2.  Section **III. CONDITIONS, O. EXTENDED REPORTING PERIOD** is amended by the addition of the following:

    This **Liability Policy** provides an automatic 60 day Extended Reporting Period following the effective date of termination or cancellation, regarding **Claims** which may be made during such Extended Reporting Period against persons or entities who at the effective date of termination or cancellation are **Insureds,** but only for **Wrongful Acts** occurring wholly prior to the effective date of the termination or cancellation and which otherwise would be insured by this **Liability Policy**. This automatic 60 day Extended Reporting Period begins on the effective date of termination or cancellation, whether by the **Named Insured** or by the Company, and is subject to the provisions specified within this section.  The following additional provisions apply to this additional provision:

    1.  If the Named Insured chooses to purchase an Extended Reporting Period under the terms set forth in the Declarations, this automatic 60 day Extended Reporting Period will be deemed part of that Extended Reporting Period; and

    2.  The automatic 60 day Extended Reporting Period will not provide a new, additional or renewed applicable limit of liability, and the limit of liability applicable to all **Claims** made during such automatic 60 day Extended Reporting Period will be only the remaining portion of the applicable limit of liability as of the effective date of termination or cancellation.

    If the termination or cancellation of this **Liability Policy** is for nonpayment of premium, the Company shall be entitled to any premium due.

3.  Section **II. DEFINITIONS, V. Pollutant** is amended by deleting the phrase "any smoke" and replacing it with the phrase "any smoke except smoke from a hostile fire".

4.  Section **III. CONDITIONS, C.3.** is amended by deleting the phrase "the Extended Reporting Period or".

5.  Section **III. CONDITIONS, C.3.** is amended by the addition of the following:

    With regard to the Extended Reporting Period, if applicable, the Company's maximum limit of liability applicable to all Claims made during such Extended Reporting Period will be no less than the greater of the remaining portion of

---

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**

---

©2009 The Travelers Companies, Inc. All Rights Reserved

# EXHIBIT B

the applicable limit of liability or 50% of the applicable of the applicable limit of liability for the last Policy Year in effect at the time of the termination or cancellation of the Liability Coverage or the Change of Control.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

# EXHIBIT B

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ARKANSAS CANCELLATION AND NONRENEWAL ENDORSEMENT

This endorsement modifies insurance provided under the following if applicable:

**Liability Policy**
**Kidnap and Ransom Policy**
**Identity Fraud Expense Reimbursement Policy**

**It is agreed that:**

The CANCELLATION section of this policy is replaced by the following:

CANCELLATION

The Company may cancel this policy for failure to pay a premium when due, in which case
**(Twenty) (20)** days (number of days must equal or exceed twenty (20) days) written notice,
including the reason(s) for cancellation, shall be given to the **Named Insured or Insurance Representative** and to any
lienholder or loss payee named in the policy, unless payment in full is received within twenty (20) days of the **Named
Insured or Insurance Representative's** receipt of such notice of cancellation. The Company shall have the right to the
premium amount for the portion of the **Policy Period** during which this policy was in effect.

Subject to the provisions set forth in Liability Coverage Terms and Conditions Section III. CONDITIONS K. CHANGE OF
CONTROL, if applicable, the **Named Insured or Insurance Representative** may cancel any coverage by mailing the
Company written notice stating when, thereafter, not later than the Expiration Date set forth in ITEM 2 of the Declarations,
such cancellation will be effective. In the event the **Named Insured or Insurance Representative** cancels, the earned
premium will be computed in accordance with the customary short rate table and procedure. Premium adjustment may be
made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but
payment or tender of unearned premium is not a condition of cancellation.

The Company will not be required to renew this policy upon its expiration. If the Company elects not to renew, it will
provide to the **Named Insured or Insurance Representative** written notice to that effect
**(Thirty) (30)** days (number of days must equal or exceed thirty (30) days) before the
Expiration Date set forth in ITEM 2 of the Declarations if we are nonrenewing for nonpayment of premium, or
**(Sixty) (60)** days (number of days must equal or exceed sixty (60) days) before such
date if we are nonrenewing for any other reason.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations
of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and
incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**


EXHIBIT B

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ABSOLUTE MEDICAL MALPRACTICE EXCLUSION ENDORSEMENT

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

The following is added to **EXCLUSIONS APPLICABLE TO ALL LOSS:**

The Company will have no liability for **Loss** for any **Claim** based upon or arising out of the rendering of, or failure to render, any medical or professional services, including without limitation any **Claim** for medical or professional malpractice.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,exclusions or limitations of the above-mentioned policy, except as expressly stated herein.   This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **105549106**


EXHIBIT B

| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. |
| --- |

## REDUCED LIMITS AND SEPARATE RETENTION FOR ANTITRUST CLAIMS ENDORSEMENT

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

---

**It is agreed that:**

1.  The following is added to section **III. CONDITIONS, B. RETENTION** of the Liability Coverage Terms and Conditions:

    The Retention for each **Claim** set forth in ITEM 5 of the Declarations will not apply to any **Antitrust Claim** under the **Liability Coverage,**and instead, the Retention for each **Antitrust Claim** will be the **Antitrust Claims** Retention for each **Antitrust Claim** set forth in ITEM 5 of the Declarations.

2.  The following is added to section **III. CONDITIONS, C. LIMITS OF LIABILITY**, 1. of the Liability Coverage Terms and Conditions:

    However, the Company's maximum limit of liability for all **Loss**, including **Defense Expenses**, for all **Antitrust Claims** is further limited by the following:

    > The Company's maximum limit of liability for all **Loss**, including **Defense Expenses**, for all **Antitrust Claims** under the **Liability Coverage** will not exceed the **Antitrust Claims** Limit of Liability for all **Antitrust Claims** set forth in ITEM 5 of the Declarations. The **Antitrust Claims** Limit of Liability for all **Antitrust Claims** is included within, and not in addition to, the applicable **Liability Coverage Limit of Liability**, and is further subject to any applicable limits of liability.

3.  The following is added to section **III. CONDITIONS, D. ADDITIONAL DEFENSE COVERAGE** of the Liability overage Terms and Conditions:

    The Company's maximum liability for **Defense Expenses** for all **Antitrust Claims** paid pursuant to the **Additional Defense Limit of Liability** will not exceed the **Antitrust Claims** Limit of Liability set forth for such Scheduled Matters in ITEM 5 of the Declarations. Such **Defense Expenses** will be part of, and not in addition to, the **Antitrust Claims** Limit of Liability set for in ITEM 5 of the Declarations and such **Antitrust Claims** Limit of Liability will be reduced and may be exhausted by payment of such **Defense Expenses** under the **Additional Defense Limit of Liability.**

4.  The following is added to section **DEFINITIONS** of the **Liability Coverage**:

    ***Antitrust Claim*** means any **Claim** for any actual or alleged violation of any law, rule or regulation relating to antitrust, the prohibition of monopolies, activities in restraint of trade, unfair methods ofcompetition or deceptive acts and practices in trade and commerce, including any actual or alleged violation of the Sherman Act, the Clayton Act, the Robinson-Patman Act, The Federal Trade Commission Act, the Hart-Scott-Rodino Antitrust Improvements Act, or any regulation or rule promulgated under any such Act.

5.  The following is added to ITEM 5. of the Declarations:

---

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**

---

LIA-7059 Ed. 01-09 Printed in U.S.A.
©2009 The Travelers Companies, Inc. All Rights Reserved



EXHIBIT B

**Antitrust Claims Limit of Liability:**   **$15,000,000.00** for all **Antitrust Claims**

**Antitrust Claims Limit of Liability:**   **$15,000,000.00** for each **Antitrust Claim**

**Antitrust Claims Retention:**   **$0.00**   for each **Antitrust Claim** under Insuring  Agreement A.

**$250,000.00** for each **Antitrust Claim** under Insuring Agreement B.

**$250,000.00** for each **Antitrust Claim** under Insuring  Agreement C.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,exclusions or limitations of the above-mentioned policy, except as expressly stated herein.   This endorsement is part of such policy and incorporated therein.



EXHIBIT B

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

---

**AMEND NUMBER OF DAYS FOR ELECTING EXTENDED REPORTING PERIOD ENDORSEMENT**

This endorsement modifies the following:

**Private Company Directors and Officers Liability, Employment Practices Liability**

---

**It is agreed that:**

Solely with respect to the **Liability Coverage(s)** shown above, section **III. CONDITIONS, O. EXTENDED REPORTING PERIOD** of the **Liability Coverage Terms and Conditions** is replaced by the following:

**O.    EXTENDED REPORTING PERIOD**

At any time prior to or within **90** days after   the    effective   date   of   termination or cancellation of any Liability Coverage for any reason other than nonpayment of premium, the **Named Insured** may give the Company written notice that it desires to purchase an Extended Reporting Period for the period set forth in ITEM 8 of the Declarations following the effective date of such termination or cancellation, regarding **Claims** made during such Extended Reporting Period against persons or entities who at or prior to the effective date of termination or cancellation are **Insureds**, but only for **Wrongful Acts** occurring wholly prior to the effective date of the termination or cancellation and which otherwise would be covered by such **Liability Coverage**, subject to the following provisions:

1.      such Extended Reporting Period will not provide a new, additional or renewed limit(s) of liability; and

2.      the Company's maximum limit of liability for all **Claims** made during such Extended Reporting Period will be only the remaining portion of the applicable limit of liability set forth in the Declarations as of the effective date of the termination or cancellation;

The premium due for the Extended Reporting Period will equal the percentage set forth in ITEM 8 of the Declarations of the annualized premium of the applicable **Liability Coverage**, including the fully annualized amount of any additional premiums charged by the Company during the **Policy Year** prior to such termination or cancellation.  The entire premium for the Extended Reporting Period will be deemed to have been fully earned at the commencement of such Extended Reporting Period.

The right to elect the Extended   Reporting   Period will   terminate   unless   written   notice   of   such election, together with payment of the additional premium due, is received by the Company within **90** days of the effective date of the termination or cancellation.

---

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,exclusions or limitations of the above-mentioned policy, except as expressly stated herein.   This endorsement is part of such policy and incorporated therein.

---

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **105549106**

---

# EXHIBIT B

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TIE-IN-LIMIT ENDORSEMENT

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

---

**It is agreed that:**

Solely with respect to the **Liability Coverage(s)** shown above, section **III. CONDITIONS, C. LIMITS OF LIABILITY** of the **Liability Coverage Terms and Conditions** is amended as follows:

If any **Claim** gives rise to coverage, either in whole or in part, under this **Liability Policy** and also policy number **105390600** issued by the Company or any of its affiliates, the maximum aggregate limit of liability of the Company and its affiliates under both policies for such **Claim** will not exceed **$15,000,000.00**, subject to the remaining applicable limits of liability of such policies.

---

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,exclusions or limitations of the above-mentioned policy, except as expressly stated herein.   This endorsement is part of such policy and incorporated therein.

---

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **105549106**

---

LIA-7106 Ed. 01-09 Printed in U.S.A.                                            Page 1 of 1
©2009 The Travelers Companies, Inc. All Rights Reserved


EXHIBIT B

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND CONDUCT EXCLUSION FOR UNDERLYING ACTION ENDORSEMENT

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

The following replaces section **IV. EXCLUSIONS, B. EXCLUSIONS APPLICABLE TO LOSS, OTHER THAN DEFENSE EXPENSES**, 1. of the **Liability Coverage:**

1. The Company will not be liable for **Loss**, other than **Defense Expenses**, for any **Claim** based on or arising out of any **Insured**:

   a.   committing any intentionally dishonest or fraudulent act or omission;

   b.   committing any willful violation of any statute, rule, or law; or

   c.   gaining any profit, remuneration or advantage to which such **Insured** was not legally entitled;

   provided,that this exclusion will not apply unless a judgment or other final adjudication in the underlying action establishes that such **Insured** committed such intentionally dishonest or fraudulent act or omission, or willful violation of any statute,rule or law, or gained such profit,remuneration or advantage to which such **Insured** was not legally entitled.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,exclusions or limitations of the above-mentioned policy, except as expressly stated herein.   This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **105549106**

©2009 The Travelers Companies, Inc. All Rights Reserved

# EXHIBIT B

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITION OF INSURANCE COMPANY ERRORS AND OMISSIONS EXCLUSION ENDORSEMENT

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

---

**It is agreed that:**

1.  The following is added to section **III. DEFINITIONS** of the **Liability Coverage:**

    *Insurance Contract* means any policy of insurance, reinsurance, bond, or indemnity, including annuities, endowments, pension and risk management self-insurance programs, pools or similar programs.

2.  The following is added to section **IV. EXCLUSIONS, A. EXCLUSIONS APPLICABLE TO ALL LOSS** of the **Liability Coverage:**

    The Company will not be liable for **Loss** for any **Claim** based upon or arising out of any:

    a.   failure or refusal to issue or renew, in whole or in part, any **Insurance Contract**,or the actual or attempted rescission or cancellation, in whole or in part, of any **Insurance Contract**;

    b.   failure or refusal to pay, or delay in the payment of, benefits due or alleged to have been due under any **Insurance Contract;**

    c.   unfair dealing or lack of good faith in the handling of any claim or obligation under any **Insurance Contract**, or in the sale, brokering or underwriting of any **Insurance Contract** or risk; or

    d.   insolvency, conservatorship, or receivership of any other insurance company.

---

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

---

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **105549106**

---

©2009 The Travelers Companies, Inc. All Rights Reserved

# EXHIBIT B

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND INSURED VERSUS INSURED EXCLUSION FOR SECURITY HOLDER DERIVATIVE CLAIM OR DEMAND ENDORSEMENT

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

1.   The following is added to section **III. DEFINITIONS** of the **Liability Coverage:**

*Whistleblower Activity* means activity protected under any whistleblower protection provision of any applicable federal, state, local or foreign securities law that affords protection to a natural person, other than the filing of a proceeding, causing a proceeding to be filed, or any other activity that is engaged in on a voluntary basis.

2.   The following replaces **section IV. EXCLUSIONS, A. EXCLUSIONS APPLICABLE TO ALL LOSS**, 9., a. of the **Liability Coverage:**

9.   The Company will not be liable for **Loss** for any **Claim** by or on behalf of, or in the name or right of, any **Insured**; provided, that this exclusion will not apply to:

a.   any **Security Holder Derivative Claim** or any **Security Holder Derivative Demand**, provided that if any **Insured Person** engages in any **Whistleblower Activity**, such activity alone will not be considered to be brought, maintained, or asserted with the assistance, participation, or solicitation of any member of the board of directors, officer, member of the board of trustees, member of the board of managers, or a functional equivalent thereof;

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.   This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **105549106**

LIA-7343 Ed. 01-09 Printed in U.S.A.
©2009 The Travelers Companies, Inc. All Rights Reserved

Page 1 of 1


EXHIBIT B

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

---

# INCREASED LIMIT OF LIABILITY - PRIOR AND PENDING PROCEEDING AND CONTINUITY DATES ENDORSEMENT

This endorsement modifies the following:

**Employment Practices Liability**

---

**It is agreed that:**

Solely with respect to that portion of the **Liability Coverage Limit of Liability** that is **Limit 1** excess of **Limit 2** as shown below respectively in the Increased Limits Schedule, the corresponding dates in the Increased Limits Schedule replace the Prior and Pending Proceeding Date and the Continuity Date set forth in ITEM 5 of the Declarations:

### Increased Limits Schedule

**Employment Practices Liability**

| Limit 1 | Limit 2 | Prior and Pending Proceeding Date | Continuity Date |
|---|---|---|---|
| $5,000,000.00 | $5,000,000.00 | 01/01/2011 | 01/01/2011 |

---

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

---

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **105549106**

---

LIA-7305 Ed. 01-10 Printed in U.S.A.

©2010 The Travelers Companies, Inc. All Rights Reserved

Page 1 of 1

# EXHIBIT B

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

---

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT

This endorsement modifies the following:

**Employment Practices Liability, Private Company Directors and Officers Liability**

---

**It is agreed that:**

1.     The following is added to the **CONDITIONS** section:

   **CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

   If aggregate insured losses attributable to **Certified Acts of Terrorism** exceed $100 billion in a program year (January 1 through December 31) and the Company has met the deductible under the Terrorism Risk Insurance Act:

   a.     the Company will not be responsible for the payment of any portion of the amount of such losses that exceeds $100 billion; and

   b.     insured losses up to $100 billion will be subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

   The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded.

2.     The following is added to the **DEFINITIONS** section:

   **Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

   a.     the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   b.     the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

---

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

---

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **105549106**

---

ACF-7004 Ed. 01-10 Printed in U.S.A.                                                                    Page 1 of 1
©2010 The Travelers Companies, Inc. All Rights Reserved

# EXHIBIT B

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

---

## AMEND DEFINITION OF OUTSIDE ENTITY TO INCLUDE SPECIFIED ENTITY ON A TRIPLE EXCESS BASIS ENDORSEMENT

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

---

**It is agreed that:**

1.  The following is added to section **III. DEFINITIONS, Outside Entity** of the **Liability Coverage:**

    **Outside Entity** also means any Specified Outside Entity as set forth in the Specified Outside Entity schedule below.

    **Specified Outside Entity**

    **B.P. Informatics, LLC**

    **Med-Vantage, Inc.**

2.  The following is added to section **III. DEFINITIONS, Outside Position** of the **Liability Coverage:**

    **Outside Position** does not include service by an **Insured Person** with any Specified Outside Entity as set forth in the Specified Outside Entity schedule, above, unless the **Insured Organization** agrees to indemnify such **Insured Person** for **Claims** for **Wrongful Acts** in connection with such service.

3.  The following is added to section **VI. CONDITIONS, D. OTHER INSURANCE AND INDEMNIFICATION** of the **Liability Coverage:**

    Provided, that with respect to any **Claim** against an **Insured Person** for a **Wrongful Act** in his or her **Outside Position** with any Specified Outside Entity as set forth in the Specified Outside Entity schedule, above, this **Liability Coverage** shall apply only as excess insurance over, and shall not contribute with: (1) any other valid and collectible insurance available to any **Insured**, including any insurance under which there is a duty to defend, unless such insurance is written specifically excess of this **Liability Coverage** by reference in such other policy to the Policy Number of this **Liability Policy**; (2) indemnification to which an **Insured Person** is entitled from any **Outside Entity**, including any Specified Outside Entity listed above; and (3) indemnification to which an **Insured Person** is entitled from the **Insured Organization**. This **Liability Coverage** will not be subject to the terms of any other insurance.

---

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

---

Issuing Company: Travelers Casualty and Surety Company of America

Policy Number: 105549106

---



EXHIBIT B

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DELETE RETENTION WAIVER ENDORSEMENT

This endorsement changes the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

Section **VI. CONDITIONS**, **A. RETENTION** of the Private Company Directors and Officers Liability Coverage is deleted.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**

EXHIBIT B

© 2010 The Travelers Indemnity Company. All rights reserved.

 **TRAVELERS**

 **Wrap+®**

*EMPLOYMENT PRACTICES LIABILITY COVERAGE*

*THIS IS A CLAIMS MADE COVERAGE WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ ALL TERMS CAREFULLY.*

## I.   INSURING AGREEMENT

A.   The Company will pay on behalf of the **Insured**, **Loss** for any **Employment Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, for a **Wrongful Employment Practice**.

B.   If ITEM 5 of the Declarations indicates that Third Party Claim Coverage is applicable, the Company will pay on behalf of the **Insured**, **Loss** for any **Third Party Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, for a **Third Party Wrongful Act**.

## II.   DEFINITIONS

Wherever appearing in this **Liability Coverage**, the following words and phrases appearing in bold type will have the meanings set forth in section II. DEFINITIONS:

A.   *Claim* means an **Employment Claim** or, if ITEM 5 of the Declarations indicates that Third Party Claim Coverage is applicable, a **Third Party Claim**. A **Claim** is deemed to be made on the earliest date that any **Executive Officer** first receives written notice of such **Claim**. However, if any **Insured Person** who is not an **Executive Officer** first receives written notice of a **Claim** during the **Policy Period**, but no **Executive Officer** receives written notice of such **Claim** until after the **Policy Period** has expired, then such **Claim** will be deemed to have been made on the date such **Insured Person** first received written notice of the **Claim**.

B.   *Claimant* means:

   1.   a past, present or future **Employee** of or applicant for employment with the **Insured Organization**;

   2.   a governmental entity or agency, including the Equal Employment Opportunity Commission or similar federal, state or local agency, when acting on behalf of or for the benefit of a past, present or future **Employee** or applicant for employment with the **Insured Organization**; or

   3.   any **Independent Contractor**.

C.   *Discrimination* means any actual or alleged:

   1.   violation of any employment discrimination law; or

   2.   disparate treatment of, or the failure or refusal to hire a **Claimant** or **Outside Claimant** because he or she is or claims to be a member of a class which is or is alleged to be legally protected.

D.   *Employee* means a natural person whose labor or service is engaged by and directed by the **Insured Organization** and:

   1.   who is on the payroll of the **Insured Organization**, including:

      a.   any in-house general counsel of the **Insured Organization**; and

EPL-3001 Ed. 01-09 Printed in U.S.A.
©2009 The Travelers Companies, Inc. All Rights Reserved

Page 1 of 9

 **EXHIBIT B**

See below

          b.      any other full-time, part-time, and seasonal worker;

   2.     who is a volunteer or temporary worker; or

   3.     whose services have been leased by the **Insured Organization**.

**Independent Contractors** are not **Employees**.  The status of an individual as an **Employee** will be determined as of the date of the alleged **Wrongful Act**.

E.    *Employment Agreement* means any express or implied employment agreement regardless of the basis in which such agreement is alleged to exist, other than a collective bargaining agreement.

F.    *Employment Claim* means:

   1.     a written demand for monetary damages or non-monetary relief;

   2.     a civil proceeding commenced by service of a complaint or similar pleading;

   3.     a criminal proceeding commenced by filing of charges;

   4.     a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order, service of summons or similar document, including a proceeding before the Equal Employment Opportunity Commission or any similar governmental agency; provided that in the context of an audit conducted by the Office of Federal Contract Compliance Programs, **Employment Claim** will be limited to a Notice of Violation or Order to Show Cause or written demand for monetary damages or non-monetary relief;

   5.     an arbitration, mediation or similar alternative dispute resolution proceeding if the **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the Company's written consent, such consent not to be unreasonably withheld; or

   6.     a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding,

against an **Insured** by or on behalf of or for the benefit of a **Claimant**, or against an **Insured Person** serving in an **Outside Position** by or on behalf of or for the benefit of an **Outside Claimant**, for a **Wrongful Employment Practice**; provided that **Employment Claim** does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

G.    *Executive Officer* means an officer, member of the board of directors, natural person partner, principal, risk manager, **LLC Manager**, in-house general counsel, member of the staff of the human resources department of the **Insured Organization** or a functional equivalent thereof.

H.    *Independent Contractor* means any natural person who is not an **Employee** but who performs labor or service for the **Insured Organization** pursuant to a written contract or agreement. The status of an individual as an **Independent Contractor** will be determined as of the date of the alleged **Wrongful Act**.

I.    *Insured* means the **Insured Persons** and the **Insured Organization**.

J.    *Insured Organization* means the **Named Insured**, any **Subsidiary**, and any such entity as a debtor in possession, as such term is used in Chapter 11 of the United States of America Bankruptcy Code, as amended, or the equivalent of a debtor in possession under any applicable foreign law.

K.    *Insured Person* means any natural person who was, is or becomes an **Employee**, duly elected or appointed member of the board of directors, officer, member of the board of trustees, member of the board of regents, member of the board of governors, natural person partner, **LLC Manager** or a functional equivalent thereof of the **Insured Organization** for **Wrongful Acts** committed in the discharge of his or her duties as such, or while serving in an **Outside Position**.

EXHIBIT B

In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** for a **Wrongful Act** of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**.

L.    *Loss* means **Defense Expenses** and money which an **Insured** is legally obligated to pay as a result of a **Claim**, including settlements; judgments; back and front pay; compensatory damages; punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages; prejudgment and postjudgment interest; and legal fees and expenses of a **Claimant** or **Outside Claimant** awarded pursuant to a court order or judgment. "**Loss**" does not include:

1.    civil or criminal fines; sanctions; liquidated damages other than liquidated damages awarded under the Age Discrimination in Employment Act or the Equal Pay Act; payroll or other taxes; or damages, penalties or types of relief deemed uninsurable under applicable law;

2.    future compensation, including salary or benefits, for a **Claimant** or **Outside Claimant** who has been or will be hired, promoted or reinstated to employment pursuant to a settlement, court order, judgment, award or other resolution of a **Claim**; or that part of any judgment or settlement which constitutes front pay, future monetary losses including pension and other benefits, or other future economic relief or the value or equivalent thereof, if the **Insured** has been ordered, or has the option pursuant to a judgment, order or other award or disposition of a **Claim**, to promote, accommodate, reinstate, or hire the **Claimant** or **Outside Claimant** to whom such sums are to be paid, but fails to do so;

3.    medical, pension, disability, life insurance, **Stock Benefit** or other similar employee benefits, except and to the extent that a judgment or settlement of a **Claim** includes a monetary component measured by the value of:

a.    medical, pension, disability, life insurance, or other similar employee benefits; or

b.    **Stock Benefits** of an **Insured Organization** whose equity or debt securities are not publicly traded, including on a stock exchange or another organized securities market,

as consequential damages for a **Wrongful Act**; or

4.    any amount allocated to non-covered loss pursuant to Section III. CONDITIONS P. ALLOCATION of the Liability Coverage Terms and Conditions.

M.    *Outside Claimant* means:

1.    a past, present or future **Outside Employee** of or applicant for employment with an **Outside Entity**;

2.    a governmental entity or agency, including the Equal Employment Opportunity Commission or similar federal, state or local agency, when acting on behalf of or for the benefit of present or former **Outside Employees** or applicants for employment; or

3.    any natural person independent contractor who performs labor or service for the **Outside Entity** pursuant to a written contract or agreement, where such labor or service is under the exclusive direction of the **Outside Entity**.

N.    *Outside Employee* means a natural person whose labor or service is engaged by and directed by an **Outside Entity** and:

1.    who is on the payroll of an **Outside Entity**, including:

a.    any in-house general counsel of the **Outside Entity**; and

b.    any other full-time, part-time, and seasonal worker;



    2.     who is a volunteer or temporary worker; or

    3.     whose services have been leased by the **Outside Entity**.

The status of an individual as an **Outside Employee** will be determined as of the date of the alleged **Wrongful Employment Practice**.

**O.**    *Outside Entity* means a corporation or organization:

    1.     other than the **Insured Organization**, which is exempt from federal income tax as an entity described in Section 501(c)(3), 501(c)(4), or 501(c)(10) of the Internal Revenue Code of 1986, as amended; or

    2.     specifically scheduled as an **Outside Entity** by endorsement to this **Liability Policy**.

**P.**    *Outside Position* means service by an **Insured Person** as a member of the board of directors, officer, member of the board of trustees, member of the board of managers, member of the board of regents, member of the board of governors or a functional equivalent thereof with an **Outside Entity**, but only during such time that such service is with the knowledge, consent, and at the specific request of the **Insured Organization**.

**Q.**    *Retaliation* means any actual or alleged **Wrongful Termination** or other adverse employment action against a **Claimant** or **Outside Claimant** on account of such **Claimant's** or **Outside Claimant's** exercise or attempted exercise of rights protected by law, refusal to violate any law, disclosure or threat to disclose to a superior or to any governmental agency alleged violations of the law, or on account of the **Claimant** or **Outside Claimant** having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law.

**R .**    *Sexual Harassment* means any actual or alleged unwelcome sexual advances, requests for sexual favors or any other conduct of a sexual nature:

    1.     which is made a term or condition of a **Claimant's** or **Outside Claimant's** employment or advancement;

    2.     which the submission to or rejection of is used as a basis for decisions affecting the **Claimant** or **Outside Claimant**; or

    3.     which has the purpose or effect of creating an intimidating, hostile or offensive work environment.

**S.**    *Stock Benefit* means compensation provided to **Employees** in the form of equity or debt securities or rights to purchase equity or debt securities or the value thereof, including any grant of stock, restricted stock, stock options or warrants, phantom stock, stock appreciation rights, or performance shares.

**T.**    *Subsidiary* means:

    1.     any corporation, partnership, limited liability company or other entity organized under the laws of any jurisdiction in which, on or before the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** owns, directly or indirectly, more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to elect, appoint or exercise a majority control over such entity's board of directors, board of trustees, board of managers, natural person general partners, or functional equivalent;

    2.     any non-profit entity over which, on or before the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** has the ability to exercise managerial control;

    3.     any entity operated as a joint venture, in which, on or before the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** owns, directly or indirectly, exactly fifty percent (50%) of the issued and outstanding voting stock and whose management and operation the **Insured**


EXHIBIT B

**Organization** solely controls, pursuant to a written agreement with the owner(s) of the remaining issued and outstanding voting stock; or

4.    subject to the provisions set forth in Section III. CONDITIONS L. ACQUISITIONS of the Liability Coverage Terms and Conditions, any entity that the **Insured Organization** acquires or forms during the **Policy Period** in which the **Named Insured** owns, directly or indirectly, more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to elect, appoint or exercise a majority control over such entity's board of directors, board of trustees, board of managers, natural person general partners, or functional equivalent, or, in the case of any non-profit entity that does not issue securities, over which the **Named Insured** has the ability to exercise managerial control.

**U.**    *Third Party Claim* means:

1.    a written demand for monetary damages or non-monetary relief;

2.    a civil proceeding commenced by service of a complaint or similar pleading;

3.    a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order, service of summons, or similar document;

4.    an arbitration, mediation or similar alternative dispute resolution proceeding if the **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the Company's written consent, such consent not to be unreasonably withheld; or

5.    a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding,

against an **Insured** by or on behalf of or for the benefit of any natural person other than a **Claimant** for a **Third Party Wrongful Act**; provided that **Third Party Claim** does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement or any type of criminal proceeding.

**V.**    *Third Party Wrongful Act* means, with respect to any natural person other than a **Claimant**, any actual or alleged:

1.    violation of any federal, state or local law or statute or any common law prohibiting any kind of discrimination; or

2.    unwelcome sexual advances, requests for sexual favors or any other conduct of a sexual nature which violates the civil rights of any such person.

**W.**    *Workplace Harassment* means any actual or alleged harassment, other than **Sexual Harassment**, which creates a work environment that interferes with job performance, or creates an intimidating, hostile, or offensive work environment.

**X.**    *Wrongful Act* means:

1.    a **Wrongful Employment Practice** occurring in the course of or arising out of a **Claimant's** employment, application for employment or performance of services with the **Insured Organization**;

2.    a **Wrongful Employment Practice** by an **Insured Person** in his or her **Outside Position** occurring in the course of or arising out of an **Outside Claimant's** employment, application for employment or performance of services with an **Outside Entity**; or

3.    a **Third Party Wrongful Act**, if ITEM 5 of the Declarations indicates that Third Party Claim Coverage has been purchased.


EXHIBIT B

All **Related Wrongful Acts** are a single **Wrongful Act** for purposes of this **Liability Coverage**, and all **Related Wrongful Acts** will be deemed to have occurred at the time the first of such **Related Wrongful Acts** occurred whether prior to or during the **Policy Period**.

Y.     ***Wrongful Employment Practice*** means any actual or alleged:

1.     **Discrimination**;

2.     **Retaliation**;

3.     **Sexual Harassment**;

4.     **Workplace Harassment**;

5.     **Wrongful Termination**;

6.     breach of **Employment Agreement**;

7.     violation of the Family Medical Leave Act;

8.     employment-related misrepresentation;

9.     employment-related defamation, including libel or slander, or invasion of privacy;

10.    failure or refusal to create or enforce adequate workplace or employment policies and procedures, employ or promote, including wrongful failure to grant bonuses or perquisites, or grant tenure;

11.    wrongful discipline, wrongful demotion, denial of training, deprivation of career opportunity, denial or deprivation of seniority, or evaluation;

12.    employment-related wrongful infliction of emotional distress; or

13.    negligent hiring, supervision of others, training, or retention committed or allegedly committed by any **Insured**, but only if such act is alleged in connection with a **Wrongful Employment Practice** set forth in 1. through 12. above; provided that the **Claim** alleging the negligent hiring, supervision of others, training, or retention is brought by or on behalf of any **Claimant** or **Outside Claimant**.

Z.     ***Wrongful Termination*** means the actual, alleged or constructive termination of an employment relationship between a **Claimant** and the **Insured Organization**, or the actual or constructive termination of an employment relationship between an **Outside Claimant** and an **Outside Entity**, in a manner or for a reason which is contrary to applicable law or public policy, or in violation of an **Employment Agreement**.

---

## *III.*     *EXCLUSIONS*

### A.     EXCLUSIONS APPLICABLE TO ALL LOSS

1.     The Company will not be liable for **Loss** for any **Claim** for any damage to, or destruction of, loss of, or loss of use of, any tangible property including damage to, destruction of, loss of, or loss of use of, tangible property that results from inadequate or insufficient protection from soil or ground water movement, soil subsidence, mold, toxic mold, spores, mildew, fungus, or wet or dry rot.

2.     The Company will not be liable for **Loss** for any **Claim** for any bodily injury, sickness, disease, death, or loss of consortium; provided that this exclusion will not apply to that portion of a **Claim** seeking **Loss** for emotional distress, mental anguish, humiliation, or loss of reputation.

3.     The **Company** will not be liable for **Loss** for any **Claim**:

---

©2009 The Travelers Companies, Inc. All Rights Reserved



EXHIBIT B

a. based upon or arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any **Pollutant**;

b. based upon or arising out of any request, demand, order, or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, any **Pollutant**; or

c. brought by or on behalf of any governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, any **Pollutant**;

provided that this exclusion will not apply to **Claims** for **Retaliation**.

4.  The Company will not be liable for **Loss** for any **Claim** based upon or arising out of, any fact, circumstance, situation, event or **Wrongful Act** underlying or alleged in any prior or pending civil, criminal, administrative or regulatory proceeding, including audits initiated by the Office of Federal Contract Compliance Programs, against any **Insured** as of or prior to the applicable Prior and Pending Proceeding Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**.

5.  The Company will not be liable for **Loss** for any **Claim** for any fact, circumstance, situation or event that is or reasonably would be regarded as the basis for a claim about which any **Executive Officer** had knowledge prior to the applicable Continuity Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**.

6.  The Company will not be liable for **Loss** for any **Claim** based upon or arising out of, any fact, circumstance, situation, event or **Wrongful Act** which, before the Inception Date set forth in ITEM 2 of the Declarations, was the subject of any notice of claim or potential claim given by or on behalf of any **Insured** under any policy of insurance of which this **Liability Coverage** is a direct renewal or replacement or which it succeeds in time.

7.  The Company will not be liable for **Loss** for any **Claim** for any violation of responsibilities, duties or obligations under any law concerning Social Security, unemployment insurance, workers' compensation, disability insurance, or any similar or related federal, state or local law or regulation; or for any actual or alleged violation of the Worker Adjustment and Retraining Notification Act (WARN), Occupational Safety and Health Act (OSHA), Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), National Labor Relations Act (NLRA) or amendments thereto or regulations promulgated thereunder, or any similar or related federal, state or local law or regulation; provided that this exclusion will not apply to **Claims** for **Retaliation**.

8.  The Company will not be liable for **Loss** for any **Claim** for any liability of others assumed by an **Insured** under any contract or agreement, whether oral or written, except to the extent that the **Insured** would have been liable in the absence of such contract or agreement.

9.  The Company will not be liable for **Loss** for any **Claim** for any violation of responsibilities, duties or obligations under the Employee Retirement Income Security Act of 1974 (ERISA), including amendments thereto and regulations promulgated thereunder, or any similar or related federal, state or local law or regulation; or for an **Insured's** failure or refusal to establish, contribute to, pay for, insure, maintain, provide benefits pursuant to, or enroll or maintain the enrollment of an **Employee** or **Outside Employee** or dependent in, any employee benefit plan, fund or program, including contracts or agreements which are not subject to the provisions of ERISA; provided that this exclusion will not apply to **Claims** for **Retaliation**.

10. The Company will not be liable for **Loss** for any **Claim** based upon or arising out of, any **Wrongful Act** by a **Subsidiary** or any related **Insured Person** occurring at any time during which such entity was not a **Subsidiary**.

11. The Company will not be liable for **Loss** for any **Third Party Claim**:

---



EXHIBIT B

a.  alleging price discrimination, or other violation of any antitrust or unfair trade practices law; or

b.  against an **Insured Person** solely due to their service in an **Outside Position**.

12.  The Company will not be liable for **Loss** for any **Claim** for any liability under any agreement governing the terms of the labor or service of an **Independent Contractor**, temporary worker or leased employee with the **Insured Organization** or for liability under any agreement governing the terms of the labor or service of any natural person independent contractor who performs labor or service solely for the **Outside Entity** on a full-time basis pursuant to a written contract or agreement.

13.  The Company will not be liable for **Loss** for any **Claim** for violation of responsibilities, duties or obligations imposed on an **Insured** under any **Wage and Hour Law**; provided that this exclusion will not apply to:

a. **Claims** for **Retaliation**; or

b. any actual or alleged violation of the Equal Pay Act.

**B.  EXCLUSIONS APPLICABLE TO LOSS, OTHER THAN DEFENSE EXPENSES**

1.  The Company will not be liable for **Loss**, other than **Defense Expenses**, for any **Claim** seeking costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind, or that portion of a settlement encompassing injunctive or other equitable relief, including actual or anticipated costs and expenses associated with or arising from an **Insured's** obligation to provide reasonable accommodation under, or otherwise comply with, the Americans With Disabilities Act or the Rehabilitation Act of 1973, including amendments thereto and regulations promulgated thereunder, or any similar or related federal, state or local law or regulation.

2.  The Company will not be liable for **Loss**, other than **Defense Expenses**, for any **Claim** seeking severance pay, damages or penalties under an express written **Employment Agreement**, or under any policy or procedure providing for payment in the event of separation from employment; or sums sought solely on the basis of a claim for unpaid services.

---

**IV.  CONDITIONS**

**A.  SETTLEMENT**

1.  The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient.  In the event that:

a.  the **Insured** and the party bringing a **Claim** hereunder consent to the first settlement offer recommended by the Company (the "Settlement Offer") within thirty (30) days of being made aware of such offer by the Company; and

b.  the amount of such Settlement Offer:

i.  is less than the remaining applicable limit of liability available at the time; and

ii.  combined with **Defense Expenses** incurred with respect to such **Claim**, exceeds the Retention;

the Retention will be retroactively reduced by ten percent (10%) with respect to such **Claim**.

---

©2009 The Travelers Companies, Inc. All Rights Reserved



2. If the **Insured** does not consent to the Settlement Offer within thirty (30) days of being made aware of such offer by the Company:

    a. the Retention will not be reduced as provided in paragraph 1. above even if consent is given to the same or subsequent Settlement Offer; and

    b. the **Insured** will be solely responsible for thirty percent (30%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for thirty percent (30%) of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** will not exceed the remaining applicable limit of liability.

**B.   OTHER INSURANCE**

1. This **Liability Coverage** is primary, except as expressly stated otherwise in this **Liability Coverage**.

2. Except as stated in paragraph 3. of section IV. CONDITIONS B., this **Liability Coverage** will apply only as excess insurance over, and will not contribute with any insurance that applies to any **Claim**:

    a. against any leased or temporary worker; or

    b. for a **Third Party Wrongful Act**.

3. With respect to **Claims** against **Insured Persons** for **Wrongful Employment Practices** in their **Outside Positions**, this **Liability Coverage** will apply only as excess insurance over, and will not contribute with:

    a. any other valid and collectible insurance available to any **Insured**, including any insurance under which there is a duty to defend, unless such insurance is written specifically excess of this **Liability Coverage** by reference in such other policy to the Policy Number of this **Liability Policy**; or

    b. indemnification to which an **Insured Person** is entitled from any **Outside Entity** other than the **Insured Organization**.

4. This **Liability Coverage** will not be subject to the terms of any other insurance.

**C.   OUTSIDE POSITIONS - LIMIT OF LIABILITY**

If any **Claim** against an **Insured Person** gives rise to an obligation both under this **Liability Coverage** and under any other coverage or policy of insurance issued by the Company or any of its affiliates to any **Outside Entity**, the Company's maximum aggregate limit of liability under all such policies for any **Loss**, for such **Claim** will not exceed the largest single available limit of liability under such coverage.

---



 

### PRIVATE COMPANY DIRECTORS AND OFFICERS LIABILITY

*THIS IS A CLAIMS-MADE COVERAGE WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ THE POLICY CAREFULLY.*

## I.   INSURING AGREEMENTS

The Company will pay on behalf of:

**A.**   the **Insured Persons, Loss** for **Wrongful Acts**, except for **Loss** which the **Insured Organization** pays to or on behalf of the **Insured Persons** as indemnification;

**B.**   the **Insured Organization, Loss** for **Wrongful Acts** which the **Insured Organization** pays to or on behalf of the **Insured Persons** as indemnification; and

**C.**   the **Insured Organization, Loss** for **Wrongful Acts**,

resulting from any **Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period.

The Company will also pay on behalf of the **Insured Organization, Investigation Expense** resulting from any **Security Holder Derivative Demand** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, against an **Insured Organization** for **Wrongful Acts**.  The Company's maximum limit of liability for all **Investigation Expense** will be the Investigation Expense Limit of Liability set forth in ITEM 5 of the Declarations for this **Liability Coverage**.

## II.   SUPPLEMENTAL PERSONAL INDEMNIFICATION

If ITEM 5 of the Declarations indicates that coverage for Supplemental Personal Indemnification Coverage has been purchased, and if the **Liability Coverage Limit of Liability** under this **Liability Coverage** or a **Liability Coverage Shared Limit of Liability**, if applicable, has been exhausted, the Company will provide the **Insured Persons** with an additional Supplemental Personal Indemnification Limit of Liability under Insuring Agreement A. Such Supplemental Personal Indemnification Limit of Liability will not exceed the amount set forth in ITEM 5 of the Declarations, which amount is in addition to and not part of the **Liability Coverage Limit of Liability** or **Liability Coverage Shared Limit of Liability**, if applicable. This Supplemental Personal Indemnification Limit of Liability applies solely to **Loss** resulting from any **Claim,** other than a **Claim** for an employment-related **Wrongful Act,** against an **Insured Person** to which Insuring Agreement A. is applicable.

## III.   DEFINITIONS

Wherever appearing in this **Liability Coverage**, the following words and phrases appearing in bold type will have the meanings set forth in this Section III. DEFINITIONS:

**A.**   *Claim* means:
1.   a written demand, other than a **Security Holder Derivative Demand**, for monetary damages or non-monetary relief;
2.   a civil proceeding commenced by service of a complaint or similar pleading;
3.   a criminal proceeding commenced by filing of charges;
4.   a formal administrative or regulatory proceeding, commenced by a filing of charges, formal investigative order, service of summons, or similar document;
5.   an arbitration, mediation or similar alternative dispute resolution proceeding if **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the Company's written consent, such consent not to be unreasonably withheld;

---

PDO-3001 Ed. 01-09 Printed in U.S.A.
©2009 The Travelers Companies, Inc. All Rights Reserved



6.      a **Security Holder Derivative Demand** solely with respect to **Investigation Expenses** and subject to the **Investigation Expense Limit of Liability** set forth in ITEM 5 of the Declarations;

7.      the service of a subpoena on an **Insured Person** identified by name if served upon such person pursuant to a formal administrative or regulatory proceeding; or

8.      a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding;

against an **Insured** for a **Wrongful Act**, provided that **Claim** does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

A **Claim** is deemed to be made on the earliest date that any **Executive Officer** first receives written notice of such **Claim**. However, if any **Insured Person** who is not an **Executive Officer** first receives written notice of a **Claim** during the **Policy Period**, but no **Executive Officer** receives written notice of such **Claim** until after the **Policy Period** has expired, then such **Claim** will be deemed to have been made on the date such **Insured Person** first received written notice of the **Claim**.

**B.**  *Executive Officer* means the chairperson, chief executive officer, president, chief financial officer, in-house general counsel, or **LLC Manager** of the **Insured Organization** or a functional equivalent thereof.

**C.**  *Insured* means the **Insured Persons** and the **Insured Organization**.

**D.**  *Insured Organization* means the **Named Insured,** any **Subsidiary**, and any such entity as a debtor in possession, as such term is used in Chapter 11 of the United States of America Bankruptcy Code, as amended, or the equivalent of a debtor in possession under any applicable foreign law.

**E.**  *Insured Person* means any natural person who was, is or becomes a duly elected or appointed member of the board of directors, officer, or a functional equivalent to a member of the board of directors or officer of the **Insured Organization** in the event the **Insured Organization** is incorporated or domiciled outside the United States, member of the board of managers, **Executive Officer**, employee, or member of a management committee or an advisory committee of the **Insured Organization**.

In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** for **Wrongful Act** of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**.

**F.**  *Investigation Expense* means reasonable and necessary fees, costs and expenses incurred by the **Insured Organization**, including its board of directors, board of managers or any duly constituted committee thereof, in connection with any investigation or evaluation by the **Insured Organization** of any **Security Holder Derivative Demand**.

**G.**  *Loss* means **Defense Expenses** and money which an **Insured** is legally obligated to pay as a result of a **Claim**, including settlements, judgments, back and front pay, compensatory damages, punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages, prejudgment and postjudgment interest, and legal fees and expenses awarded pursuant to a court order or judgment.  **Loss** does not include:

1.      civil or criminal fines, sanctions, liquidated damages other than liquidated damages awarded under the Age Discrimination in Employment Act or the Equal Pay Act, payroll or other taxes, or damages, penalties or types of relief deemed uninsurable under applicable law; or

2.      any amount allocated to non-covered loss pursuant to Section III. CONDITIONS. P. ALLOCATION of the Liability Coverage Terms and Conditions.

**H.**  *Outside Entity* means a corporation or organization:

1.      other than the **Insured Organization**, which is exempt from federal income tax as an entity described in Section 501(c)(3), 501(c)(4), or 501(c)(10) of the Internal Revenue Code of 1986, as amended; or

2.      specifically scheduled as an **Outside Entity** by endorsement to this **Liability Policy**.


EXHIBIT B

I.    ***Outside Position*** means service by an **Insured Person** as a member of the board of directors, officer, member of the board of trustees, member of the board of managers, or a functional equivalent thereof with an **Outside Entity**, but only during such time that such service is with the knowledge, consent, and at the specific request of the **Insured Organization**.

J.    ***Security Holder Derivative Claim*** means any **Claim** brought on behalf of, or in the name or right of, the **Insured Organization** by one or more security holders of the **Insured Organization** in their capacity(ies) as such, but only if such **Claim** is brought and maintained without the assistance, participation or solicitation of any member of the board of directors, officer, member of the board of managers, or a functional equivalent thereof.

K.    ***Security Holder Derivative Demand*** means a written demand by one or more security holders of the **Insured Organization** in their capacity(ies) as such to bring a civil proceeding in a court of law on behalf of, or in the name or right of, the **Insured Organization** against any **Insured Person** for a **Wrongful Act** by an **Insured Person**, but only if such demand is asserted without the assistance, participation or solicitation of any member of the board of directors, officer, member of the board of managers, or a functional equivalent thereof.

L.    ***Subsidiary*** means:
1.    any corporation, partnership, limited liability company or other entity organized under the laws of any jurisdiction in which, on or before the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** owns, directly or indirectly, more than 50% of the outstanding securities or voting rights representing the present right to elect, appoint or exercise a majority control over such entity's board of directors, board of trustees, board of managers, natural person general partners, or functional equivalent;
2.    any non-profit entity over which, on or before the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** has the ability to exercise managerial control;
3.    any entity operated as a joint venture, in which, on or before the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** owns, directly or indirectly, exactly 50% of the issued and outstanding voting stock and whose management and operation the **Insured Organization** solely controls, pursuant to a written agreement with the owner(s) of the remaining issued and outstanding voting stock; or
4.    subject to the provisions set forth in Section III. CONDITIONS L. ACQUISITIONS of the Liability Coverage Terms and Conditions, any entity that the **Insured Organization** acquires or forms during the **Policy Period** in which the **Named Insured** owns, directly or indirectly, more than 50% of the outstanding securities or voting rights representing the present right to elect, appoint or exercise a majority control over such entity's board of directors, board of trustees, board of managers, natural person general partners, or functional equivalent, or, in the case of any non-profit entity that does not issue securities, over which the **Named Insured** has the ability to exercise managerial control.

M.    ***Wrongful Act*** means:
1.    any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, an **Insured Person** in his or her capacity as such;
2.    any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, an **Insured Person** in his or her **Outside Position**;
3.    any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, the **Insured Organization**; or
4.    any matter asserted against an **Insured Person** solely by reason of his or her status as such.

All **Related Wrongful Acts** are a single **Wrongful Act** for purposes of this **Liability Coverage**, and all **Related Wrongful Acts** will be deemed to have occurred at the time the first of such **Related Wrongful Acts** occurred whether prior to or during the **Policy Period**.



## IV.   EXCLUSIONS

A.   **EXCLUSIONS APPLICABLE TO ALL LOSS**

1.   The Company will not be liable for **Loss** for any **Claim** for any damage to, destruction of, loss of, or loss of use of any tangible property including damage to, destruction of, loss of, or loss of use of tangible property that results from inadequate or insufficient protection from soil or ground water movement, soil subsidence, mold, toxic mold, spores, mildew, fungus, or wet or dry rot.

2.   The Company will not be liable for **Loss** for any **Claim** for any bodily injury, sickness, disease, death, loss of consortium, emotional distress, mental anguish, humiliation, loss of reputation, libel, slander, oral or written publication of defamatory or disparaging material, or invasion of privacy; provided that this exclusion will not apply to:

a.   any **Claim** for emotional distress, mental anguish, or humiliation with respect to any employment related **Wrongful Act**; or

b.   any **Security Holder Derivative Claim**.

3.   The **Company** will not be liable for **Loss** for any **Claim**:

a.   based upon or arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any **Pollutant**;

b.   based upon or arising out of any request, demand, order, or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, any **Pollutant**; or

c.   brought by or on behalf of any governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, any **Pollutant**,

provided this exclusion does not apply to any **Security Holder Derivative Claim**.

4.   The Company will not be liable for **Loss** for any **Claim** based upon or arising out of any fact, circumstance, situation, event, or **Wrongful Act** underlying or alleged in any prior or pending civil, criminal, administrative or regulatory proceeding, including audits initiated by the Office of Federal Contract Compliance Programs, against any **Insured** as of or prior to the applicable Prior and Pending Proceeding Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**.

5.   The Company will not be liable for **Loss** for any **Claim** for any fact, circumstance, situation, or event that is or reasonably would be regarded as the basis for a claim about which any **Executive Officer** had knowledge prior to the applicable Continuity Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**.

6.   The Company will not be liable for **Loss** for any **Claim** based upon or arising out of, any fact, circumstance, situation, event, or **Wrongful Act** which, before the Inception Date set forth in ITEM 2 of the Declarations, was the subject of any notice of claim or potential claim given by or on behalf of any **Insured** under any policy of insurance of which this **Liability Coverage** is a direct renewal or replacement or which it succeeds in time.

7.   The Company will not be liable for **Loss** for any **Claim** for any violation of responsibilities, duties or obligations under any law concerning Social Security, unemployment insurance, workers' compensation, disability insurance, or any similar or related federal, state or local law or regulation or for any violation of the Worker Adjustment and Retraining Notification Act (WARN), Occupational Safety and Health Act (OSHA), Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), the National Labor Relations Act (NLRA), Fair Labor Standards Act (FLSA) (except the Equal Pay Act), or amendments thereto or regulations promulgated thereunder, or any similar or related federal, state or local law or regulation.

8.   The Company will not be liable for **Loss** for any **Claim** for any violation of responsibilities, duties or obligations under the Employee Retirement Income Security Act of 1974 (ERISA), including

©2009 The Travelers Companies, Inc. All Rights Reserved



amendments thereto and regulations promulgated thereunder, or any similar or related federal, state or local law or regulation; or for an **Insured's** failure or refusal to establish, contribute to, pay for, insure, maintain, provide benefits pursuant to, or enroll or maintain the enrollment of an employee or dependent in, any employee benefit plan, fund or program, including contracts or agreements which are not subject to the provisions of ERISA.

9.  The Company will not be liable for **Loss** for any **Claim** by or on behalf of, or in the name or right of, any **Insured**; provided that this exclusion will not apply to:

    a.  any **Security Holder Derivative Claim** or any **Security Holder Derivative Demand**;

    b.  any **Claim** in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an **Insured Person** and which is part of or results directly from a **Claim** which is not otherwise excluded by the terms of this **Liability Coverage**;

    c.  any **Claim** brought by a receiver, liquidator, bankruptcy trustee or similar official of the **Insured Organization**;

    d.  any **Claim** brought or maintained by a natural person who was a member of the board of directors, officer, member of the board of trustees, member of the board of managers, or a functional equivalent thereof, but who has not served in such capacity for at least four (4) years preceding the date the **Claim** is first made; and who brings and maintains the Claim without the solicitation, assistance or participation of any current member of the board of directors, officer, member of the board of trustees, board of managers, or a functional equivalent thereof or anyone who has served in such capacity during the four (4) year period immediately preceding the date the **Claim** is first made;

    e.  any **Claim** for an employment related Wrongful Act brought by an employee; or

    f.  any **Claim** brought by an employee for a **Wrongful Act** in connection with an offer, purchase or sale of securities if:

        i.  the employee brings the **Claim** solely in his or her capacity as a security holder of the **Insured Organization** without the solicitation, assistance or participation of any current member of the board of directors, officer, member of the board of trustees, board of managers, or a functional equivalent thereof or anyone who has served in such capacity during the four (4) year period immediately preceding the date the **Claim** is first made; and

        ii. the employee is not a member of the board of directors, officer, member of the board of trustees, board of managers, or a functional equivalent thereof and has not served in such capacity during the four (4) year period immediately preceding the date the **Claim** is first made.

10. The Company will not be liable for **Loss** for any **Claim** by or on behalf of, or in the name or right of, any **Outside Entity** against an **Insured Person** for a **Wrongful Act** in his or her **Outside Position** with respect to such **Outside Entity**; provided that this exclusion will not apply to any **Claim** brought derivatively by a security holder of such **Outside Entity** in his or her capacity as such.

11. The Company will not be liable for **Loss** for any **Claim** based upon or arising out of:

    a.  the public offer, sale, solicitation or distribution of securities issued by the **Insured Organization**; or

    b.  the violation of any federal, state, local or provincial statute relating to securities, including the Securities Act of 1933 and the Securities and Exchange Act of 1934, or any rules or regulations promulgated thereunder.

    provided that this exclusion will not apply to any offer, purchase or sale of securities, whether debt or equity, in a transaction that is exempt from registration under the Securities Act of 1933 (an "Exempt Transaction").

    In addition, if at least thirty (30) days prior to an offering of securities of the **Insured Organization**, other than pursuant to an Exempt Transaction, the Company receives notice of the proposed transaction and any additional information requested by the Company, the **Insured Organization** may request a proposal for coverage subject to any additional terms and conditions, and payment of any additional premium, described in such proposal.

12. The Company will not be liable for **Loss** for any **Claim** based upon or arising out of any **Wrongful Act** by an entity that is, or was a **Subsidiary**, or any **Insured Person** of such entity, occurring at any time during which such entity was not a **Subsidiary**.



13.　The Company will not be liable for **Loss** for any **Claim,** with respect to Insuring Agreement C. only:

    a.　for any plagiarism;

    b.　for any misappropriation, infringement or violation of copyright, patent, trademark, service mark, trade name, trade secret or any other intellectual property rights;

    c.　based upon or arising out of any malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency, inadequacy or dangerous condition in such product or in its design or manufacture;

    d.　based upon or arising out of any employment related **Wrongful Act**; or

    e.　for any liability of the **Insured Organization** under any express contract or agreement. For the purposes of this exclusion, an express contract or agreement is an actual agreement among the contracting parties, the terms of which are openly stated in distinct or explicit language, either orally or in writing, at the time of its making.

**B.　EXCLUSIONS APPLICABLE TO LOSS, OTHER THAN DEFENSE EXPENSES**

1.　The Company will not be liable for **Loss**, other than **Defense Expenses**, for any **Claim** based upon or arising out of any **Insured**:

    a.　committing any intentionally dishonest or fraudulent act or omission;

    b.　committing any willful violation of any statute, rule or law; or

    c.　gaining any profit, remuneration or advantage to which such **Insured** was not legally entitled;

provided that this exclusion will not apply unless a final adjudication establishes that such **Insured** committed such intentionally dishonest or fraudulent act or omission, or willful violation of any statute, rule or law, or gained such profit, remuneration or advantage to which such **Insured** was not legally entitled.

2.　The Company will not be liable for **Loss**, other than **Defense Expenses**, for any **Claim** seeking costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind, or that portion of a settlement encompassing injunctive or other equitable relief, including actual or anticipated costs and expenses associated with or arising from an **Insured's** obligation to provide reasonable accommodation under, or otherwise comply with, the Americans With Disabilities Act or the Rehabilitation Act of 1973, including amendments thereto and regulations thereunder, or any related or similar federal, state or local law or regulation.

## V.　*SEVERABILITY OF EXCLUSIONS*

No conduct of any **Insured Person** will be imputed to any other **Insured Person** to determine the application of any of the exclusions set forth in Section IV. EXCLUSIONS above. Solely with respect to exclusion B.1. set forth above, no conduct of any **Insured** will be imputed to any other **Insured** to determine if coverage is available.

## VI.　*CONDITIONS*

### A.　RETENTION

This Section VI. CONDITIONS A. RETENTION will supplement, and not replace, Section III. CONDITIONS B. RETENTION of the Liability Coverage Terms and Conditions.

No retention will apply to **Defense Expenses** resulting from any **Claim**, other than a **Claim** for an employment related **Wrongful Act**, and the Company will reimburse the **Insured Organization** for any such retention paid by the **Insured Organization** in connection with any such **Claim**, if:

1.　with respect to such **Claim**, there is a final adjudication of no liability obtained prior to or during trial, in favor of all **Insureds**, by reason of a motion to dismiss or a motion for summary judgment or any similar motion or process, after exhaustion of all appeals, or a final judgment of no liability obtained after trial, in favor of all **Insureds**, after exhaustion of all appeals; or

©2009 The Travelers Companies, Inc. All Rights Reserved


EXHIBIT B

2.    such **Claim** is dismissed or there is a stipulation to dismiss such **Claim** with prejudice and without the payment of any monetary consideration by the **Insureds**.

In no event will a settlement of a **Claim** be considered a final adjudication of no liability for purposes of this subsection.

As a condition of any reimbursement of the retention as set forth above, the Company may require a written undertaking on terms and conditions satisfactory to the Company guaranteeing the repayment of such amounts in the event that such **Claim** is reinstituted after payment by the Company.

### B.    SETTLEMENT

The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that the Company recommends an offer of settlement (a "Settlement Offer") of any **Claim** which is acceptable to the claimant(s), and if the **Insured** will refuse to consent to such Settlement Offer, the **Insured** will be solely responsible for thirty percent (30%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for thirty percent (30%) of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** does not exceed the remaining applicable limit of liability.

### C.    PRESUMPTION OF INDEMNIFICATION

Regardless of whether **Loss** resulting from any **Claim** against **Insured Persons** is actually indemnified, Insuring Agreement B. and the Retention set forth in the Declarations will apply to any **Loss** as to which indemnification by the **Insured Organization** or any **Outside Entity** is legally permissible, whether or not actual indemnification is made, unless such indemnification is not made by the **Insured Organization** or such **Outside Entity** solely by reason of its **Financial Insolvency**.

The certificate of incorporation, charter, articles of association or other organizational documents of the **Insured Organization** and each **Outside Entity**, including by-laws and resolutions, will be deemed to have been adopted or amended to provide indemnification to the **Insured Persons** to the fullest extent permitted by law.

### D.    OTHER INSURANCE AND INDEMNIFICATION

This **Liability Coverage** will apply only as excess insurance over, and will not contribute with: (1) any other valid and collectible insurance available to any **Insured**, including any insurance under which there is a duty to defend, unless such insurance is written specifically excess of this **Liability Coverage** by reference in such other policy to the Policy Number of this **Liability Policy**; or (2) indemnification to which an **Insured Person** is entitled from any **Outside Entity** other than the **Insured Organization**. This **Liability Coverage** will not be subject to the terms of any other insurance.

### E.    OUTSIDE POSITIONS – LIMIT OF LIABILITY

If any **Claim** against the **Insureds** gives rise to an obligation both under this **Liability Coverage** and under any other coverage or policy of insurance issued by the Company or any of its affiliates to any **Outside Entity**, the Company's maximum aggregate limit of liability under all such policies for all **Loss**, including **Defense Expenses**, for such **Claim** will not exceed the largest single available limit of liability under any such coverage.

### F.    ORDER OF PAYMENTS

If **Loss,** other than **Defense Expenses,** from any **Claim** exceeds the remaining applicable limit of liability as set forth in ITEM 5 of the Declarations:

1.    the Company will first pay **Loss** for such **Claim** to which Insuring Agreement A. applies; then

2.    to the extent that any amount of the applicable limit of liability will remain available, the Company will pay **Loss** for such **Claim** to which Insuring Agreements B. and C. apply.


EXHIBIT B

Upon written request of the **Insured Organization** by and through any **Executive Officer**, the Company will either pay or withhold payment of **Loss** from such **Claim** under Insuring Agreements B. and C., as applicable.   In the event of a written request to withhold payment, the Company will make any future payment only for **Loss** from any such **Claim** to which Insuring Agreement A. applies, unless otherwise so instructed upon written request by and through an **Executive Officer** of the **Insured Organization**.

EXHIBIT B

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## SEPARATE CONTINUITY DATES FOR INSURED PERSON
## AND INSURED ORGANIZATION ENDORSEMENT

This endorsement modifies the following:

**Employment Practices Liability**

**It is agreed that:**

1.      The following replaces section **III. EXCLUSIONS, A. EXCLUSIONS APPLICABLE TO ALL LOSS,**  5.:

The Company will not be liable for **Loss** for any **Claim**:

a.      made against the **Insured Organization** for any fact, circumstance, situation or event that is or reasonably would be regarded as the basis for a claim about which any **Executive Officer** had knowledge prior to the applicable Insured Organization Continuity Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**.

b.      made against any **Insured Person** for any fact, circumstance, situation or event that is or reasonably would be regarded as the basis for a claim about which any **Executive Officer** had knowledge prior to the applicable Insured Person Continuity Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**.

2.      The following is added to ITEM 5. of the Declarations:

| | | |
|---|---|---|
| **Insured Organization Continuity Date:** | **Claims** for **Wrongful Employment Practices:** | 01/01/2008 |
| | **Claims** for **Third Party Wrongful Acts:** | 01/01/2008 |
| **Insured Person Continuity Date:** | **Claims** for **Wrongful Employment Practices:** | 01/01/1989 |
| | **Claims** for **Third Party Wrongful Acts:** | 01/01/2008 |

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.   This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 105549106

EPL-7055 Ed. 01-09 Printed in U.S.A.                                                     Page 1 of 1
©2009 The Travelers Companies, Inc. All Rights Reserved



# EXHIBIT B

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

---

## WAGE AND HOUR LAW ENDORSEMENT

This endorsement modifies the following:

**Employment Practices Liability**

---

**It is agreed that:**

1.  The following is added to section **III. CONDITIONS**, **C**. **LIMITS OF LIABILITY**, 1. of the Liability Coverage Terms and Conditions:

    However, the Company's maximum limit of liability for **Defense Expenses** for all  **Wage and Hour Law Claims** is further limited by the following:

    The Company's maximum limit of liability for **Defense Expenses** for all **Wage and Hour Law Claims** under the Employment Practices Liability coverage will not exceed the Wage and Hour Law Claim Limit of Liability for all **Wage and Hour Law Claims** set forth in ITEM 5 of the Declarations, which amount is included within and not in addition to, any applicable limit of liability.

2.  The following is added to section **III. CONDITIONS**, **D. ADDITIONAL DEFENSE COVERAGE** of the Liability Coverage Terms and Conditions:

    The Company's maximum limit of liability for **Defense Expenses** for all **Wage and Hour Law Claims** under the Employment Practices Liability coverage that are paid pursuant to the **Additional Defense Limit of Liability** will not exceed the Wage and Hour Law Claim Limit of Liability for all **Wage and Hour Law Claims** set forth in ITEM 5 of the Declarations. Such **Defense Expenses** will be part of, and not in addition to, the Wage and Hour Law Claim Limit of Liability for all **Wage and Hour Law Claims** set forth in ITEM 5 of the Declarations and such Wage and Hour Law Claim Limit of Liability for all **Wage and Hour Law Claims** will be reduced and may be exhausted by payment of such **Defense Expenses** under the  **Additional Defense Limit of Liability**.

3.  The following is added to ITEM 5. of the Declarations:

    **Wage and Hour Law
    Claim Limit of Liability**      $ 100,000    for all **Wage and Hour Law Claims**

4.  The following is added to section **II. DEFINITIONS**  of the Employment Practices Liability coverage part:

    ***Wage and Hour Law Claim*** means any **Employment Claim** for an alleged violation of responsibilities, duties or obligations imposed on an **Insured** under any **Wage and Hour Law**; provided that **Wage and Hour Law Claim** will not include **Claims** for **Retaliation** or any actual or alleged violation of the Equal Pay Act.

---

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**

---

©2009 The Travelers Companies, Inc. All Rights Reserved

# EXHIBIT B

5.   The following is added to section **II. DEFINITIONS, Y. Wrongful Employment Practice** of the Employment Practices Liability coverage part:

**Wrongful Employment Practice** also means the violation of responsibilities, duties or obligations imposed on an **Insured** under any **Wage and Hour Law**.

6.   The following is deleted from section **III. EXCLUSIONS, A. EXCLUSIONS APPLICABLE TO ALL LOSS,** of the Employment Practices Liability coverage part:

13.   The Company will not be liable for **Loss** for any **Claim** for violation of responsibilities, duties or obligations imposed on an **Insured** under any **Wage and Hour Law**; provided that this exclusion will not apply to:

a. **Claims** for **Retaliation**; or

b. any actual or alleged violation of the Equal Pay Act.

7.   The following is added to section **III. EXCLUSIONS, B. EXCLUSIONS APPLICABLE TO LOSS, OTHER THAN DEFENSE EXPENSES** of the Employment Practices Liability coverage part:

The Company will not be liable for **Loss**, other than **Defense Expenses** up to the Wage and Hour Law Claim Limit of Liability set forth in ITEM 5 of the Declarations, for any **Claim** for the violation of responsibilities, duties or obligations imposed on an **Insured** under any **Wage and Hour Law**; provided that this exclusion will not apply to:

a. **Claims** for **Retaliation**; or

b. any actual or alleged violation of the Equal Pay Act.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

©2009 The Travelers Companies, Inc. All Rights Reserved



EXHIBIT B

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## AMEND DEFINITION OF INSURED PERSON TO INCLUDE LEASED EMPLOYEES ENDORSEMENT

This endorsement modifies the following:  **Private**

**Company Directors and Officers Liability**

**It is agreed that:**

The following is added to section **III. DEFINITIONS, E. Insured Person** of the **Liability Coverage:**

**Insured Person** also means any natural person whose labor or service is engaged and directed by the **Insured Organization** and whose service has been leased to the **Insured Organization**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.   This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**

# EXHIBIT B

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## AMEND DEFINITION OF INSURED PERSON TO INCLUDE VOLUNTEERS ENDORSEMENT

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

The following is added to section **III. DEFINITIONS, E. Insured Person** of the **Liability Coverage:**

**Insured Person also means** any natural person who was, is, or becomes a volunteer of the **Insured Organization**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.   This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**

©2009 The Travelers Companies, Inc. All Rights Reserved

EXHIBIT B

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## AMEND DEFINITION OF INSURED PERSONS TO INCLUDE ADVISORY BOARD MEMBERS ENDORSEMENT

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

The following is added to section **III. DEFINTIONS, E. Insured Person** of the **Liability Coverage:**

**Insured Person** also means any natural person who was, is, or becomes a duly elected or appointed member of an advisory board of the **Insured Organization**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**

EXHIBIT B

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## AMEND DEFINITION OF OUTSIDE ENTITY ENDORSEMENT

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

The following replaces section **III. DEFINITIONS, H. Outside Entity** of the **Liability Coverage:**

H.  **Outside Entity** means any corporation or organization:

1.  other than the **Insured Organization**, that is a non-profit entity;

2.  an entity in which, on or prior to the Inception Date set forth in ITEM 2 of  the  Declarations,  the  **Insured Organization** owns or controls, directly or through one or more **Subsidiaries**, between 25% and  49% of the outstanding securities or voting rights representing the right  to  vote for  the  election  of, or to appoint such organization's board of directors, board of managers or a functional equivalent thereof; or

3.  any Specified Outside Entity as set forth in the Specified Outside Entity schedule below.

    **Specified Outside Entity**

    **Any non-profit**

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,exclusions or limitations of the above-mentioned policy, except as expressly stated herein.   This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **105549106**

EXHIBIT B

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## INSURED VERSUS INSURED EXCLUSION ENDORSEMENT – EXCEPTION FOR CREDITORS' COMMITTEE

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

The following replaces section **IV. EXCLUSIONS, A. EXCLUSIONS APPLICABLE TO ALL LOSS**, 9., c.:

[9.     The Company will not be liable for **Loss** for any **Claim** by or on behalf of, or in the name or right of, any **Insured**; provided that this exclusion will not apply to:]

c.     any **Claim** in brought by a receiver, liquidator, bankruptcy trustee, member of a creditors' committee, or any similar official, of the **Insured Organization**;

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 105549106

PDO-10004 Ed. 06-10 Printed in U.S.A.
©2010 The Travelers Companies, Inc. All Rights Reserved

# EXHIBIT B

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

---

## REDUCED LIMITS AND SEPARATE RETENTION FOR REGULATORY CLAIMS ENDORSEMENT

This endorsement changes the following:

**Private Company Directors and Officers Liability**

---

**It is agreed that:**

1.     The following is added to section **III. CONDITIONS, B. RETENTION** of the Liability Coverage Terms and Conditions:

The Retention for each **Claim** set forth in ITEM 5 of the Declarations will not apply to any **Regulatory Claim** under the **Liability Coverage**, and instead, the Retention for each **Regulatory Claim** will be the Regulatory Claims Retention for each **Regulatory Claim** set forth in ITEM 5 of the Declarations.

2.     The following is added to section **III. CONDITIONS, C. LIMITS OF LIABILITY**, 1. of the Liability Coverage Terms and Conditions:

However, the Company's maximum limit of liability for all **Loss**, including **Defense Expenses**, for all **Regulatory Claims** is further limited by the following:

The Company's maximum limit of liability for all **Loss**, including **Defense Expenses**, for all **Regulatory Claims** under the Private Company Directors and Officers Liability coverage will not exceed the Regulatory Claims Limit of Liability for all **Regulatory Claims** set forth in ITEM 5 of the Declarations. The Regulatory Claims Limit of Liability for all **Regulatory Claims** is included within, and not in addition to, the applicable **Liability Coverage Limit of Liability**, and is further subject to any applicable limit of liability.

3.     The following is added to section **III. CONDITIONS, D. ADDITIONAL DEFENSE COVERAGE** of the Liability Coverage Terms and Conditions:

The Company's maximum limit of liability for **Defense Expenses** for all **Regulatory Claims** under the Private Company Directors and Officers Liability coverage that are paid pursuant to the **Additional Defense Limit of Liability** will not exceed the Regulatory Claims Limit of Liability for all **Regulatory Claims** set forth in ITEM 5 of the Declarations. Such **Defense Expenses** will be part of, and not in addition to, the Regulatory Claims Limit of Liability for all **Regulatory Claims** set for in ITEM 5 of the Declarations and such Regulatory Claims Limit of Liability for all **Regulatory Claims** will be reduced and may be exhausted by payment of such **Defense Expenses** under the **Additional Defense Limit of Liability**.

4.     The following is added to section **III. DEFINITIONS, G. Loss, 1.** of the Private Company Directors and Officers Liability coverage:

Provided, **Loss** also means any fines and penalties for a **HIPAA Violation**.

5.     The following is added to section **III. DEFINITIONS** of the Private Company Directors and Officers Liability coverage:

***HIPAA Violation*** means any act, error, omission, misstatement, misleading statement or breach of duty or neglect by an **Insured** in civil violation of Title II of the Health Insurance Portability and Accountability Act of 1996, as amended, or regulations promulgated under such law concerning privacy of health information.

***Regulatory Claim*** means any **Claim** for a **Regulatory Wrongful Act**.

***Regulatory Wrongful Act*** means

---

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**



EXHIBIT B

1.  any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, an **Insured** in the performance or failure to perform any of the following activities under the Medicaid, Medicare, or Federal Employee Health Benefit or TriCare Programs: (i) procedure coding; (ii) bill, claim, cost report or data submissions; or (iii) the calculation of managed care payments;

2.  any actual or alleged offer, acceptance, or payment by any **Insured** in exchange for any patient referrals in violation of any federal, state, or local law or regulation;

3.  any actual or alleged offer, acceptance, or payment by any **Insured** in violation of any federal, state, or local anti-kickback law; or

4.  any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect, by an **Insured** in violation of Title II of the Health Insurance Portability and Accountability Act of 1996, as amended, or regulations promulgated under such law concerning privacy of health information.

6.  The following is added to section **IV. EXCLUSIONS, A. EXCLUSIONS APPLICABLE TO ALL LOSS**, 2.of the Private Company Directors and Officers Liability coverage:

    Provided this exclusion shall not apply to invasion of privacy based upon or arising out of a **HIPAA Violation**.

7.  The following is added to ITEM 5. of the Declarations:

    **Regulatory Claims Limit of Liability: $1,000,000.00** for all **Regulatory Claims**, which amount is included within, and not in addition to, any applicable limit of liability

    **Regulatory Claims Limit of Liability: $1,000,000.00** for each **Regulatory Claim**, which amount is included within, and not in addition to any applicable limit of liability.

    **Regulatory Claims Retention:**

    **$0.00** for each **Regulatory Claim** under Insuring Agreement A.

    **$250,000.00** for each **Regulatory Claim** under Insuring Agreement B.

    **$250,000.00** for each **Regulatory Claim** under Insuring Agreement C.

---

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.



©2010 The Travelers Companies, Inc. All Rights Reserved

| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. |
| --- |

## MANAGED CARE ACTIVITY EXCLUSION ENDORSEMENT

This endorsement changes the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

1.      The following are added to section **III. DEFINITIONS** of the Private Company Directors and Officers Liability Coverage:

*Managed Care Activity* means any of the following services or activities performed by or on behalf of the **Insured** for or under any workers' compensation plan, life insurance plan, long-term or short-term disability plan, or health care plan, including any consumer directed health care plan, behavioral health plan, prescription drug plan, dental plan, or vision plan:

    1.      **Provider Selection**;

    2.      **Utilization Review**;

    3.      advertising, marketing, selling, enrollment, administration or management;

    4.      **Claim Services**;

    5.      establishing or maintaining health care provider networks;

    6.      reviewing, profiling or tiering quality or costs of, or providing quality assurance of, any provider of **Medical Services**;

    7.      design or implementation of benefit plans or financial incentive plans, including pay for performance programs, that compensate providers of **Medical Services**;

    8.      **Disease Management**;

    9.      **Health Care Plan Consulting**;

    10.    risk management services to any provider of **Medical Services**;

    11.    **Wellness Services**;

    12.    development or implementation of clinical guidelines, practice parameters or protocols; or

    13.    triage for payment of **Medical Services**.

*Claim Services* means the submission, handling, investigation, payment or adjustment of claims for benefits or coverages under any worker's compensation plan, life insurance plan, long-term or short-term disability plan, or health care plan, including any consumer directed health care plan, behavioral health plan, prescription drug plan, dental plan or vision plan, but only if performed by or on behalf of an **Insured**.

*Disease Management* means is a coordinated system of preventative, diagnostic, and therapeutic measures intended to provide cost-effective, quality healthcare for a patient population who have or are at risk for a specific chronic illness or medical condition.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**



PDO-10006 Ed. 07-10 Printed in U.S.A.
©2010 The Travelers Companies, Inc. All Rights Reserved

*Health Care Plan Consulting* means providing or rendering advice on, or comparisons of, eligibility requirements, processes or procedures for enrollment or changes in participant status, or coverage features, including terms, benefits or restrictions, of any workers' compensation plan, life insurance plan, short term or long term disability plan, or health care plan, including any consumer directed health care plan, behavioral health plan, prescription drug plan, dental plan or vision plan.

*Medical Services* means health care, medical care, or treatment, including any medical, surgical, dental, ophthalmologic, optometric, podiatric, psychiatric, mental health, chiropractic, osteopathic, diagnostic imaging, nursing or other professional health care; the use, prescription, furnishing or dispensing of medications, drugs, blood, blood products, tissue or medical, surgical, dental, ophthalmologic, optometric or psychiatric supplies, equipment or appliances in connection with such care; the furnishing of food or beverages in connection with such care; counseling or other social services in connection with such care; and the handling of, or the performance of post-mortem examinations on, human bodies including autopsies and the harvesting of organs.

*Provider Selection* means evaluating, selecting, credentialing, contracting with or performing peer review of any provider of **Medical Services** , but only if performed by or on behalf of an **Insured**.

*Utilization Review* means the process of evaluating the appropriateness, necessity or cost of **Medical Services** for purposes of determining whether payment or coverage for such **Medical Services** will be authorized or paid for, including prospective review of proposed payment or coverage for **Medical Services**, concurrent review of ongoing **Medical Services**, retrospective review of already rendered **Medical Services** or already incurred costs, **Disease Management** , and case management; under any workers' compensation plan, life insurance plan, short-term or long-term disability plan, or health care plan, including any consumer directed health care plan, behavioral health plan, prescription drug plan, dental plan or vision plan, but only if performed by or on behalf of an **Insured**.

*Wellness Services* means health promotion activities or education, including participation at health fairs, administration of flu shots and cholesterol or blood pressure tests.

2.     The following is added to section **IV. EXCLUSIONS, A. EXCLUSIONS APPLICABLE TO ALL LOSS** of the Private Company Directors and Officers Liability Coverage:

The Company will not be liable for **Loss** for any **Claim** based upon or arising out of the performance of or failure to perform any **Managed Care Activity**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.



---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

---

## EXCESS BENEFIT TRANSACTION TAX ENDORSEMENT

This endorsement changes the following:

**Private Company Directors and Officers Liability**

---

**It is agreed that:**

1.  The following is added to section ***III. DEFINITIONS*** of the Private Company Directors and Officers Liability Coverage:

    ***Disqualified Person*** means a "disqualified person" as that term is defined in Section 4958 of the Internal Revenue Code of 1986, as amended.

    ***Excess Benefit Transaction*** means an "excess benefit transaction" as that term is defined in Section 4958 of the Internal Revenue Code of 1986, as amended.

    ***Excess Benefit Transaction Excise Tax*** means any excise tax imposed by the Internal Revenue Service on an **Insured Person** who is an **Organization Manager** as a result of such **Insured Person's** participation in an **Excess Benefit Transaction**.

    ***Organization Manager*** means an "organization manager" as the term is defined in Section 4958 of the Internal Revenue Code of 1986, as amended.

2.  The following is added to section ***III. DEFINITIONS*** , **G. Loss** of the Private Company Directors and Officers Liability Coverage:

    Notwithstanding the above and to the extent it is insurable under the law, **Loss** includes any **Excess Benefit Transaction Excise Tax** , that an **Insured Person** is obligated to pay as a result of a **Claim** ; provided that indemnification by the **Insured Organization** for any **Excess Benefit Transaction Excise Tax** is not expressly prohibited in the **Insured Organization's** board of director resolutions, articles of incorporation, bylaws, certificate of incorporation, charter, and other similar organizational documents.

3.  The following is added to section ***IV. EXCLUSIONS*** B. EXCLUSIONS APPLICALE TO LOSS, OTHER THAN, DEFENSE EXPENSES of the Private Company Directors and Officers Liability Coverage:

    The Company will not be liable for **Loss**, other than **Defense Expenses** , for any **Claim** for any excise tax imposed by the Internal Revenue Code of 1986, as amended, on any **Disqualified Person** who benefits directly or indirectly from any **Excess Benefit Transaction**.

---

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**

EXHIBIT B

©2010 The Travelers Indemnity Company, Inc. All Rights Reserved

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

---

## AMEND SECTION III. CONDITIONS I. SUBROGATION ENDORSEMENT

This endorsement changes the following:
**Private Company Directors and Officers Liability, Employment Practices Liability**

---

**It is agreed that:**

The following replaces section **III. *CONDITIONS*, I. SUBROGATION** of the Liability Coverage Terms and Conditions:

I.      **SUBROGATION**

In the event of payment under this **Liability Policy**, the Company is subrogated to all of the **Insured's** rights of recovery against any person or organization to the extent of such payment and the **Insured** agrees to execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** will do nothing to prejudice such rights.

In no event, however, will the Company exercise its rights of subrogation against an **Insured Person** under this **Liability Policy** unless a final non-appealable judgment or adjudication adverse to such **Insured Person** establishes that such **Insured Person** committed:

1.      a deliberate criminal act, or

2.      a deliberate fraudulent act, or has gained any profit or financial advantage to which such **Insured** was not legally entitled.

---

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

---

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**

EXHIBIT B

LIA-10018 Ed. 10-10
© 2010 The Travelers Indemnity Company. All rights reserved.

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

---

## SETTLEMENT CONDITION ENDORSEMENT

This endorsement modifies the following when indicated below by ☒:

---

**It is agreed that:**

[x]  **Private Company Directors and Officers Liability**

The following replaces **B. SETTLEMENT** of the *CONDITIONS* section of the **Liability Coverage**:

**B.    SETTLEMENT**

The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that the Company recommends an offer of settlement (a "Settlement Offer") of any **Claim** which is acceptable to the claimant(s), and if the **Insured** will refuse to consent to such Settlement Offer, the **Insured** will be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for twenty percent (20%) of all **Loss** , other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** does not exceed the remaining applicable limit of liability.

[x]  **Employment Practices Liability**

The following replaces section *IV. CONDITIONS*, **A. SETTLEMENT** of the **Liability Coverage**:

**A.    SETTLEMENT**

1.    The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that:

   a.    the **Insured** and the party bringing a **Claim** hereunder consent to the first settlement offer recommended by the Company (the "Settlement Offer") within thirty (30) days of being made aware of such offer by the Company; and

   b.    the amount of such Settlement Offer:

      i.    is less than the remaining applicable limit of liability available at the time; and

      ii.   combined with **Defense Expenses** incurred with respect to such **Claim**, exceeds the Retention;

   the Retention will be retroactively reduced by ten percent (10%) with respect to such **Claim**.

2.    If the **Insured** does not consent to the Settlement Offer within thirty (30) days of being made aware of such offer by the Company:

   a.    the Retention will not be reduced as provided in paragraph 1. above even if consent is given to the same or subsequent Settlement Offer; and

---

EXHIBIT B

LIA-10001 Ed. 06-10 Printed in U.S.A.
©2010 The Travelers Companies, Inc. All Rights Reserved

b.   the **Insured** will be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for twenty percent (20%) of all **Loss** , other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** will not exceed the remaining applicable limit of liability.

☐ **Fiduciary Liability**

The following replaces section *V. CONDITIONS*, **A. SETTLEMENT** of the **Liability Coverage**:

**A.    SETTLEMENT**

The Company may, with the written consent of the **Insured** , make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that the Company recommends an offer of settlement of any **Claim** which is acceptable to the claimant(s) (a "Settlement Offer"), and if the **Insured** refuses to consent to such Settlement Offer, the **Insured** will be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for twenty percent (20%) of all **Loss** , other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** will not exceed the remaining applicable limit of liability.

☐ **Miscellaneous Professional Liability**

The following replaces section *V. CONDITIONS*, **B. SETTLEMENT** of the **Liability Coverage**:

**B.    SETTLEMENT**

The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that the Company recommends an offer of settlement (a "Settlement Offer") of any **Claim** which is acceptable to the claimant(s), and if the **Insured** refuses to consent to such Settlement Offer, the **Insured** will be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for twenty percent (20%) of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** will not exceed the remaining applicable limit of liability.

---

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.



---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

---

## NON-RESCISSION ENDORSEMENT

This endorsement modifies the following:

---

**It is agreed that:**

The following replaces section *III. CONDITIONS,* **U. REPRESENTATIONS** of the Liability Coverage Terms and Conditions:

**U.    REPRESENTATIONS**

By acceptance of the terms set forth in this **Liability Policy**, each **Insured** represents and agrees that the statements contained in the **Application**, which is deemed to be attached hereto, incorporated herein, and forming a part hereof, are said **Insured's** agreements and representations, that such representations are material to the Company's acceptance of this risk, that this **Liability Policy** is issued in reliance upon the truth of such representations, and embodies all agreements existing between said **Insured** and the Company or any of its agents.

With respect to all the statements contained in the **Application,** no knowledge possessed by any one **Insured Person** will be imputed to any other **Insured Person.**

The Company will not, under any circumstance, rescind this **Liability Coverage** with respect to any **Insured**. However, the Company and the **Insureds** agree that If any statement or representation in the **Application** is untrue or inaccurate with respect to such **Liability Coverage**, then no coverage shall be afforded under such **Liability Coverage** for any **Claim** based upon, arising out of, or attributable to the subject matter of any such untrue or inaccurate statement or representation with respect to:

1.    any **Insured Person** who knew, as of the Inception Date set forth in ITEM 2 of the Declarations, that the statement or representation was untrue;

2.    any **Insured Organization**, with respect to its indemnification coverage, to the extent it indemnifies any **Insured Person** referenced in 1. above; and

3.    any **Insured Organization**, if the person who signed the **Application** knew that the statement or representation was untrue.

Whether an **Insured Person** had such knowledge will be determined without regard to whether the **Insured Person** actually knew the **Application**, or any other application completed for this **Liability Policy**, contained any such untrue statement or representation.

---

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

---

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 105549106



LIA-10002 Ed. 06-10 Printed in U.S.A.
©2010 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EMTALA ENDORSEMENT

This endorsement changes the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

1.  The following is added to section *III. DEFINITIONS* of the Private Company Directors and Officers Liability Coverage:

    *EMTALA* means Emergency Medical Treatment and Active Labor Act defined in 42 U.S.C. A. Section 1 395dd *et seq.*, as amended.

2.  The following is added to section *III. DEFINITIONS*, **G. Loss** of the Private Company Directors and Officers Liability Coverage:

    Notwithstanding the above, **Loss** includes any fines and penalties that an **Insured** is obligated to pay as a result of a **Claim** for an actual or alleged violation of **EMTALA**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**



PDO-10016 Ed. 01-11
©2011 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLLUTANT EXCLUSION ENDORSEMENT

This endorsement changes the following:

**Private Company Directors and Officers Liability Coverage**

**It is agreed that:**

The following replaces section *IV. EXCLUSIONS*, **A. EXCLUSIONS APPLICABLE TO ALL LOSS**, 3. of the Private Company Directors and Officers Liability Coverage:

3.     The **Company** will not be liable for **Loss** for any **Claim**:

a.     based upon or arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any **Pollutant**;

b.     based upon or arising out of any request, demand, order, or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, any **Pollutant**; or

c.     brought by or on behalf of any governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, any **Pollutant**,

provided this exclusion does not apply to any: (i) **Security Holder Derivative Claim**; or (ii) **Claim** brought directly against any **Insured Person** by a security holder of the **Insured Organization** in his or her capacity as such, but only if such **Claim** is brought and maintained without the assistance, participation or solicitation of any other **Insured Person**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**

© 2010 The Travelers Indemnity Company.  All rights reserved.

EXHIBIT B

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## INSURED VERSUS INSURED EXCLUSION ENDORSEMENT – EXCEPTIONS FOR FORMER DIRECTORS AND OFFICERS AND EMPLOYEES

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

1.  The following replaces section *IV. EXCLUSIONS*, A. EXCLUSIONS APPLICABLE TO ALL LOSS, 9., d.:

    [9.  The Company will not be liable for **Loss** for any **Claim** by or on behalf of, or in the name or right of, any **Insured**; provided, that this exclusion shall not apply to:]

    d.  any **Claim** brought or maintained by a natural person who was a member of the board of directors, officer, member of the board of trustees, member of the board of managers, or a functional equivalent thereof, but who has not served in such capacity for at least  years preceding the date the **Claim** is first made; and who brings and maintains the **Claim** without the solicitation, assistance or participation of any current member of the board of directors, officer, member of the board of trustees, board of managers, or a functional equivalent thereof or anyone who has served in such capacity during the  year period immediately preceding the date the **Claim** is first made;

2.  The following replaces section *IV. EXCLUSIONS*, A. EXCLUSIONS APPLICABLE TO ALL LOSS, 9., f., i. and ii:

    [9.  The Company will not be liable for **Loss** for any **Claim** by or on behalf of, or in the name or right of, any **Insured**; provided, that this exclusion shall not apply to:

    f.  any **Claim** brought by an employee for a **Wrongful Act** in connection with an offer, purchase or sale of securities if:]

    i.   the employee brings the **Claim** solely in his or her capacity as a security holder of the **Insured Organization** without the solicitation, assistance or participation of any current member of the board of directors, officer, member of the board of trustees, board of managers, or a functional equivalent thereof or anyone who has served in such capacity during the  year period immediately preceding the date the **Claim** is first made; and

    ii.  the employee is not a member of the board of directors, officer, member of the board of trustees, board of managers, or a functional equivalent thereof and has not served in such capacity during the  year period immediately preceding the date the **Claim** is first made.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 105549106

© 2011 The Travelers Indemnity Company.  All rights reserved.


EXHIBIT B

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

---

## PRIOR ACTS EXCUSION APPLICABLE ONLY TO ENTITY COVERAGE

This endorsement changes the following:
**Private Company Directors and Officers Liability**

---

**It is agreed that:**

The following is added to section *EXCLUSIONS*, **A. EXCLUSIONS APPLICABLE TO ALL LOSS**:

The Company will not be liable for **Loss** for any **Claim** based upon or arising out of any **Wrongful Act** committed or alleged to have been committed, in whole or in part, prior to the Specified Retroactive Date scheduled below; provided, this exclusion only applies to Insuring Agreement C.

**Specified Retroactive Date**

**January 01, 2008**

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above- mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

---

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**

---

LIA-10049 Ed. 01-11                                                                                          Page 1 of 1
© 2011 The Travelers Indemnity Company. All rights reserved.



EXHIBIT B

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## OTHER INSURANCE - VALID AND COLLECTIBLE ENDORSEMENT

This endorsement changes the following:

**Employment Practices Liability**

**It is agreed that:**

The following replaces section *IV. CONDITIONS*, **B. Other Insurance, 2.**:

Except as stated in paragraph 3. of section IV. CONDITIONS B., this **Liability Coverage** will apply only as excess insurance over, and will not contribute with any valid and collectible insurance that applies to any **Claim**:

a.      against any leased or temporary worker; or

b.      for a **Third Party Wrongful Act**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above- mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**

© 2011 The Travelers Indemnity Company. All rights reserved.



EXHIBIT B

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## REMOVAL OF SHORT-RATE CANCELLATION ENDORSEMENT

This endorsement changes the following:
**Employment Practices Liability, Private Company Directors and Officers Liability**

**It is agreed that:**

In any cancellation, termination or non-renewal provision, any reference to computing a premium on a short rate basis is replaced with a reference to computing such premium on a pro-rata basis.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **105549106**

© 2011 The Travelers Indemnity Company. All rights reserved.

EXHIBIT B

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CROSS-COVERAGE NOTICE ENDORSEMENT

This endorsement changes the following:

**Employment Practices Liability, Private Company Directors and Officers Liability**

**It is agreed that:**

Notice provided to the Company of any:

1.      **Claim**, **Potential Claim**, **Settlement Program Notice**, or circumstances which may give rise to a **Claim** under any Management Coverage or **Liability Coverage**; or

2.      loss or situation that may result in loss, **Insured Event**, or **Identity Fraud** under any Crime Coverage or Other Coverage;

shall be deemed to have been provided under the Policy in its entirety.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **105549106**

© 2011 The Travelers Indemnity Company. All rights reserved.



EXHIBIT B

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

---

## LEADERS PREFERRED ENDORSEMENT
## REIMBURSEMENT POLICY

This endorsement changes the following:

**Employment Practices Liability**

---

**It is agreed that:**

1.  The following replaces section ***III. CONDITIONS***, **E. CLAIM DEFENSE**, 2.b. of the Liability Coverage Terms and Conditions:

    b.  upon written request, the Company will advance **Defense Expenses** with respect to such **Claim** with payment being made for **Defense Expenses** exceeding the Retention within 90 days from the date the Company receives copies of invoices for **Defense Expenses**. Such advanced payments by the Company will be repaid to the Company by the **Insureds** severally according to their respective interests in the event and to the extent that the **Insureds** are not entitled to payment of such **Defense Expenses** under such **Liability Coverage**. As a condition of any payment of **Defense Expenses** under this subsection, the Company may require a written undertaking on terms and conditions satisfactory to the Company guaranteeing the repayment of any **Defense Expenses** paid to or on behalf of any **Insured** if it is finally determined that any such **Claim** or portion of any **Claim** Is not covered under such **Liability Coverage**.

    Unless otherwise agreed, **Defense Expenses** will be subject to an attorney hourly rate of up to $325 per hour and a paralegal hourly rate of up to $150 per hour.

2.  The following is added to section ***III. CONDITIONS***, **U. REPRESENTATIONS** of the Liability Coverage Terms and Conditions:

    With respect to all of the statements and representations contained in the **Application**, no knowledge possessed by any one **Insured Person** will be imputed to any other **Insured Person**.

3.  The following replaces section ***II. DEFINITIONS***, **A. *Claim*** of the **Liability Coverage**:

    **A.    *Claim*** means an **Employment Claim** or, if ITEM 5 of the Declarations indicates that Third Party Claim Coverage is applicable, a **Third Party Claim**. A **Claim** is deemed to be made on the earliest date that any **Executive Officer** first receives written notice of such **Claim**.

4.  The following replaces section ***II. DEFINITIONS***, **B. *Claimant***, 1. of the **Liability Coverage**:

    1.  a past, present or future **Employee** of or applicant for employment with the **Insured Organization** or a natural person alleging status as an employee of the **Insured Organization** who is judicially determined to be an employee of the **Insured Organization**;

5.  The following replaces section ***II. DEFINITIONS***, **D. *Employee***, 1.of the **Liability Coverage**:

    1.  who is or was on the payroll of the **Insured Organization**, including:

        a.  any in-house general counsel of the **Insured Organization**; and

        b.  any other full-time, part-time, and seasonal worker;

---

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**

© 2011 The Travelers Indemnity Company. All rights reserved.

# EXHIBIT B

6.   The following replaces section *II. DEFINITIONS*, **F.** *Employment Claim* of the **Liability Coverage**:

**F.**   *Employment Claim* means:

1.   a written demand for monetary damages or non-monetary relief;

2.   a civil proceeding commenced by service of a complaint or similar pleading;

3.   a criminal proceeding commenced by the receipt of a notice of filed charges;

4.   an administrative or regulatory proceeding commenced by the receipt of a notice of filed charges, investigative order, service of summons or similar document, including a proceeding before the Equal Employment Opportunity Commission or any similar governmental agency; provided that in the context of an audit conducted by the Office of Federal Contract Compliance Programs, **Employment Claim** will be limited to a Notice of Violation or Order to Show Cause or written demand for monetary damages or non-monetary relief;

5.   an arbitration, mediation or similar alternative dispute resolution proceeding commenced by the **Insured's** receipt of a written demand for monetary damages or non-monetary relief, a complaint, notice of charges, arbitration petition, or similar document; or

6.   a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding,

against an **Insured** by or on behalf of or for the benefit of a **Claimant**, or against an **Insured Person** serving in an **Outside Position** by or on behalf of or for the benefit of an **Outside Claimant**, for a **Wrongful Employment Practice**; provided that **Employment Claim** does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

7.   The following replaces section *II. DEFINITIONS*, **K.** *Insured Person* of the **Liability Coverage**:

**K.**   *Insured Person* means any natural person who was, is or becomes an **Employee**, duly elected or appointed member of the board of directors, officer, member of the board of trustees, member of the board of regents, member of the board of governors, natural person partner, **LLC Manager** or a functional equivalent thereof of the **Insured Organization** for **Wrongful Acts** committed in the discharge of his or her duties as such, or while serving in an **Outside Position**.

**Insured Person** also means any **Independent Contractor** of the **Insured Organization** for **Wrongful Acts** committed in the discharge of his or her duties as such, but only if and to the extent the **Insured Organization** provides indemnification to such natural person in the same manner as that provided to **Employees**.

In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** for a **Wrongful Act** of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**.

8.   The following replaces the lead-in paragraph and subsection 1. of section *II. DEFINITIONS*, **L.** *Loss* of the **Liability Coverage**:

**L.**   *Loss* means **Defense Expenses** and amounts which an **Insured** is legally obligated to pay as a result of a **Claim**, including settlements; judgments; back and front pay; compensatory damages; prejudgment and postjudgment interest; and legal fees and expenses of a **Claimant** or **Outside Claimant** awarded pursuant to a court order or judgment or agreed to pursuant to a settlement of a **Claim**; provided that with respect to the multiple portion of any multiplied damage award or punitive or exemplary damages incurred by the **Insured**, **Loss** only includes such damages to the extent they are insurable under the law of any jurisdiction that is most favorable to the insurability of such damages and has a substantial relationship to the **Insured**, the **Claim**, the Company or this **Liability Coverage**. "**Loss**" does not include:

EXHIBIT B

1.  civil or criminal fines; sanctions; liquidated damages other than liquidated damages awarded under the Age Discrimination in Employment Act, the Equal Pay Act or the Family Medical Leave Act; payroll or other taxes; or damages, penalties or types of relief deemed uninsurable under applicable law;

9.  The following replaces section *II. DEFINTIONS*, *U. Third Party Claim*, 3. and 4. of the **Liability Coverage**:

3.  an administrative or regulatory proceeding commenced by the receipt of a notice of filed charges, investigative order, service of summons or similar document;

4.  an arbitration, mediation or similar alternative dispute resolution proceeding commenced by the **Insured's** receipt of a written demand for monetary damages or non-monetary relief, a complaint, notice of charges, arbitration petition, or similar document; or

10. The following replaces section *III. EXCLUSIONS*, **A. EXCLUSIONS APPLICABLE TO ALL LOSS**, 4. and 9. of the **Liability Coverage**:

4.  The Company will not be liable for **Loss** for any **Claim** based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any fact, circumstance, situation, transaction, event or **Wrongful Act** underlying or alleged in any prior or pending civil, criminal, administrative or regulatory proceeding, including audits initiated by the Office of Federal Contract Compliance Programs, against any **Insured** as of or prior to the applicable Prior and Pending Proceeding Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**; provided that this exclusion will not apply to any unemployment compensation proceeding or any workers compensation proceeding in which a **Wrongful Act** has not been alleged.

9.  The Company will not be liable for **Loss** for any **Claim** for any violation of responsibilities, duties or obligations under the Employee Retirement Income Security Act of 1974 (ERISA), including amendments thereto and regulations promulgated thereunder, or any similar or related federal, state or local law or regulation; or for an **Insured's** failure or refusal to establish, contribute to, pay for, insure, maintain, provide benefits pursuant to, or enroll or maintain the enrollment of an **Employee**, a natural person alleging status as an employee of the **Insured Organization**, or **Outside Employee** or dependent in, any employee benefit plan, fund or program, including those which are not subject to the provisions of ERISA; provided that this exclusion will not apply to **Claims** for **Retaliation** or **Claims** for any actual or alleged violation of Section 510 of the Employee Retirement Income Security Act of 1974.

11. The following replaces section *IV. CONDITIONS*, **A. SETTLEMENT** of the **Liability Coverage**:

## A.   SETTLEMENT

1.  The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that:

a.  the **Insured** and the party bringing a **Claim** hereunder consent to the first settlement offer recommended by the Company (the "Settlement Offer") within thirty (30) days of being made aware of such offer by the Company; and

b.  the amount of such Settlement Offer:

i.   is less than the remaining applicable limit of liability available at the time; and

ii.  combined with **Defense Expenses** incurred with respect to such **Claim**, exceeds the Retention;

the Retention will be retroactively reduced by ten percent (10%) with respect to such **Claim**.

© 2011 The Travelers Indemnity Company. All rights reserved.

EXHIBIT B

2.    If the **Insured** does not consent to the Settlement Offer within thirty (30) days of being made aware of such offer by the Company:

    a.    the Retention will not be reduced as provided in paragraph 1. above even if consent is given to the same or subsequent Settlement Offer; and

    b.    the **Insured** will be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for twenty percent (20%) of all **Loss**, other than **Defense Expenses** , in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** will not exceed the remaining applicable limit of liability.

The foregoing subparagraph 2. will not apply if the Settlement Offer is within the remaining applicable Retention.

12.    The following replaces section *IV. CONDITIONS*, **B.** **OTHER INSURANCE**, 2. of the **Liability Coverage**:

2.    Except as stated in paragraph 3. of section IV. CONDITIONS B., this **Liability Coverage** will apply only as excess insurance over, and will not contribute with any insurance that applies to any **Claim**:

    a.    against any **Independent Contractor** or leased or temporary worker: or

    b.    for a **Third Party Wrongful Act**.

---

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

EPL-10053 Ed. 09-11
© 2011 The Travelers Indemnity Company. All rights reserved.

EXHIBIT B

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

---

### LEADERS PREFERRED ENDORSEMENT
### REIMBURSEMENT POLICY

This endorsement changes the following:

**Employment Practices Liability**

---

**It is agreed that:**

1. The following replaces section *III. CONDITIONS*, E. CLAIM DEFENSE, 2.b. of the Liability Coverage Terms and Conditions:

   b. upon written request, the Company will advance **Defense Expenses** with respect to such **Claim** with payment being made for **Defense Expenses** exceeding the Retention within 90 days from the date the Company receives copies of invoices for **Defense Expenses**. Such advanced payments by the Company will be repaid to the Company by the **Insureds** severally according to their respective interests in the event and to the extent that the **Insureds** are not entitled to payment of such **Defense Expenses** under such **Liability Coverage**. As a condition of any payment of **Defense Expenses** under this subsection, the Company may require a written undertaking on terms and conditions satisfactory to the Company guaranteeing the repayment of any **Defense Expenses** paid to or on behalf of any **Insured** if it is finally determined that any such **Claim** or portion of any **Claim** Is not covered under such **Liability Coverage**.

   Unless otherwise agreed, **Defense Expenses** will be subject to an attorney hourly rate of up to $325 per hour and a paralegal hourly rate of up to $150 per hour.

2. The following is added to section *III. CONDITIONS*, U. REPRESENTATIONS of the Liability Coverage Terms and Conditions:

   With respect to all of the statements and representations contained in the **Application**, no knowledge possessed by any one **Insured Person** will be imputed to any other **Insured Person**.

3. The following replaces section *II. DEFINITIONS*, A. *Claim* of the **Liability Coverage**:

   A. *Claim* means an **Employment Claim** or, if ITEM 5 of the Declarations indicates that Third Party Claim Coverage is applicable, a **Third Party Claim**. A **Claim** is deemed to be made on the earliest date that any **Executive Officer** first receives written notice of such **Claim**.

4. The following replaces section *II. DEFINITIONS*, B. *Claimant*, 1. of the **Liability Coverage**:

   1. a past, present or future **Employee** of or applicant for employment with the **Insured Organization** or a natural person alleging status as an employee of the **Insured Organization** who is judicially determined to be an employee of the **Insured Organization**;

5. The following replaces section *II. DEFINITIONS*, D. *Employee*, 1.of the **Liability Coverage**:

   1. who is or was on the payroll of the **Insured Organization**, including:

      a. any in-house general counsel of the **Insured Organization**; and

      b. any other full-time, part-time, and seasonal worker;

---

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **105549106**

© 2011 The Travelers Indemnity Company. All rights reserved.


EXHIBIT B

6.      The following replaces section *II. DEFINITIONS*, *F. Employment Claim* of the **Liability Coverage**:

      **F.**    ***Employment Claim*** means:

            1.     a written demand for monetary damages or non-monetary relief;

            2.     a civil proceeding commenced by service of a complaint or similar pleading;

            3.     a criminal proceeding commenced by the receipt of a notice of filed charges;

            4.     an administrative or regulatory proceeding commenced by the receipt of a notice of filed charges, investigative order, service of summons or similar document, including a proceeding before the Equal Employment Opportunity Commission or any similar governmental agency; provided that in the context of an audit conducted by the Office of Federal Contract Compliance Programs, **Employment Claim** will be limited to a Notice of Violation or Order to Show Cause or written demand for monetary damages or non-monetary relief;

            5.     an arbitration, mediation or similar alternative dispute resolution proceeding commenced by the **Insured's** receipt of a written demand for monetary damages or non-monetary relief, a complaint, notice of charges, arbitration petition, or similar document; or

            6.     a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding,

      against an **Insured** by or on behalf of or for the benefit of a **Claimant**, or against an **Insured Person** serving in an **Outside Position** by or on behalf of or for the benefit of an **Outside Claimant**, for a **Wrongful Employment Practice**; provided that **Employment Claim** does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

7.      The following replaces section *II. DEFINITIONS*, *K. Insured Person* of the **Liability Coverage**:

      **K.**    ***Insured Person*** means any natural person who was, is or becomes an **Employee**, duly elected or appointed member of the board of directors, officer, member of the board of trustees, member of the board of regents, member of the board of governors, natural person partner, **LLC Manager** or a functional equivalent thereof of the **Insured Organization** for **Wrongful Acts** committed in the discharge of his or her duties as such, or while serving in an **Outside Position**.

          **Insured Person** also means any **Independent Contractor** of the **Insured Organization** for **Wrongful Acts** committed in the discharge of his or her duties as such, but only if and to the extent the **Insured Organization** provides indemnification to such natural person in the same manner as that provided to **Employees**.

          In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** for a **Wrongful Act** of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**.

8.      The following replaces the lead-in paragraph and subsection 1. of section *II. DEFINITIONS*, *L. Loss* of the **Liability Coverage**:

      **L.**    ***Loss*** means **Defense Expenses** and amounts which an **Insured** is legally obligated to pay as a result of a **Claim**, including settlements; judgments; back and front pay; compensatory damages; prejudgment and postjudgment interest; and legal fees and expenses of a **Claimant** or **Outside Claimant** awarded pursuant to a court order or judgment or agreed to pursuant to a settlement of a **Claim**; provided that with respect to the multiple portion of any multiplied damage award or punitive or exemplary damages incurred by the **Insured**, **Loss** only includes such damages to the extent they are insurable under the law of any jurisdiction that is most favorable to the insurability of such damages and has a substantial relationship to the **Insured**, the **Claim**, the Company or this **Liability Coverage**. "**Loss**" does not include:

---

© 2011 The Travelers Indemnity Company. All rights reserved.

# EXHIBIT B

1.   civil or criminal fines; sanctions; liquidated damages other than liquidated damages awarded under the Age Discrimination in Employment Act, the Equal Pay Act or the Family Medical Leave Act; payroll or other taxes; or damages, penalties or types of relief deemed uninsurable under applicable law;

9.   The following replaces section *II. DEFINTIONS, U. Third Party Claim*, 3. and 4. of the **Liability Coverage**:

3.   an administrative or regulatory proceeding commenced by the receipt of a notice of filed charges, investigative order, service of summons or similar document;

4.   an arbitration, mediation or similar alternative dispute resolution proceeding commenced by the **Insured's** receipt of a written demand for monetary damages or non-monetary relief, a complaint, notice of charges, arbitration petition, or similar document; or

10.   The following replaces section *III. EXCLUSIONS*, A. EXCLUSIONS APPLICABLE TO ALL LOSS, 4. and 9. of the **Liability Coverage**:

4.   The Company will not be liable for **Loss** for any **Claim** based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any fact, circumstance, situation, transaction, event or **Wrongful Act** underlying or alleged in any prior or pending civil, criminal, administrative or regulatory proceeding, including audits initiated by the Office of Federal Contract Compliance Programs, against any **Insured** as of or prior to the applicable Prior and Pending Proceeding Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**; provided that this exclusion will not apply to any unemployment compensation proceeding or any workers compensation proceeding in which a **Wrongful Act** has not been alleged.

9.   The Company will not be liable for **Loss** for any **Claim** for any violation of responsibilities, duties or obligations under the Employee Retirement Income Security Act of 1974 (ERISA), including amendments thereto and regulations promulgated thereunder, or any similar or related federal, state or local law or regulation; or for an **Insured's** failure or refusal to establish, contribute to, pay for, insure, maintain, provide benefits pursuant to, or enroll or maintain the enrollment of an **Employee**, a natural person alleging status as an employee of the **Insured Organization**, or **Outside Employee** or dependent in, any employee benefit plan, fund or program, including those which are not subject to the provisions of ERISA; provided that this exclusion will not apply to **Claims** for **Retaliation** or **Claims** for any actual or alleged violation of Section 510 of the Employee Retirement Income Security Act of 1974.

11.   The following replaces section *IV. CONDITIONS*, A. SETTLEMENT of the **Liability Coverage**:

A.   **SETTLEMENT**

1.   The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that:

a.   the **Insured** and the party bringing a **Claim** hereunder consent to the first settlement offer recommended by the Company (the "Settlement Offer") within thirty (30) days of being made aware of such offer by the Company; and

b.   the amount of such Settlement Offer:

i.   is less than the remaining applicable limit of liability available at the time; and

ii.   combined with **Defense Expenses** incurred with respect to such **Claim**, exceeds the Retention;

the Retention will be retroactively reduced by ten percent (10%) with respect to such **Claim**.

© 2011 The Travelers Indemnity Company. All rights reserved.

EXHIBIT B

2. If the **Insured** does not consent to the Settlement Offer within thirty (30) days of being made aware of such offer by the Company:

a. the Retention will not be reduced as provided in paragraph 1. above even if consent is given to the same or subsequent Settlement Offer; and

b. the **Insured** will be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for twenty percent (20%) of all **Loss**, other than **Defense Expenses** , in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** will not exceed the remaining applicable limit of liability.

The foregoing subparagraph 2. will not apply if the Settlement Offer is within the remaining applicable Retention.

12. The following replaces section *IV. CONDITIONS*, **B. OTHER INSURANCE**, 2. of the **Liability Coverage**:

2. Except as stated in paragraph 3. of section IV. CONDITIONS B., this **Liability Coverage** will apply only as excess insurance over, and will not contribute with any insurance that applies to any **Claim**:

a. against any **Independent Contractor** or leased or temporary worker: or

b. for a **Third Party Wrongful Act**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

© 2011 The Travelers Indemnity Company. All rights reserved.

EXHIBIT B

# EXHIBIT C



ACE North American Claims   678-795-4283 *tel*
11575 Great Oaks Way       678-795-4070 *fax*
Alpharetta, GA 30022
USA                        Linda.Warren@acegroup.com
                           www.ace-ina.com

**Linda Krajeck Warren**
**Senior Claims Director**
*Professional Lines Claims*

May 7, 2015

**RECEIVED**

MAY 1 4 2015

Frank B. Sewall
USAble Mutual Insurance Company
601 South Gaines Street, 8S FRAT
Little Rock, AR 72201

**FRANK B. SEWALL**

RE:   Insured:      USAble Mutual Insurance Company ("USAble")
      Policy Type:  Excess Directors' and Officers' Liability
      Policy No.:   DOX G24568416 003
      Matter:       Blue Cross Blue Shield Anti-Trust Litigation
      Claim No.:    JY12J0514239

Dear Mr. Sewall:

On behalf of ACE American Insurance Company ("ACE"), we are requesting information and updates on the status of the Blue Cross Blue Shield Anti-Trust Litigation (the "Litigation"), including but not limited to the mediation. ACE previously issued its reservation of rights on October 23, 2014. ACE insures USAble under an Excess Liability Insurance Policy for the Policy Period January 1, 2012 to January 1, 2013, which provides Directors' and Officers' Liability Coverage with an aggregate Limit of Liability of $15,000,000, in excess of the underlying limits of $30,000,000 and the retention (the "Excess Policy"), which follows form to the primary policy issued by Travelers Casualty and Surety Company of America Primary Policy No. 105549106 (the "Primary Policy"), and provides additional coverage in accordance with the terms of the Primary Policy subject to any additional terms in the Excess Policy.

ACE has been informed that USAble intends to mediate the subscriber portion of the Litigation subject to an agreement in principle with the subscriber plaintiffs' counsel to retain Layn Phillips as the mediator. The provider plaintiffs have also been invited to participate. Further, USAble has been in discussions regarding mediation since January, but without notice to ACE.

Based on the foregoing, ACE refers to the Primary Policy's obligation for USAble to cooperate with ACE, including providing updated information, the Insured's and defense counsel's resolution strategy, as well as information and materials necessary for ACE to review the Claim and assess coverage. According to Section III(E)(3) of the Primary Policy, USAble:

> agrees to cooperate with the Company and, upon the Company's request, assist in making settlements and in the defense of Claims and in enforcing rights of contribution or indemnity against any person or entity which may be liable to the Insured because of an act or omission insured under such Liability Coverage, will attend hearings and trials and assist in securing

*One of the ACE Group of Insurance & Reinsurance Companies*

# EXHIBIT C



and giving evidence and obtaining the attendance of witnesses.

Agreeing to mediation and selecting a mediator without ACE's input may not comport with the obligation under the policies at issue. While ACE does not object to the mediation, it wishes to be consulted with and informed of such decisions pursuant to the Policies' terms and conditions, and reserves the right to attend the mediation.

Along the same vein, USAble has not provided ACE an evaluation and analysis of the Litigation, including but not limited to defense counsel's views and opinions of liability, damages, and class certification. This is particularly relevant to ACE's handling of the matter insofar as USAble has not advised ACE whether its potential liability pierces ACE's Excess Policy, a firm pre-requisite to any coverage for the Claim. Consequently, ACE requests this appropriate and necessary information to evaluate the mediation proposal and its impact on coverage.

ACE respectfully seeks defense counsel's views and analysis of liability, damages, and resolution strategy, along with any additional information or documentation regarding the status, merits, and substance of the Claim.

ACE accepts Mr. Phillips designation as mediator, but not for any consideration of any coverage from the applicable Policies. ACE continues to reserve all rights under the Excess Primary Policies, as well as those set forth in ACE's prior communications and correspondence to USAble. ACE additionally reserves all rights to supplement and/or amend this letter and/or any prior correspondence addressing coverage for the Litigation.

Nothing stated herein and any action by ACE or on its behalf should be construed as a waiver or estoppel of any of its rights under the Excess or Primary Policy. On the contrary, by providing this, or any prior correspondence to the Insured, engaging in any prior or future discussions with the Insured, or paying or agreeing to pay any amount to, or on behalf of the Insured, ACE does not waive any right that it has under the Policies.

Should you have any questions or wish to discuss this matter further please call me at (678) 795-4283.

Yours truly,

Linda Krajeck Warren

cc:

Perry Kreidman
London Fischer
Via email only:  PKreidman@londonfischer.com

Page 2/2

**EXHIBIT C**